Jeffery D. McFarland
California Bar No. 157628
jmcfarland@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1010
Fax: (213) 694-1234

*(additional counsel listed on next page)*

**Attorneys for Plaintiff**
**BLOCKCHAIN INNOVATION, LLC**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

BLOCKCHAIN INNOVATION, LLC,

*Plaintiff*,

v.

FRANKLIN RESOURCES, INC. d/b/a FRANKLIN TEMPLETON, FT FINTECH HOLDINGS, LLC, FRANKLIN TEMPLETON COMPANIES, LLC, JENNIFER JOHNSON, AND ROGER BAYSTON,

*Defendants*.

CASE NO. 4:21-cv-08787-HSG

**PLAINTIFF'S RESPONSE TO FRANKLIN RESOURCES, INC.'S, FT FINTECH HOLDINGS, LLC'S, AND FRANKLIN TEMPLETON COMPANIES, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Gary Cruciani (*Pro Hac Vice*)
Texas Bar No. 05177300
Lew LeClair
California Bar No. 77136
gcruciani@mckoolsmith.com
lleclair@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000

Brent N. Bumgardner (*Pro Hac Vice*)
Texas Bar No. 00795272
Christopher G. Granaghan (*Pro Hac Vice*)
Texas Bar No. 24078585
Carder W. Brooks (*Pro Hac Vice*)
Texas Bar No. 24105536
brent@nelbum.com
chris@nelbum.com
carder@nelbum.com
NELSON BUMGARDNER CONROY P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Telephone: (817) 377-9111

Patrick J. Conroy (*Pro Hac Vice*)
Texas Bar No. 24012448
pat@nelbum.com
NELSON BUMGARDNER CONROY P.C.
2727 N. Harwood Street, Suite 250
Dallas, Texas 75201
Telephone: (214) 446-4954

**Attorneys for Plaintiff**
**BLOCKCHAIN INNOVATION, LLC**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................1

I. Plaintiff has Standing under Rule 12(b)(1) ..........................................................1

A. Legal Standard ....................................................................................................1

B. Plaintiff Has Standing to Assert Trade Secret Misappropriation and Copyright Infringement Against Defendants ....................................................................2

i. Plaintiff has Established Ownership of Trade Secrets and Copyrights .......2

ii. Defendants' Analysis Relies on Incorrect Standards and Fails to Properly Challenge Plaintiff's Standing Under FRCP 12(b)(1) ................................4

C. Plaintiff has Standing to Assert Breach of Contract ...........................................5

II. Plaintiff's Claims are Properly Plead Under Rule 12(b)(6) and Are Not Preempted ..........8

A. None of Plaintiff's Claims are Preempted ..........................................................8

i. Plaintiff's Claims Are Not Superseded by CUTSA .......................................8

ii. Plaintiff's Breach of Contract Claim is Not Preempted by the Copyright Act ..........12

B. Plaintiff Adequately Pleads its Claims Against Defendants ................................13

i. The FAC Does Not Rely On Improper "Group Pleading" ........................13

ii. Plaintiff Adequately States a Claim for Breach of Fiduciary Duty ...........15

1. FRI Owes a Fiduciary Duty to Onsa ....................................................15

2. The FAC Sufficiently and Plausibly Alleges Breach of Fiduciary Duty ..........17

3. The FAC Sufficiently Alleges Breach of the Duty of Loyalty and Defeats the Presumption of the Business Judgment Rule as to the ABC. ..........18

4. Bayston, FRI, and FinTech Are not Exculpated for any Breaches of Duty. ..........19

iii. Plaintiff Adequately States a Claim Under the DTSA ..............................20

1. Legal Standard ....................................................................................20

2. Plaintiff Properly Pleads Possession of Trade Secrets ...........................20

3. The FAC Plausibly Alleges Misappropriation ........................................20

iv. Plaintiff Adequately States a Claim for Copyright Infringement .............22

v. Plaintiff Adequately States a Claim for Breach of Contract......................24

vi. Plaintiff is Entitled to Injunctive Relief....................................................24

III. Plaintiff Should Be Granted Leave to Amend if its Pleadings are Found Deficient .........24

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agile Sourcing Partners, Inc. v. Dempsey*, No. EDCV 21-773-JGB (SPx), 2021 WL 4860693 (C.D. Cal. July 15, 2021) ................12

*Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*, No. 2017-0583, 2018 WL 3006118 (Del. Ch. June 15, 2018)..........................................9

*Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868 (N.D. Cal. 2018) ........................................................20, 21

*Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) ...................................................................11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................................18

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, No. N15C-06-245 CEB, 2017 WL 1842899 (Del. Super. Ct. Apr. 20, 2017)....................9

*Austin v. Budget Rental Car, Inc.*, No. 20-CV-06229-AGT, 2020 WL 8614183 (N.D. Cal. Sept. 17, 2020)........................15

*Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010)..............................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..........................................13

*BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984 (N.D. Cal. 2017) ..........................................................4

*Brown v. Bank of Am., N.A.*, 660 F. App'x 506 (9th Cir. 2016) ....................................................1, 5

*Carlini v. Paramount Pictures Corp.*, No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2, 2022)..........................................23

*Carter v. Brooms (In re Brooms)*, 447 B.R. 258 (B.A.P. 9th Cir. 2011).......................................................5

*Chromadex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983 (S.D. Cal. 2019)...............................................11, 12

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
No. 12-04000 SC, 2013 WL 57861 (N.D. Cal. Jan. 3, 2013) ....13

*Clifton v. Houghton Mifflin Harcourt Publ'g Co.*,
152 F. Supp. 3d 1221 (N.D. Cal. 2015) ....23, 24

*Creative Care, Inc. v. Conn. Gen. Life Ins. Co.*,
No. CV 16-9056-DMG (AGRx), 2017 WL 5635015 (C.D. Cal. July 5, 2017) ....5

*Edison v. United States*,
822 F.3d 510 (9th Cir. 2016) ....1, 4

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005) ....9, 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340, 111 S. Ct. 1282 (1991) ....23

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
No. 19-cv-05611-PJH, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020) ....11

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) ....13

*Gilbert v. Perlman*,
No. CV 2018-0453-SG, 2020 WL 2062285 (Del. Ch. Apr. 29, 2020) ....15

*Henry Schein, Inc. v. Cook*,
No. 16-cv-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ....10, 12

*iBio, Inc. v. Fraunhover USA, Inc.*,
No. 10256-VCG, 2020 WL 5745541 (Del. Ch. Sep. 25, 2020) ....9

*In re Evergreen Energy, Inc.*,
546 B.R. 549 (Bankr. D. Del. 2016) ....20

*In re Ezcorp Inc. Consulting Agreement Derivative Litig.*,
No. CV 9962-VCL, 2016 WL 301245 (Del. Ch. Jan. 25, 2016) ....16, 17

*In re Pattern Energy Grp. Inc. S'holders Litig.*,
No. CV 2020-0357-MTZ, 2021 WL 1812674 (Del. Ch. May 6, 2021) ....16

*In re Primedia, Inc. Derivative Litig.*,
910 A.2d 248 (Del. Ch. 2006) ....16, 17

*In re Sagent Tech., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) ....9

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ....................20

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,
171 Cal. App. 4th 939 (2009) ....................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375, 114 S. Ct. 1673 (1994)....................1

*KT4 v. Palantir Techs.*,
No. N17C-12-212 EMD CCLD, 2021 WL 2823567 (Del. Super. Ct. June 24, 2021)......10

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ....................1

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) ....................22, 23

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F. Supp. 2 911, 989 (C.D. Cal. Dec. 27, 2010) ....................12

*Mie Yang v. Francesca's Collections, Inc.*,
No. 17-cv-04950-HSG, 2018 WL 984637 (N.D. Cal. Feb. 20, 2018)....................4

*Montz v. Pilgrim Films & TV, Inc.*,
649 F.3d 975 (9th Cir. 2011) ....................13

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
360 F. Supp. 3d 994 (N.D. Cal. Dec. 28, 2018)....................12

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
No. CV 19-08420-CJC, 2020 WL 2510652 (C.D. Cal. Feb. 12, 2020)....................12, 13

*Savor, Inc. v. FMR Corp.*,
No. 00C-1—249-JRS, 2001 WL 541484 (Del. Super. Ct. Apr. 24, 2001) ....................9

*Schertzer v. Bank of America, N.A.*,
489 F. Supp. 3d 1061 (S.D. Cal. 2020)....................8

*Simon v. Stang*,
No. C 10-00262 JF (HRL), 2010 WL 1460430 (N.D. Cal. Apr. 8, 2010)....................9

*Sprint Communs. Co., L.P. v. APCC Servs.*,
554 U.S. 269, 128 S. Ct. 2531 (2008)....................1

*Strategic Partners, Inc. v. FIGS, Inc.*,
No. 2:19-cv-02286-JHW-KSx,
2021 U.S. Dist. LEXIS 200224 at *9 (C.D. Cal. Aug. 10, 2021) ....................12

*SunPower Corp. v. SolarCity Corp.*,
No. 12-CV-00694 LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)..........................25

*Swartz v KMPG LLLP*,
476 F.3d 756 (9th Cir. 2007) ..........................................................................15

*Tagoia v. Wells Fargo Bank, N.A.*,
No. 17-CV-06777-YGR, 2018 WL 3377967 (N.D. Cal. July 11, 2018)..........................15

*Waymo, LLC v. Uber Techs., Inc.*,
256 F. Supp. 3d 1059 (N.D. Cal. 2017) ..........................................................10

**STATUTES**

6 Del. C. § 2007 ..........................................................................................9

17 C.F.R. § 230.405 .......................................................................................8

17 U.S.C. § 107(b) .......................................................................................13

17 U.S.C. § 410(c) ....................................................................................4, 23

28 U.S.C. § 158(b), (d) ....................................................................................5

Copyright Act.............................................................................................12

Delaware Uniform Trade Secrets Act.................................................................8

DUTSA ...............................................................................................8, 9, 10

ERISA 5

FRCP 8(a) ..............................................................................................13, 14

FRCP 9(b) ...................................................................................................15

FRCP 15.....................................................................................................25

United States Copyright Act ...........................................................................13

## INTRODUCTION

Plaintiff Blockchain Innovation, LLC ("**Plaintiff**" or "**Blockchain**") files this Response ("**Response**") to Franklin Resources, Inc.'s ("**FRI**"), FT Fintech Holdings, LLC's ("**FinTech**"), and Franklin Templeton Companies, LLC's ("**FTC**") (FRI, FinTech, and FTC, collectively, "**FT Defendants**") Motion to Dismiss ("**FT Defendants' MTD**" or "**MTD**") the First Amended Complaint ("**FAC**"). As Defendants did with their individual motions to dismiss, Plaintiff incorporates by reference, as if fully set forth herein, (i) Plaintiff's Response to Jennifer Johnson's ("**Johnson**") Motion to Dismiss the First Amended Complaint ("**Response to Johnson's MTD**"), and (ii) Plaintiff's Response to Roger Bayston's Motion to Dismiss the First Amended Complaint ("**Response to Bayston's MTD**"). FT Defendants, Johnson, and Bayston may hereinafter be collectively referred to as "**Defendants**."

## ARGUMENT

### I. PLAINTIFF HAS STANDING UNDER RULE 12(B)(1)

#### A. Legal Standard

"Assignees of a claim, including assignees for collection, have long been permitted to bring suit." *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 275, 128 S. Ct. 2531, 2536 (2008). An assignee evinces standing "by showing that he received an assignment of claims." *Brown v. Bank of Am., N.A.*, 660 F. App'x 506, 508 (9th Cir. 2016). The party seeking to assert jurisdiction has the burden of establishing by a preponderance of the evidence that jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Attacks on subject matter jurisdiction can be "facial" or "factual." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (internal citations omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. Plaintiff's allegations are not presumed true, but "[a]ny factual disputes . . . must be resolved in favor of Plaintiff[]." *Id.*

### B. Plaintiff Has Standing to Assert Trade Secret Misappropriation and Copyright Infringement Against Defendants.

While it is unclear whether Defendants' challenges are facial or factual, Defendants' attack on Plaintiff's standing for its trade secret and copyright claims is flawed for at least two reasons. First, Defendants are simply wrong that Plaintiff does not own the IP at issue, as Plaintiff's ownership has been extensively documented as explained in the FAC and this Response. Second, Defendants have failed to articulate a proper challenge to Plaintiff's standing under FRCP 12(b)(1), failing to consider the evidence provided with the FAC. The Court should therefore deny FT Defendants' MTD and hold that Plaintiff has standing under FRCP 12(b)(1).

#### i. Plaintiff has Established Ownership of Trade Secrets and Copyrights

Out of the four sources of Plaintiff's IP (delineated below), Defendants have only challenged a single source. Plaintiff's ownership of IP from the other sources is uncontested. Defendants' challenge to Plaintiff's standing under FRCP 12(b)(1) fails for that reason alone.

The FAC identifies four distinct sources of trade secrets and/or copyrights: (1) Indian developers associated with Tokentech Research and Development India Pvt Ltd ("**Tokentech**")[1] and TokenVault Limited ("**TV Limited**") (FAC ¶ 197); (2) TV Limited (at least through development by Austin Trombley, Onsa's co-founder) (FAC ¶ 197); (3) Onsa, Inc. ("**Onsa**") itself (at least through development by Trombley) (FAC ¶¶ 67-69, 197 fn. 42, 201-206); and (4) HTEC Group Inc. ("**HTEC**"), who assigned to Onsa all rights to any and all intellectual property it developed (FAC ¶¶ 133, 198-199) (Ex. 2 to Travis Decl.). The following illustration shows the chain of title of Plaintiff's IP from the four sources:

[1] Defendants attempt to muddy the waters by claiming that because "Tokentech Research and Development India Pvt Ltd" was not listed in the 2019 APA disclosure schedule, its assignment of IP to Onsa is somehow ineffective or unimportant. Dkt. 57 at 7-8. This position ignores that Plaintiff owns IP developed by Indian developers and/or Tokentech as set forth herein, regardless of whether Tokentech was a subsidiary of TV Limited or whether Tokentech was listed as a subsidiary in the 2019 Asset Purchase Agreement ("**2019 APA**"). Further, the entity "Tokentech Research and Development, LLC" listed in the APA is the very same entity as "Tokentech Research and Development India Pvt Ltd." *See* Declaration of Aaron Travis in Supp. of Plaintiff's Response to Mots. To Dismiss ("**Travis Decl.**") ¶ 6.

**Source (1)**: Indian developers associated with Tokentech and TV Limited
IP Assignment Agreements
**Source (2)**: TV Limited (through its employees/founders)
2019 APA
**Source (3)**: Onsa (through its employees/founders)
ABC assignment
BLKCHN, LLC
MSA
**Source (4)**: HTEC
2021 APA
*ALTERNATIVE ROUTE*
Software Transfer Agreement
Maven Venture Capital, LLC (f/k/a Barefoot Capital, LLC)
Quitclaim Assignment
Plaintiff

Importantly, of the four sources, the MTD only challenges Plaintiff's ownership of IP generated by the Indian developers. Dkt. 57 at 5-8. Thus, there is no dispute at this pleading stage that Plaintiff has adequately alleged ownership of IP from sources two, three, and four. This fact alone eviscerates Defendants' standing argument. As to the sole source that Defendants do challenge, Plaintiff clarifies below its ownership of IP generated by Indian developers.

Plaintiff owns all IP that was generated by the Indian developers for TV Limited and/or Onsa. As set forth in the FAC, the Indian developers, with Tokentech's co-signature, executed IP assignment agreements granting rights to all IP generated by the developers to TV Limited. FAC ¶¶ 197, 199; Ex. 1 to Travis Decl., § 6. This IP was validly transferred from TV Limited to Onsa (f/k/a TokenVault, Inc. ("TV, Inc."))[2] via the 2019 APA between TV Limited and Onsa (Dkt. 41-3).[3] *See, e.g.,* Dkt. 41-3 § 2.2(e); FAC ¶¶ 95, 118. The very same IP was transferred from Onsa to BLKCHN, LLC ("**BLKCHN**"), the Assignment for the Benefit of Creditors ("**ABC**") liquidator, via the ABC assignment (Dkt. 55-2) and subsequently from BLKCHN to Plaintiff via the Asset Purchase Agreement between the ABC liquidator and Plaintiff ("**2021 APA**") (Dkt. 55-3). *See, e.g.*, Dkts. 55-1, 55-2, 55-3; FAC ¶¶ 10, 12, 43, 140.

To the extent that Tokentech retained any interest in any IP it created for TV Limited and/or Onsa (which Plaintiff disputes, based on the above), Plaintiff nevertheless received the IP through the "alternative route" illustrated above (red arrows). Tokentech executed a Software Transfer Agreement in 2020 to transfer any and all of said retained IP to Barefoot Capital, LLC. *See* Ex. A to Ex. 4 to Travis Decl.; FAC ¶¶ 199-200. Barefoot Capital, LLC changed its name to Maven Venture Capital, LLC, and subsequently

---

[2] For simplicity, Plaintiff will refer to TV, Inc./Onsa, Inc. throughout as "Onsa."
[3] The IP assignment agreements executed by the Indian developers and Tokentech were assigned to Onsa via the 2019 APA. Dkt. 41-3, § 2.2(a); Ex. 1 to Travis Decl., §§ 6, 15.

executed a Quitclaim Assignment granting any rights it may have had in such IP to Plaintiff. *See* Ex. 4 to Travis Decl. Thus, regardless of whether Tokentech retained any rights in any IP it generated in connection with TV Limited and/or Onsa, Plaintiff now owns those rights, and therefore owns all of the Indian-developer-generated IP asserted against Defendants.

To the extent Defendants are making a factual challenge, "[a]ny factual disputes . . . must be resolved in favor of Plaintiff[]." *Edison,* 822 F.3d at 517. Thus, any conflicting "facts" pedaled by Defendants must be resolved in Plaintiff's favor.[4] Defendants have also failed to rebut, or even address, the legal presumption of validity and truthfulness regarding ownership of Plaintiff's copyrighted works that Plaintiff is entitled to via its copyright registrations. *See, e.g.*, 17 U.S.C. § 410(c). Additionally, Defendants misrepresent what it means to "own" a trade secret for the purposes of standing—it is well established that "fee simple ownership" is not a requirement, and Plaintiff must instead just show "possession of the trade secret," which it has certainly done. *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (internal citations omitted). Further, when "the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim," the court "must leave the resolution of material factual disputes to the trier of fact." *Mie Yang v. Francesca's Collections, Inc.*, No. 17-cv-04950-HSG, 2018 WL 984637, at *3 (N.D. Cal. Feb. 20, 2018) (internal citations omitted). Issues are considered "intertwined" when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Id*. That is the case here—the factual issues regarding IP ownership go directly to the merits of this case while also constituting the heart of Defendants' subject matter jurisdiction challenges.

#### ii. Defendants' Analysis Relies on Incorrect Standards and Fails to Properly Challenge Plaintiff's Standing Under FRCP 12(b)(1)

FT Defendants' motion maintains willful blindness with respect to the evidence provided in the

---

[4] For instance, Defendants falsely claim that Aaron Travis "admitted to Bayston that Onsa did not own" the IP generated by the Indian developers, citing to an email from Travis. Dkt. 57 at 6. However, Travis did not actually say that in the email, but instead simply recognized an issue with respect to Tokentech's status as an Onsa subsidiary, which is immaterial due to the written assignments described above. Dkt. 39, Ex. D. Further, such evidence is entirely improper for Defendants to present at this early stage in the litigation, and Plaintiff has moved to strike this evidence in a separate filing submitted concurrently with this Response.

FAC. Defendants' recited analytical framework is not cohesive precedent—it is a contrived substitute amalgamated from a hodgepodge of case law. Indeed, Defendants' foundational supporting authority is wholly divorced from the context of trade secrets, copyrights, and even FRCP 12(b)(1) itself. For instance, *In re Brooms* is a bankruptcy appellate panel case[5] attempting to determine the real party in interest, and *Creative Care* is an ERISA case contemplating a 12(b)(6) motion; these cases never even mention FRCP 12(b)(1). *See generally Carter v. Brooms (In re Brooms)*, 447 B.R. 258 (B.A.P. 9th Cir. 2011); *Creative Care, Inc. v. Conn. Gen. Life Ins. Co.*, No. CV 16-9056-DMG (AGRx), 2017 WL 5635015 (C.D. Cal. July 5, 2017). *Brown v. Bank of Am., N.A.* is the only case cited by Defendants that addresses FRCP 12(b)(1) in the context of assignments, and *Brown* actually supports Plaintiff's position. According to *Brown*, Plaintiff need only "show[] that [it] received an assignment of claims" to establish subject matter jurisdiction. *Brown Bank of Am., N.A.*, 660 F. App'x 506, 508 (9th Cir. 2016). Plaintiff has far exceeded that bar in both the FAC and this Response. *Brown* further makes clear that in the face of a 12(b)(1) challenge, respondents need merely allege facts and/or provide some "proof that an assignment occurred" to prevail. *Id*. at 508. Plaintiff has clearly done that in its FAC and in this Response, in stark contrast with the plaintiff in *Brown* that failed to allege facts in the complaint detailing the assignment and failed to respond to the defendant's motion with "evidence, facts, or exhibits." *Id*. at 509.

**C. Plaintiff has Standing to Assert Breach of Contract**

Plaintiff also has standing to sue the FT Defendants for breach of the Mutual Confidentiality and Non-Disclosure Agreement ("**NDA**"). The NDA was validly assigned from TV Limited to Plaintiff through three agreements: (1) the 2019 APA from TV Limited to Onsa (FAC ¶¶ 93, 95, 248-249; Dkt. 41-3 § 2.2(a)); (2) the 2020 ABC assignment from Onsa to BLKCHN (FAC ¶¶ 248-249; Dkt. 55-2 §§ 1.1 ("Assigned Assets"), 3.1); and (3) the 2021 APA from BLKCHN, LLC to Plaintiff (FAC ¶¶ 10, 12, 51, 248-249; Dkt. 55-3 § 1). Defendants challenge the first assignment, claiming that "th[e] purported chain [of assignments] fails … because the NDA was never transferred [from TV Limited] to Onsa under the [2019] APA, and thus Onsa could not have assigned it to Plaintiff." Dkt. 57 at 8. The second and third

[5] Defendants' citation to *Brooms* indicates that it is a Ninth Circuit case. Dkt. 57 at 5. It is, in fact, a 9th Circuit Bankruptcy Appellate Panel case, which is appealable to the Ninth Circuit. *See* 28 U.S.C. § 158(b), (d).

assignments are not challenged.

The 2019 APA from TV Limited to Onsa expressly defines the "Transferred Assets" to include "all contracts, … agreements, … and other legally binding written instruments or arrangements (collectively, 'Contracts') set forth on Schedule 2.2(a) of the Disclosure Schedule and ***all other Contracts to which Seller or any of the Seller Subsidiaries is a party or by which Seller or any of the Seller Subsidiaries is bound that are used or held for use primarily in the operation or conduct of the Business as currently conducted*** (the 'Transferred Contracts')" (bold and italic emphasis added). Dkt. 41-3 at 2. The FAC alleges that the NDA is a "Transferred Contract" because it was an agreement used or held for use primarily in the operation or conduct of the business of TV Limited. FAC ¶¶ 93 at n.24.

Defendants assert that the NDA "was not a contract used 'primarily in the operation and/or conduct' of [TV Limited]'s business" because the NDA states that its "Purpose" relates to "the evaluation of a potential investment by Franklin in a company which would purchase certain [TV Limited] assets." Dkt. 57 at 9. While this argument is clearly a factual dispute improper for a motion to dismiss, it is also wrong. TV Limited was a startup company devoted to developing an innovative financial trading platform. *See, e.g.*, FAC ¶¶ 2, 6. The NDA was required to protect TV Limited's highly confidential source code and trade secrets from unlawful disclosure and use. TV Limited's intellectual property was the very core of its business. One can hardly imagine a more vital agreement with respect to operation and conduct of TV Limited's business.

Defendants also assert that the NDA was not validly assigned for lack of written consent. Specifically, the MTD states that "[t]he sole parties to the NDA were FTC and [TV Limited]." Dkt. 57 at 8. Based on this erroneous premise, Defendants claim that the NDA's assignment provision requires the written approval of FTC, and that the written approval of either FRI or FinTech is inadequate. But this assertion ignores the explicit language of the NDA, which in its first paragraph defines "Franklin" as FTC as well as "***Franklin Resources, Inc. ('FRI')*** and ***FRI's subsidiaries.***"[6] Dkt. 55-4 at 2. This first paragraph further states that "***Franklin*** and Company ***are sometimes referred to herein as a 'party' and collectively***

[6] It is undisputed that FinTech is a subsidiary of FRI.

***as the 'parties'.*** " *Id.* Thus, all of FTC, FRI and FinTech are "parties" to the NDA.[7] The assignment provision of the NDA states that "[t]his Agreement may not be assigned by either party … ***without the prior written consent of the other party***." *Id.* at 3. Thus, any of FTC, FRI, or FinTech could consent to the NDA's assignment. Defendants do not challenge that both FRI and FinTech consented in writing to 2019 APA. FAC ¶¶ 93 (fn. 24), 95 (fn. 26).

Defendants also make two arguments based on incorrect interpretations of the 2019 APA. Defendants first argue that 2019 APA § 3.2(b) should be interpreted such that "contracts that 'require the consent of any Person' in order to be assigned—such as the NDA—would not be transferred to Onsa as part of the deal, unless that contract was explicitly identified in the corresponding Disclosure Schedule of the APA." Dkt. 57 at 8. Defendants' interpretation is not supported by the plain language of § 3.2(b), which is part of the "Representations and Warranties of Seller." Nowhere does § 3.2(b) state that agreements requiring consent would not be assigned unless listed in the Disclosure Schedule. And, in any event, it is undisputed that consent to transfer the NDA by FRI and Fintech was obtained.

Next, based on an incorrect interpretation of 2019 APA § 2.3(i), Defendants assert that the "NDA is plainly an 'Other Agreement' as defined in the APA and thus an 'Excluded Asset' not transferred under the APA." Dkt. 57 at 9. This assertion is also ill-founded. Section 2.3(i) defines "Excluded Assets" to include "***all rights of [TV Limited]*** … under this Agreement, the Other Agreements and any other agreements … delivered in connection with this Agreement and the Other Agreements." Dkt. 41-3 at § 2.3(i). This is a common contract provision that merely confirms that the Seller (here, TV Limited) retains its rights in the transaction documents themselves. Here, the NDA is not an "Other Agreement" because the 2019 APA defines such term as including the specific transaction documents and "each other agreement … ***required to be executed*** … ***in connection with the transactions contemplated by this Agreement***." *Id.*, Schedule A at 4. The NDA is not an "Other Agreement" because it is not one of the specifically identified transaction documents and because it was not "required to be executed" in connection with the 2019 APA. Additionally, the NDA does not fall within the "any other agreement" provision of § 2.3(i) because it was

[7] Notably, Defendants have not argued that FTC lacked authority to bind FRI and Fintech as parties to the NDA.

not a document to be "delivered in connection with this Agreement and the Other Agreements" (i.e., it was not a transaction document, but rather a contract assigned by the transaction documents). As previously stated, the NDA was a "Transferred Contract" pursuant to § 2.2(a). Defendants' interpretation of the two provisions is not reasonable and should be rejected.[8]

Even if the NDA was not assigned from TV Limited to Plaintiff, Plaintiff nevertheless has standing to assert breach of the NDA for two reasons. *First*, Plaintiff is the assignee of TV Limited's legal claims, including TV Limited's claim for breach of the NDA. FAC ¶ 254. Thus, even if the NDA was not assigned from TV Limited to Plaintiff, Plaintiff has standing to assert TV Limited's claim for breach of the NDA. Defendants do not dispute these allegations. *Second*, Plaintiff is TV Limited's successor under the NDA. FAC ¶ 250. The first paragraph of the NDA defines "***Company***" to include TV Limited's "successors." Dkt. 55-4 at 2. Through the agreements described above, Plaintiff obtained substantially all of TV Limited's assets, including the intellectual property and other confidential information that is the subject of the NDA. Plaintiff is thus TV Limited's successor, particularly with respect to the IP that was protected by the NDA. *See, e.g.*, 17 C.F.R. § 230.405; Travis Decl. ¶¶ 4-5. Although Defendants dispute Plaintiff's status as a successor, they cite no authority for this proposition.

## II. PLAINTIFF'S CLAIMS ARE PROPERLY PLEAD UNDER RULE 12(B)(6) AND ARE NOT PREEMPTED.

### A. None of Plaintiff's Claims are Preempted.

#### i. Plaintiff's Claims Are Not Superseded by CUTSA.

Plaintiff's claims for breach of fiduciary duty are not preempted for two reasons.[9] First, contrary to Defendants' assumption, Delaware law applies to whether Plaintiff's claims for breach of fiduciary duty are preempted. Delaware courts consistently hold that fiduciary-duty claims are not preempted by the Delaware Uniform Trade Secrets Act ("DUTSA"). Second, Plaintiff's claims for breach of fiduciary duty are supported by facts independent of the facts supporting Plaintiff's trade-secret claims, so they are not preempted regardless of which state's law applies.

[8] However, in the event the Court finds any ambiguity, it would not be appropriate to resolve it via on a motion to dismiss. *Schertzer v. Bank of America, N.A.*, 489 F. Supp. 3d 1061, 1080-81 (S.D. Cal. 2020).
[9] As explained below, Plaintiff agrees with Defendants that an injunction is a remedy, not a cause of action. There is therefore no need to address it further.

Defendants' entire argument is based on the incorrect assumption that California law applies to the issue of preemption. Defendants recognize that Plaintiff's fiduciary-duty claims are governed by Delaware law under the internal affairs doctrine. *See* Dkt. 57 at 16 n.15; *see also In re Sagent Tech., Derivative Litig.*, 278 F. Supp. 2d 1079, 1086-87 (N.D. Cal. 2003) ("Under the 'internal affairs' doctrine, which is followed in most states, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders. . . . "). If Delaware law applies to Plaintiff's fiduciary-duty claims, then it is Delaware law, not California law, that should govern the availability of a cause of action in these circumstances. Holding otherwise would subject the internal affairs of a Delaware entity to the laws of multiple states—the very thing that the internal affairs doctrine seeks to avoid. *See Simon v. Stang*, 2010 WL 1460430, at *8 (N.D. Cal. Apr. 8, 2010) ("The internal affairs doctrine seeks to ensure that the internal affairs of corporations are not subjected to the conflicting laws of various states."). Moreover, it would effectively determine that one state's law can override another state's law—a proposition that has no support in the law.

While DUTSA "displaces conflicting tort, restitutionary and other laws of this State providing civil remedies for misappropriation of a trade secret," 6 Del. C. § 2007, Delaware courts have held that it does not preempt fiduciary-duty claims. Under DUTSA, "[a] claim will be preempted if it is 'grounded in the same facts which purportedly support the Misappropriation of Trade Secrets claim." *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (quoting *Savor, Inc. v. FMR Corp.*, No. 00C-1—249-JRS, 2001 WL 541484 (Del. Super. Ct. Apr. 24, 2001)). Delaware courts have held that a fiduciary-duty claim is not preempted under this test because "[t]he same facts are not required to establish all the elements of both the misappropriation and breach of fiduciary duty claims." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). The "distinguishing fact" of fiduciary-duty claims is "the existence of a fiduciary relationship, which require[s] proof beyond what is required for misappropriation under DUTSA and which brings with it special duties and obligations." *Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*, No. 2017-0583, 2018 WL 3006118, at *10 (Del. Ch. June 15, 2018); *see also iBio, Inc. v. Fraunhover USA, Inc.*, No. 10256-VCG, 2020 WL 5745541, at *13 (Del. Ch. Sep. 25, 2020) (recognizing holding of *Alarm.com*); *Atl. Med. Specialists, LLC v. Gastroenterology*

*Assocs., P.A.*, No. N15C-06-245 CEB, 2017 WL 1842899, at *15 (Del. Super. Ct. Apr. 20, 2017); *KT4 v. Palantir Techs.*, 2021 WL 2823567, at *25 (Del. Super. Ct. June 24, 2021). Thus, even if Defendants are correct that Plaintiff's fiduciary-duty claims are based on "a scheme to steal Onsa's alleged confidential and trade secret information for their own use," Dkt. 57 at 11, Plaintiff's claims are not preempted.

Even if CUTSA applies (or even if Delaware did not broadly allow fiduciary-duty claims based on the misappropriation of confidential information), Plaintiff's fiduciary-duty claims are not preempted because Plaintiff pleads facts in support of its fiduciary-duty claims other than the facts that also support its trade-secret-misappropriation claims. Under California law, a claim is preempted by CUTSA if it is "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 958 (2009). To determine whether a claim is based on the same nucleus of facts as a trade secret misappropriation claim, courts in this district often "ask[] whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to support other causes of action." *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see also Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ("[T]he CUTSA preempts a common law claim when, after the facts relating to the trade secrets are removed, there are insufficient facts for the claim to survive."). And, as explained above, a claim is preempted by DUTSA only when it is "grounded in the same facts" as a trade-secret-misappropriation claim. *Ethypharm*, 388 F. Supp. 2d at 433.

The FAC pleads significant facts that support a breach of fiduciary duty claim independent of the facts that support Plaintiff's trade secret misappropriation claims. For example, Plaintiff pleads that Bayston, FinTech, and FRI breached their duties of due care, good faith, and loyalty to Onsa by acting in secret from Onsa's non-Franklin Templeton shareholders and from Onsa's management. FAC ¶¶ 181-183. Plaintiff also pleads that Bayston, FinTech, and FRI breached their duties of due care, good faith, and loyalty by making the decision to wind down and liquidate Onsa, culminating in the ABC. FAC ¶¶ 184-194. According to the FAC, "the process undertaken by [FinTech], [FRI], and Bayston as well as the actual decision to liquidate Onsa were willfully uninformed, grossly negligent, self-interested, and in bad faith." FAC ¶ 185. For example, "there is no evidence that FT FinTech, Franklin Resources, and Bayston made

any efforts to inform themselves of alternatives to liquidation or explore any alternatives with third parties." FAC ¶ 186. Moreover, "[t]here was no legitimate reason to liquidate Onsa via the ABC" because "Onsa was extremely valuable in the marketplace and fully capable of capitalizing on its business plans and raising funds." FAC ¶ 187. Indeed, FinTech, FRI, and Bayston, "were aware that their decision to liquidate Onsa created litigation risks for them and they discussed efforts to try to remediate that risk, including purchasing additional D&O insurance and creating a litigation reserve for Onsa's cash." FAC ¶ 190. These facts are entirely separate from the facts supporting Plaintiff's claim for trade secret misappropriation and, as discussed below, adequately state a claim for breach of fiduciary duty.

Defendants' argument appears to be that Plaintiff's fiduciary-duty claims must be preempted by CUTSA because the reason that Defendants breached their fiduciary duties was to enable their misappropriation of confidential and trade secret information. *See* Dkt. 57 at 11 ("The gravamen of the FAC is that Defendants allegedly concocted a scheme to steal Onsa's alleged confidential and trade secret information for their own use."). To be sure, Plaintiff believes that at least one of the reasons that Defendants liquidated Onsa was to enable and cover up their theft of Onsa's assets. But Plaintiff alleged a host of other reasons, such as to "avoid having to compensate Onsa for its development efforts; to gain the ability to launch the tokenized money market without Onsa's involvement and thereby avoid payment obligations to Onsa under the promised MSA, and to avoid liability for their numerous breaches of fiduciary duty and other decisions (e.g., through a derivative action by the non-Franklin Templeton shareholders) by assignment of Onsa's legal claims to a third party." FAC ¶ 47; *see also* FAC ¶ 169. Regardless, the reason that Defendants might have breached their fiduciary duties has nothing to do with whether they actually did so—"CUTSA does not displace tort claims, which, 'although related to a trade secret misappropriation, are independent and based on facts distinct from the facts the misappropriation." *Chromadex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (S.D. Cal. 2019) (quoting *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013)); *see also Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 WL 513287, at *14 (N.D. Cal. Jan. 31, 2020) ("For example, a claim alleging a violation of a duty of loyalty is not displaced by CUTSA where the duty of loyalty would be violated by undertaking competitive acts, regardless of whether any proprietary information was implicated.").

None of the cases addressing fiduciary-duty claims that Defendants cite actually support their position. In *Strategic Partners, Inc. v. FIGS, Inc.*, the fiduciary-duty claims were "premised upon allegations that [Defendant] . . . improperly accessed . . . confidential information and shared that information," and were thus preempted by CUTSA. 2021 U.S. Dist. LEXIS 200224, at *9 (C.D. Cal. Aug. 10, 2021). And in *Mattel, Inc. v. MGA Entm't, Inc.*, the claimed fiduciary duty was imposed by an agreement and "was limited to the employees' obligation to maintain the confidentiality of 'proprietary information,' the definition of which is identical to the definition of a 'trade secret' under the UTSA." 782 F. Supp. 2 911, 989 (C.D. Cal. Dec. 27, 2010). The fiduciary-duty claims were thus "by necessity based upon nothing more than the misappropriation of trade secret information," and were therefore preempted. *Id.* As explained above, however, the fiduciary-duty claims in this case are supported by facts independent of those supporting Plaintiff's claim for trade-secret misappropriation. Courts routinely hold that fiduciary-duty claims are not preempted in such situations. *See, e.g.*, *ChromaDex*, 369 F. Supp. 3d at 990; *Angelica Textile Servs.*, 220 Cal. App. 4th at 508; *Henry Schein*, 2017 WL 783617, at *3; *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1007 (N.D. Cal. Dec. 28, 2018); *Agile Sourcing Partners, Inc. v. Dempsey*, No. EDCV 21-773-JGB (SPx), 2021 WL 4860693, at *8 (C.D. Cal. July 15, 2021) (holding, in DTSA case, that fiduciary-duty claims were not preempted by CUTSA because they "allege bad behavior . . . that is outside the bounds of trade secret"). The Court should do the same here.

**ii. Plaintiff's Breach of Contract Claim is Not Preempted by the Copyright Act**

Defendants' two-sentence "analysis" (Dkt. 57 at 13) does not address the two-prong test for copyright preemption, does not examine the NDA's specific terms, does not address Plaintiff's detailed allegations, and does not come close to carrying the Defendants' burden with respect to this exceedingly complicated legal issue. To determine whether a claim is preempted by the Copyright Act, "the Court must look to the rights actually created by the contract, and then analyze whether any of those rights differ from [copyright law prohibitions]." *See, e.g., Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 19-08420-CJC, 2020 WL 2510652 , at *2-4 (C.D. Cal. Feb. 12, 2020) ("[B]reach of contract claims are not universally preempted."). Here, copyright preemption does not apply to Plaintiff's breach of NDA claims for numerous reasons, among them: (1) the first prong is not met with respect to certain "Confidential Information"

disclosed under the NDA (e.g., know-how, secrets, and verbally communicated information) because such information is not within the subject matter of copyright (*see* 17 U.S.C. § 107(b); and (2) the second prong is not met with respect to (i) nondisclosure obligations per se[10] and (ii) other NDA obligations that are qualitatively different from copyright protection (e.g. specific deletion obligations (e.g., print screens of process), verification of deletion by an independent witness, notice of deletion to particular persons, non-disclosure, etc.). FAC ¶¶ 20, 38, 68-69, 93-94, 118, 144, 189, 213-214, 229, 246-258. Indeed, the NDA provisions in this case are markedly different than the contractual terms at issue in *Rumble*, which merely stated that "Defendant … shall in the future make reasonable efforts to avoid violating the United States Copyright Act." 2020 WL 2510652, at *3. Moreover, Defendants do not acknowledge, much less address, a split of authority whereby certain courts have held that preemption does not apply to breach of contract claims at all. *Id.* at *3 n.2. In sum, FT Defendants have not come close to carrying their burden

**B. Plaintiff Adequately Pleads its Claims Against Defendants**

**i. The FAC Does Not Rely On Improper "Group Pleading"**

FRCP 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In a complaint involving multiple defendants, the complaint must provide "fair notice [to each defendant] of what plaintiff's claims are" as well as "fair notice of the grounds of the various claims." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996). Notably, "the prohibition against group pleading only applies in cases of fraud," and "Rule 8 pleading standards do not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant…." *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 57861, at *6 (N.D. Cal. Jan. 3, 2013). The FAC easily meets these requirements. It clearly identifies which claims are asserted against which Defendants, and it details the factual basis for each claim, including the actions that each Defendant took that support that claim.

[10] *See, e.g., Montz v. Pilgrim Films & TV, Inc.*, 649 F.3d 975, 981 (9th Cir. 2011) ("[Plaintiffs' claim for breach of confidence] protects the duty of trust or confidential relationship between the parties, an extra element that makes it qualitatively different from a copyright claim").

The allegations Defendants complain of are taken completely out of context and ignore the FAC as a whole. For example, Defendants cite to paragraph 1's use of "Defendants," but ignore that this is literally the very first sentence of the introduction section, which sets the stage for the 261 paragraphs that follow. Defendants also complain about paragraph 32's use of "Defendants' bad faith," yet they completely ignore that surrounding context identifies particular defendants and their actions (i.e., "***Franklin Templeton [defined in the FAC as FinTech and FRI] and Bayston*** deliberately kept Onsa's shareholders in the dark. Evidencing Defendants' bad faith and concern only for Franklin Templeton's interests, post investment ***Bayston and the Franklin-Templeton-controlled Onsa*** never once updated Onsa's other shareholders.").[11] Defendants' complaint about paragraph 141 is without merit because this paragraph merely includes a background fact that is not specifically related to any cause of action (i.e., providing notice to BLKCHN of "Defendants' misconduct"). The remainder of the paragraphs Defendants cite to are the *opposite* of group pleading. Paragraph 179, which refers to "FT FinTech, Franklin Resources, and Bayston breach[ing] their fiduciary duties of due care, good faith, and loyalty to Onsa," is found in "Count I" and specifically identifies the defendants accused of breach of fiduciary duty. The other paragraphs of this count specifically identify the wrongdoing by these Defendants. The same is true with respect to paragraph 212, which specifically identifies the defendants accused of trade secret misappropriation. While paragraphs 217, 226, and 230 refer to an "affiliate," they explicitly accuse FRI, FTC, and FinTech of trade secret misappropriation and copyright infringement. The paragraphs' reference to an "affiliate" merely acknowledges that, due to limited publicly available information about the Defendants' internal systems, it may be possible that an additional Franklin Templeton "affiliate" is liable. Only through discovery will Plaintiff be able to ascertain this information.

The cases cited by Defendants do not help them. First, Defendants misleadingly edited a quote from *Swartz v. KPMG LLP* to obscure that the court was analyzing the heightened pleading standard for fraud under FRCP 9(b). Dkt. 57 at 14. *Swartz v KMPG LLLP,* 476 F.3d 756, 764-65 (9th Cir. 2007). The unedited

[11] The Complaint specifically defines "Franklin Templeton" as FRI and its wholly owned subsidiary Fintech. Dkt. 55 at 1. Similarly, FT Defendants' motion defines the "FT Defendants" as FRI, FTC and FinTech. Dkt. 57 at 1. This type of definition is routine in pleadings involving multiple parties and in and of itself does not violate FRCP 8(a).

excerpt (with the omitted language emphasized) states that "***Rule 9(b)*** does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the ***fraud***." *Id*. (emphasis added). Rule 9(b) is inapplicable to the FAC.

*Tagoia v. Wells Fargo Bank, N.A*. involved an egregious set of circumstances in which the Court found that plaintiff's counsel displayed a "complete lack of understanding of legal precedent or an intentional and strategic attempt to misuse the judicial process." *Tagoia v. Wells Fargo Bank, N.A*., No. 17-CV-06777-YGR, 2018 WL 3377967, at *5 (N.D. Cal. July 11, 2018). "In light of plaintiffs' failure to file coherent oppositions," the Court "dismissed with prejudice [] three causes of action [that did] not purport to allege any wrongdoing committed by [] particular defendants." *Id.* These circumstances are inapplicable here. The FAC clearly identifies specific acts of wronging by individual defendants.

Similarly, *Austin v. Budget Rental Car, Inc*. involved the court sua sponte dismissing a frivolous complaint filed by a pro se plaintiff. *See Austin v. Budget Rental Car, Inc*., No. 20-CV-06229-AGT, 2020 WL 8614183, at *2 (N.D. Cal. Sept. 17, 2020). The Court found that plaintiff "refers only to conduct by 'financial companies,' without explaining what each of these companies did." *Id.* The FAC does not suffer from this deficiency.

**ii. Plaintiff Adequately States a Claim for Breach of Fiduciary Duty**

**1. FRI Owes a Fiduciary Duty to Onsa**

In a one-paragraph argument devoid of any analysis,[12] FRI alleges that it owes no fiduciary duty to Onsa because it is not a controlling shareholder in that (i) it owned no voting stock in Onsa, let alone a controlling one, and (ii) it is a separate entity from the controlling shareholder (FinTech) and Plaintiff pleads no facts to disregard FinTech's separate corporate form. Dkt. 57 at 16. But a party need not be the

[12] Of the four cases FT Defendants cite, three were for general propositions of law and only *Gilbert v. Perlman* directly addressed fiduciary-duty claims being dismissed against shareholders because they lacked control. *Gilbert v. Perlman*, No. CV 2018-0453-SG, 2020 WL 2062285, at *6 (Del. Ch. Apr. 29, 2020). But in *Gilbert*, the defendants alleged to form part of the control group had only 11% and 0.02% of the ownership and the plaintiff failed to allege any "legally significant connection" to the partnership group that owned a 56% stake and was an independent control group that "did not need the participation of" the two minority stockholders to achieve its goal. *Id*. at *19-22.

majority shareholder to be a controlling shareholder—it is enough that FRI exercised control over Onsa.

"Delaware courts have consistently looked to who wields control over the corporation and have imposed the risk of fiduciary liability on that individual." *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, No. CV 9962-VCL, 2016 WL 301245, at *10 (Del. Ch. Jan. 25, 2016). There are two ways in which a shareholder may be a controlling shareholder and thus owe fiduciary duties. First, a shareholder that owns more than 50% of the voting power of a corporation owes fiduciary duties to the corporation. *In re Primedia, Inc. Derivative Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006). Second "a stockholder stands as a fiduciary if it 'exercises control over the business and affairs of the corporation." *Id.* "Delaware law may countenance extending controller status and fiduciary duties to a nonstockholder that holds and exercises soft power that displaces the will of the board with respect to a particular decision or transaction." *Id.*; *see also In re Pattern Energy Grp. Inc. S'holders Litig.*, No. CV 2020-0357-MTZ, 2021 WL 1812674, at *40 (Del. Ch. May 6, 2021) ("Delaware courts have looked to who wields control in substance and have imposed the risk of fiduciary liability on that person, and liability for breach of fiduciary duty *therefore extends to outsiders* who effectively controlled the corporation." (emphasis in original) (internal citations omitted)). An "outsider" need not even control the day-to-day operations of a company to be a controller—control over a particular transaction is enough. *Primedia*, 910 A.2d at 257.

"'The question whether a shareholder is a controlling one is highly contextualized and difficult to resolve based solely on the complaint.' . . . '[T]here is no magic formula to control, it is a highly fact specific inquiry.'" *Pattern Energy Grp.*, 2021 WL 1812674, at *36. "The Controller Defendants' duties and resultant standard of review can only be known after the record is developed through discovery." Id. at *46.

The FAC shows that FRI controlled Onsa in two fundamental ways. First, FRI controls FinTech, which owns 100 percent of Onsa's voting stock, directly as a wholly-owned subsidiary, and thus controls Onsa indirectly through its ownership of FinTech. FAC ¶¶ 4, 22, 52-53, 95. This alone is sufficient. In a similar case, the Delaware Court of Chancery held that a corporation, MS Pawn Corp., owed fiduciary duties to another corporation, EZCORP, because MS Pawn Corp. controlled EZCORP's direct controller. *See In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, No. CV 9962-VCL, 2016 WL 301245, at

*10 (Del. Ch. Jan. 25, 2016). The same is true here. FinTech was the direct controller of Onsa, and FRI controlled Fintech. FRI thus owed fiduciary duties to Onsa.

Second, FRI controlled Onsa based on the power that FRI exercised over Onsa. FRI controlled the operations of Onsa through Johnson, the CEO of FRI and member of the board of directors (FAC ¶¶ 15, 55, 77), and Bayston. The FAC alleges that Johnson was directly involved in the operation of Onsa on behalf of FRI. For example, Johnson was directly involved in Franklin Templeton's investment in Onsa. FAC ¶¶ 55, 84-86, 88. She was similarly directly involved in the operational aspects of Onsa and had direct communications with Onsa's CEO about Onsa's operations. FAC ¶¶ 55, 99, 110, 129-131. The FAC alleges that Bayston was Onsa's sole board member and, as explained in Plaintiff's Response to Bayston's MTD, he was beholden to FinTech and FRI. FAC ¶ 178. Bayston was a thirty-year employee and senior executive of another of FRI's wholly-owned subsidiaries (Franklin Advisers). FAC ¶¶ 4-5, 56, 128, 177, 178.[13] Like Johnson, Bayston was directly involved in FT Defendants' investment in Onsa. FAC ¶¶ 19-21, 56, 84, 88-89, 152, 159. He was similarly involved in Onsa's operations. FAC ¶¶ 56, 101-103. The FAC also alleges that other FT Defendants' employees, including FT Defendants' vice presidents and legal department, were involved in Onsa's operation. FAC ¶ 110. Finally, the FAC alleges that Johnson and Bayston were directly involved with the decision to liquidate Onsa via the ABC. FAC ¶¶ 10, 41-43, 48, 55-56, 151-175. At the very least, the allegations show that FRI exercised control over the decision to liquidate Onsa through the ABC, which is sufficient. *See Primedia*, 910 A.2d at 257 ("[P]laintiffs need not demonstrate that KKR oversaw the day-to-day operations of Primedia. Allegations of control over the particular transaction at issue are enough.").

**2. The FAC Sufficiently and Plausibly Alleges Breach of Fiduciary Duty**

Plaintiff has properly plead extensive factual allegations supporting a breach of fiduciary duty claim against FinTech, FRI, and Bayston for breaches of both the duty of loyalty and the duty of care. Defendants seek to argue the facts with all inferences drawn in favor of Defendants, contrary to the governing legal

---

[13] FRI is the ultimate parent of FinTech and other wholly-owned Franklin Templeton subsidiaries. Dkt. 42. FRI is a holding company with subsidiaries operating under the "Franklin Templeton" or subsidiary brand names, and FRI's 2021 10K lists approximately 140 subsidiaries including FinTech, Onsa, and Franklin Advisers, Inc. *See* Dkt. 59-2 at 3. FRI conducts its business through its subsidiaries and its specialist investment managers, including Bayston's Fixed Income Group. *Id.* at 5-6

standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the motions to dismiss highlight numerous key factual disputes that will need to be resolved at trial, wholly unsuitable for disposition at the preliminary motion stage.

To summarize, Defendants were breaching their fiduciary duty almost from the beginning. FAC ¶¶ 21-49. Onsa was in the process of developing very valuable technology in which Defendants were highly interested and which they needed in order to regain the technological lead for their flagship money market fund. *See, e.g.*, FAC ¶¶ 81-86. FT Defendants' representatives promised a number of things that they intentionally failed to deliver and which ended up crippling Onsa's development and ultimate value. *See, e.g.*, *id.* ¶¶ 23-25. Included in these key misrepresentations and failures were that Onsa would be compensated for use of its technology (FAC ¶ 25), that FT Defendants would provide necessary funding, and that Onsa need not seek out any third-party funding. FAC ¶ 30.

The crux of these key allegations is to allege that Bayston, and the controlling shareholder (FinTech) and the indirectly controlling shareholder (FRI) from whom Bayston was not remotely independent, were acting to intentionally harm Onsa, and with bad faith. The purpose of these harmful actions was to make sure that Onsa's valuable technology could be misappropriated by FT Defendants and used solely to support it, as opposed to Onsa functioning as a standalone company that would provide services to FT Defendants' competitors in the financial services industry. The actions alleged were entirely contrary to the best interests of Onsa, which renders them disloyal and in bad faith. Having effectively misappropriated Onsa's valuable technology, and having ensured that Onsa would not be viable because of the absence of revenue and of third party financing, Defendants then orchestrated a liquidation of Onsa, blaming Onsa for the very circumstances that Defendants themselves created and caused. *See, e.g.*, FAC ¶¶ 42-46. Plaintiff addresses these issues in greater detail in the Response to Bayston's MTD and in the Response to Johson's MTD being filed contemporaneously with this response, which are incorporated herein by reference.

### 3. The FAC Sufficiently Alleges Breach of the Duty of Loyalty and Defeats the Presumption of the Business Judgment Rule as to the ABC.

The liquidation of Onsa through the ABC also raises substantial breaches of fiduciary duty. Plaintiff

has alleged that the liquidation was the worst option and benefited no one other than Franklin Templeton to whom Bayston was beholden. *See, e.g.,* FAC ¶ 194. Indeed, the after-the-fact Notice of the ABC ("**ABC Notice**") that was provided to Onsa's creditors and stockholders made clear that the stockholders were expected to receive *nothing* as a result of the ABC, putting the lie to the notion that the ABC was in the stockholders' "best interests." Ex. 3 to Travis Decl. All of the carefully structured steps just for the purpose of avoiding minor claims of a few insignificant creditors whose total claims are likely less than the legal fees expended? It is Defendants' explanation of the purpose of the ABC that is entirely implausible. The allegations of the complaint show a plan and scheme to eliminate the standing and ability of Onsa to pursue the claims asserted in the FAC. That Defendants were not entirely successful in their plan and scheme does not make their bad-faith motivations any less so. The failure of FinTech and FRI to consider alternatives, to consult with the shareholders, and the effort to actively mislead the shareholders about what was being done, all support the allegations that FRI and FinTech were acting contrary to the interests of Onsa and in bad faith.

FRI and FinTech, as the controllers of Onsa, approved and consented to the ABC, despite the fact that the Unanimous Consent signed by Bayston says that it was subject to the approval of the "Stockholders." Dkt. 55-1. But, in fact, as FinTech and FRI well knew, the transaction was never presented to any of the stockholders (other than FinTech), but was instead kept entirely secret until it was completed. The suggestion that the assignment was in the "best interests" of Onsa's shareholders is laughable given that it was not contemplated that shareholders would receive anything as a result of the transaction. The inapplicability of the business judgment rule is explained in much more detail in the Response to Bayston's MTD, where Bayston's lack of independence is established, rendering the presumption of the business judgment rule null and void.

**4. Bayston, FRI, and FinTech Are not Exculpated for any Breaches of Duty.**

As explained in detail in the Response to Bayston's MTD, Bayston, FinTech, and FRI are not exculpated for any breach of the duty of care because the allegations against them include both breach of the duty of care and breach of the duty of loyalty, as well as bad faith. Delaware law provides that "[w]hen

a duty of care breach is not the *exclusive* claim, a court may not dismiss [the duty of care claim] based upon an exculpatory provision." *In re Evergreen Energy, Inc.*, 546 B.R. 549, 561 (Bankr. D. Del. 2016) (citing *Bridgeport Holdings, Inc. Liquidating Trust v. Boyer*, 388 B.R. 548, 568 (Bankr. D. Del. 2008)) (applying Delaware law) (emphasis in original).

**iii. Plaintiff Adequately States a Claim Under the DTSA**

**1. Legal Standard**

As Defendants agree, to adequately state a claim under DTSA, a plaintiff must simply "*allege* that (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (emphasis added) (internal citations omitted); *see also Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); Dkt. 57 at 21. Defendants do not contest that Plaintiff has adequately identified its trade secrets, nor do they contest that misappropriation of such trade secrets are damaging—Defendants only challenge Plaintiff's ownership and assert that the "FAC lacks allegations giving rise to a plausible inference of misappropriation." Dkt. 57 at 21. To sufficiently plead misappropriation, a plaintiff must allege "either the '(1) [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or the '(2) [d]isclosure or use of a trade secret of another without express or implied consent.'" *Alta Devices, Inc.*, 343 F. Supp. at 882 (quoting 18 U.S.C. § 1839(5)). "[T]here is no requirement that [a plaintiff] plead exactly how Defendants improperly obtained [or used] the alleged trade secret," although "allegations of similarities [are] sufficient [to plead misappropriation] when accompanied by allegations of exactly how defendants improperly obtained the alleged trade secrets." *Id.* at 883 (internal citations omitted).

**2. Plaintiff Properly Pleads Possession of Trade Secrets**

For the reasons set forth in Section I.A, the FAC has more than adequately pled facts supporting Plaintiff's proprietary interest in the asserted trade secrets.

**3. The FAC Plausibly Alleges Misappropriation**

As an initial matter, Defendants unabashedly mischaracterize the scope of Plaintiff's trade secrets

claims by stating: "Plaintiff's theory of misappropriation remains murky, but appears to be based on the following theories: (1) alleged failure to delete code to which the FT Defendants had authorized access during the due diligence process; and (2) the alleged acquisition and use of code later developed by another Onsa contractor, [HTEC]." Dkt. 57 at 21. This self-serving distillation omits that Plaintiff has plainly accused Defendants of absconding with Plaintiff's trade secrets derived from any or all of the four sources identified in Section I.A above, and has further accused them of implementing and/or disclosing such trade secrets in their own products, such as the Franklin OnChain US Government Money Market Fund now available to the public.[14] FAC ¶¶ 196-220. Plaintiff could not have more clearly articulated this allegation, despite Defendants' claimed (and flawed) understanding of what Plaintiff's position is.

Plaintiff has more than adequately stated a claim for trade secret misappropriation. *Alta Devices, Inc.* is strikingly similar to this case—there, the defendant "was interested in and eager to explore [plaintiff's] 'disruptive' technology," gained access to the plaintiff's trade secrets under an NDA, and proceeded to thereafter produce technology that was similar to the plaintiff's. *Alta Devices, Inc.*, 343 F. Supp. at 883-884. The plaintiff there was found to have adequately plead a trade secret misappropriation claim by stating these facts in the complaint and alleging that the defendant was "building upon" its technology. *Id.* at 884. This is much less thorough than what Plaintiff has done in its FAC. Plaintiff put forth extremely detailed factual allegations of access (FAC ¶¶ 20-22, 65-70, 87-94, 133, 224, 230), specifically identified trade secrets, (FAC ¶¶ 117-123), and identified numerous similarities between Plaintiff's technology and Defendants' products (FAC ¶¶ 122, 148-150, 217). *See also, generally,* FAC ¶¶ 196-220. Thus, Plaintiff has sufficiently stated a claim.

Defendants' strategy consists of cherry-picking single facts from the FAC and alleging that one of such facts does not alone support an allegation for misappropriation. For example, Defendants assert that Plaintiff does not allege the exact timeframe in which Defendants misappropriated Plaintiff's trade secrets. *See* Dkt. 57 at 21-22. But whether misappropriation occurred both during due diligence and/or after due

[14] After Plaintiff filed its Original Complaint, Defendants changed the ticker symbol for this tokenized asset from "FOCGX" to "FOBXX." *See* https://www.franklintempleton.com/forms-literature/download/9001-P. This token is available for trading via Defendants' "Benji Investments" mobile application. *See, e.g.*, https://apps.apple.com/us/app/benji-investments/id1551677725.

diligence is a non-issue with respect to 12(b)(6)—it is at the very least occurring now, which is made clear in the FAC as discussed above. Defendants also argue that Plaintiff's assertion that Defendants "engaged HTEC to develop code for Onsa" is "speculative" and "conclusory," but Plaintiff's allegations stemming from HTEC-derived trade secrets are anything but speculative. In addition to the plethora of factual allegations identified in the paragraph above, Plaintiff even quoted from two different documents in its possession that revealed Defendants' intentions to misappropriate the HTEC-derived IP. FAC ¶¶ 166, 224; Dkt. 57 at 22. Defendants additionally argue that Johnson's interview and claimed "conclusory links" between Plaintiff's technology and Defendants' technology do not support an allegation of misappropriation; this ignores the plethora of facts regarding access and technical similarities. FAC ¶¶ 20-22, 65-70, 87-94, 122, 133, 148-150, 217; Dkt. 57 at 22. Defendants also take issue with Plaintiff pointing out that Franklin Templeton hired Onsa developers, arguing that hiring of employees does not by itself establish misappropriation. Dkt. 57 at 23. Plaintiff never said it did, which is why the FAC is replete with additional facts. Interestingly, in attacking these singled-out assertions, not once have Defendants actually denied using technology that came to them through Onsa.

Defendants' mantra that the well-pleaded facts of Plaintiff's FAC are "conclusory" is baseless. Plaintiff's trade secret claims could not be more factually grounded without access to Defendants' confidential information and source code. The facts of the FAC do not just allow a "plausible inference" of liability; it is the only reasonable inference. Dkt. 57 at 30.

#### iv. Plaintiff Adequately States a Claim for Copyright Infringement

Defendants' one-page attack on Plaintiff's copyright infringement claims is spurious. Indeed, it appears Defendants just made up law and claimed that Plaintiff did not abide by it. Defendants' continual insistence that there is no "nexus" between Defendants' access to Plaintiff's registered works and the alleged infringement is not based on a real legal standard. Indeed, Defendants have offered no legal authority to support it. Dkt. 57 at 24-25. FT Defendants' motion amounts to an argument that Plaintiff must *prove* copyright infringement by its complaint. That is not the law. Plaintiff need merely *allege* facts that, if true, would support a finding of copyright infringement. *See Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019). Plaintiff has done so.

Copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991). "To allege actionable copying, [Plaintiff is] required to plead facts plausibly showing either (1) that the two works in question are strikingly similar, or (2) that [the works] are substantially similar and that [Defendants] had access to the [Subject Work]." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (internal citations omitted). "Copying" can also be shown with "direct evidence of copying." *Carlini v. Paramount Pictures Corp.*, No. 21-55213, 2022 WL 614044, at *1 (9th Cir. Mar. 2, 2022). Allegations made on "information and belief" are sufficient where "(1) 'the facts are peculiarly within the possession and control of the defendant,' or (2) 'where the belief is based on factual information that makes the inference of culpability plausible.'" *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1224 (N.D. Cal. 2015) (citing *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). Plaintiff owns the copyrights at issue here for the same reasons as set forth above in Section I.A and thus addresses only the "copying" prong below. Plaintiff has registered the copyrights and is presumed to be the owner. 17 USC § 410(c).

The FAC adequately alleges copying. First and foremost, the FAC alleges and provides evidence of direct copying, with the NDA between the parties evincing that Defendants copied the works and further undertook obligations regarding what to do with the works after due diligence. *See* Dkt. 55-4 at 2 (discussing Defendants "downloading" source code and being obligated to subsequently provide proof of deletion). The FAC further alleges that Defendants did in fact copy Plaintiff's works and then never deleted them as was required by the NDA—this alone should obviate Defendants' arguments and render their motion moot. *See Carlini*, 2022 U.S. App. LEXIS 5480 at *2; FAC ¶¶ 93, 224. In addition to showing direct, unauthorized copying, the FAC clearly outlines Defendants' access to the copyrighted works (FAC ¶¶ 20-22, 65-70, 87-94, 133, 224, 230) and explains substantial similarities between Plaintiff's works and Defendants' works (FAC ¶¶ 122, 148-150, 217). Defendants attempt to undermine Plaintiff's assertions made "upon information and belief," but it is well-settled law that in situations such as this one where Defendants are "peculiarly within the possession and control" of the facts (e.g., source code), alleging facts "upon information and belief" to plead copyright infringement is entirely proper. *Clifton*, 152 F. Supp. 3d

at 1224. Defendants' source code is not accessible to Plaintiff and will not be until discovery, so it is currently a black box into which Plaintiff has no insight. But the factual information in the FAC "makes the inference of culpability plausible," again highlighting that Plaintiff has more than met the pleading standard in this case. *Id*.

**v. Plaintiff Adequately States a Claim for Breach of Contract**

FT Defendants provide three reasons for dismissing Count V of the FAC—each lacks merit. First, as discussed in Section I.C, Plaintiff has standing to assert a claim for breach of the NDA because: (1) it is the assignee of the NDA, (2) it is the assignee of TV Limited's claim for breach of the NDA, and (3) it is the successor of TV Limited under the NDA. Second, as discussed in Section I.C, FRI and FinTech may be sued for breach of the NDA because the NDA expressly defines the terms "Franklin" and "party" to include FRI and FinTech. Additionally, the NDA was signed by Joe Boerio, who is an officer (SVP, CTO) of FRI, the ultimate Franklin Templeton parent company, FRI. FAC ¶110. Boerio had authority to bind all of the FT Defendants. Third, the FAC is replete with factual allegations detailing the Defendants' improper use of "Confidential Information." *See, e.g.*, FAC ¶¶ 93 (listing specific obligations breached); 258. FT Defendants' arguments to the contrary are disingenuous. Indeed, section II.A.2 of the motion states that the breach of NDA claim is "based primarily on [Plaintiff's] contention that, in violation of the NDA, the FT Defendants allegedly copied and impermissibly kept copyrighted code," showing that Defendants know exactly what the basis for liability is.

**vi. Plaintiff is Entitled to Injunctive Relief**

The causes of action found in Counts I through V of the FAC support Plaintiff's request for injunctive relief. The prayer specifically includes a request for injunctive relief. Plaintiff does not dispute that the request for injunctive relief is not a cause of action. "Count VI" (mistakenly identified as Count V in the FAC ¶¶ 259-261) merely contains additional detail regarding Plaintiff's request for injunctive relief and was asserted in a "Count" because the request applies to each of the asserted causes of action.

## III. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND IF ITS PLEADINGS ARE FOUND DEFICIENT

If the Court determines that Plaintiff has failed to state a claim for any of its causes of action, it

should grant Plaintiff leave to amend. "Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,' bearing in mind 'the underlying purpose of Rule 15 to facilitate a decision on the merits rather than on the pleadings or technicalities.'" *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694 LHK, 2012 WL 6160472, at *16 (N.D. Cal. Dec. 11, 2012) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). "When dismissing a complaint for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez*, 203 F.3d at 1130). "Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Id.* at *50 (N.D. Cal. Dec. 11, 2012) (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

There would be no reason to deny leave to amend here. Defendants have identified no prejudice they would suffer, and Plaintiff has not acted in bad faith. Nor would amendment cause undue delay—this case was only filed in November 2021. There are also no indications that amending would be futile.

## CONCLUSION

For the reasons set forth above, FT Defendants' Motion to Dismiss should be denied.

Dated: April 22, 2022

Respectfully submitted,

/s/ Jeffrey D. McFarland
Jeffery D. McFarland California Bar No. 157628
jmcfarland@mckoolsmithhennigan.com MCKOOL SMITH HENNIGAN P.C.
300 South Grand Avenue, Suite 2900 Los Angeles, California 90071 Telephone: (213) 694-1010 Fax: (213) 694-1234

Gary Cruciani (Admitted *Pro Hac Vice*)
Texas Bar No. 05177300
Lew LeClair
California Bar No. 77136 gcruciani@mckoolsmith.com
lleclair@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201 Telephone: (214) 978-4000

Brent N. Bumgardner (Admitted *Pro Hac Vice*)

Texas Bar No. 00795272 Carder W. Brooks (Admitted *Pro Hac Vice*)
Texas Bar No. 24105536 brent@nelbum.com
carder@nelbum.com
NELSON BUMGARDNER CONROY P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107 Telephone: (817) 377-9111

Patrick J. Conroy (Admitted *Pro Hac Vice*)
Texas Bar No. 24012448 pat@nelbum.com NELSON BUMGARDNER CONROY P.C.
2727 N. Harwood Street, Suite 250 Dallas, Texas 75201
Telephone: (214) 446-4954

**Attorneys for Plaintiff BLOCKCHAIN INNOVATION, LLC**