1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffery D. McFarland
California Bar No. 157628
jmcfarland@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1010
Fax: (213) 694-1234

*(additional counsel listed on next page)*

**Attorneys for Plaintiff
BLOCKCHAIN INNOVATION, LLC**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| BLOCKCHAIN INNOVATION, LLC,<br><br>   *Plaintiff*,<br><br>v.<br><br>FRANKLIN RESOURCES, INC. d/b/a FRANKLIN TEMPLETON, FT FINTECH HOLDINGS, LLC, FRANKLIN TEMPLETON COMPANIES, LLC, JENNIFER JOHNSON, AND ROGER BAYSTON,<br><br>   *Defendants*. | CASE NO. 4:21-cv-08787-HSG<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT JENNIFER JOHNSON'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1   Gary Cruciani (Admitted *Pro Hac Vice*)
    Texas Bar No. 05177300
2   Lew LeClair
    California Bar No. 77136
3   gcruciani@mckoolsmith.com
    lleclair@mckoolsmith.com
4   MCKOOL SMITH P.C.
    300 Crescent Court, Suite 1500
5   Dallas, Texas 75201
    Telephone: (214) 978-4000
6

7   Brent N. Bumgardner (Admitted *Pro Hac Vice*)
    Texas Bar No. 00795272
8   Christopher G. Granaghan (Admitted *Pro Hac Vice*)
    Texas Bar No. 24078585
9   Carder W. Brooks (Admitted *Pro Hac Vice*)
    Texas Bar No. 24105536
10  brent@nelbum.com
    chris@nelbum.com
11  carder@nelbum.com
    NELSON BUMGARDNER CONROY P.C.
12  3131 West 7th Street, Suite 300
    Fort Worth, Texas 76107
13  Telephone: (817) 377-9111

14
    Patrick J. Conroy (Admitted *Pro Hac Vice*)
15  Texas Bar No. 24012448
    pat@nelbum.com
16  NELSON BUMGARDNER CONROY P.C.
    2727 N. Harwood Street, Suite 250
17  Dallas, Texas 75201
    Telephone: (214) 446-4954
18

19  **Attorneys for Plaintiff BLOCKCHAIN INNOVATION, LLC**

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2  INTRODUCTION ............................................................................................................ 1

3  ARGUMENT ................................................................................................................... 3

I.     PLAINTIFF'S AIDING AND ABETTING CLAIM IS NOT
PREEMPTED BY THE CALIFORNIA UNIFORM TRADE
  SECRETS ACT ...................................................................................................... 3

II.    PLAINTIFF HAS SUFFICIENTLY ALLEGED THAT JOHNSON
AIDED AND ABETTED BREACHES OF FIDUCIARY DUTIES
  OWED TO ONSA. ................................................................................................. 8

      A.     The FAC Pleads Factual Allegations that Reasonably Support
the Existence and Breaches of Fiduciary Duty by FRI,
Fintech, and Bayston.................................................................................... 9

      B.     Plaintiff Has Sufficiently Plead Johnson's "Knowing Participation"
in the Breaches Committed by the Fiduciary Defendants. ........................ 10

III.   PLAINTIFF HAS PROPERLY ALLEGED WRONGDOING PERSONALLY
ATTRIBUTABLE TO JOHNSON. ....................................................................... 18

IV.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND IF ITS
PLEADINGS ARE FOUND DEFICIENT. ........................................................... 20

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

CASES

4

*Agile Sourcing Partners, Inc. v. Dempsey*,
   No. EDCV 21-773-JGB (SPx), 2021 WL 4860693 (C.D. Cal. July 15, 2021) ........................8

*Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*,
   No. 2017-0583, 2018 WL 3006118 (Del. Ch. June 15, 2018)................................................4, 5

*Angelica Textile Servs., Inc. v. Park*,
   220 Cal. App. 4th 495 (2013) ...................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................8

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*,
   No. N15C-06-245 CEB, 2017 WL 1842899 96 (Del. Super. Ct. Apr. 20, 2017)......................4

*ATS Products, Inc. v. Champion Fiberglass, Inc.*,
   No. 13-cv-02403-SI, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015) .................................7

*Austin v. Budget Rental Car, Inc.*,
   No. 20-CV-06229-AGT, 2020 WL 8614183 (N.D. Cal. Sept. 17, 2020)................................19

*Bautista v. L.A. Cty.*,
   216 F.3d 837 (9th Cir. 2000) ...................................................................................................20

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010).......................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................8, 18

*BrandRep, LLC v. Ruskey*,
   No. 2018-0541-MTZ, 2019 WL 117768 (Del. Ch. Jan. 7, 2019)...............................10, 11, 17

*Chromadex, Inc. v. Elysium Health, Inc.*,
   369 F. Supp. 3d 983 (S.D. Cal. 2019).................................................................................7, 8

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   No. 12-04000 SC, 2013 WL 57861 (N.D. Cal. Jan. 3, 2013)..................................................18

*Cumming ex. rel. New Senior Inv. Grp., Inc. v. Edens*,
   No. CV 13007-VCS, 2018 WL 992877 (Del. Ch. Feb. 20, 2018)...........................................10

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
   23 F.4th 1195 (9th Cir. 2022) ............................................................................8

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
   388 F. Supp. 2d 426 (D. Del. 2005)..............................................................4, 5

*Firefighters' Pension Sys. v. Presidio, Inc.*,
   251 A.3d 212 (Del. Ch. 2021)..........................................................................17

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   No. 19-cv-05611-PJH, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020)................7

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996)...................................................................18

*Henry Schein, Inc. v. Cook*,
   No. 16-cv-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017)..............5, 8

*Herrejon v. Ocwen Loan Servicing, LLC*,
   980 F. Supp. 2d 1186 (E.D. Cal. 2013).......................................................19, 20

*Houseman v. Sagerman*,
   No. CIV.A. 8897-VCG, 2014 WL 1600724 (Del. Ch. Apr. 16, 2014)............10

*iBio, Inc. v. Fraunhover USA, Inc.*,
   No. 10256-VCG, 2020 WL 5745541  (Del. Ch. Sep. 25, 2020).......................4

*In re Dole Food Co., Inc. Stockholder Litig.*,
   No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015) ................9, 10, 11

*In re Good Tech. Corp. Stockholder Litig.*,
   No. 11580-VCL, 2017 WL 2537347 (Del. Ch. May 12, 2017).........................9

*In re Petco Animal Supplies, Inc. Shareholder Litig.*,
   Case No. 07-cv-0602-BEN, 2008 WL 11508672 (S.D. Cal. Feb. 15, 2008)......3

*In re Sagent Tech., Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................3

*In re Shoe-Town, Inc. S'holders Litig.*,
   No. 9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990) ..................................16, 17

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,
   171 Cal. App. 4th 939 (2009) ...........................................................................5

*KT4 v. Palantir Techs.*,
   No. N17C-12-212 EMD CCLD, 2021 WL 2823567 (Del. Super. Ct. June 24, 2021)..............4

*Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*,
   No. CIV.A. 6546-VCL, 2014 WL 5192179 (Del. Ch. Oct. 10, 2014) ...................................11

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ................................................................................................20

*Malpiede v. Townson*,
   780 A.2d 1075, 1097 (Del. 2001) ........................................................................................10

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2 911, 989 (C.D. Cal. Dec. 27, 2010) ...............................................................7

*Mesirov v. Enbridge Energy Co.*,
   No. 11314-VCS, 2018 WL 4182204 (Del. Ch. Aug. 29, 2018) ............................................10

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. Dec. 28, 2018).....................................................................8

*Scheuer v. Rhodes*,
   416 U.S. 232, 236 (1974) .......................................................................................................8

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ................................................................................................5

*Simon v. Stang*,
   No. C 10-00262 JF (HRL), 2010 WL 1460430 (N.D. Cal. Apr. 8, 2010)..............................3

*Strategic Partners, Inc. v. FIGS, Inc.*,
   No. 2:19-cv-02286-JHW-KSx,
   2021 U.S. Dist. LEXIS 200224 at *9 (C.D. Cal. Aug. 10, 2021) ............................................7

*SunPower Corp. v. SolarCity Corp.*,
   No. 12-CV-00694 LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)..............................21

*Waymo, LLC v. Uber Techs., Inc.*,
   256 F. Supp. 3d 1059 (N.D. Cal. 2017) .................................................................................5

**STATUTES**

6 Del. C. § 2007 ...........................................................................................................................4

California Uniform Trade Secrets Act..................................................................................2, 3

Delaware Uniform Trade Secrets Act......................................................................................3

DUTSA ....................................................................................................................................4, 5

UTSA ......................................................................................................................................7, 8

FRCP 8................................................................................................................18, 20

FRCP 12.....................................................................................................................8

FRCP 15...................................................................................................................20

Plaintiff Blockchain Innovation, LLC ("**Plaintiff**" or "**Blockchain**") files this Response ("**Response**") to Jennifer Johnson's ("**Johnson**") Motion to Dismiss ("**Johnson's MTD**" or "**MTD**") the First Amended Complaint ("**FAC**"). As Defendants did with their individual motions to dismiss, Plaintiff incorporates by reference, as if fully set forth herein, (i) Plaintiff's Response to Franklin Resources, Inc.'s ("**FRI**"), FT Fintech Holdings, LLC's ("**FinTech**"), and Franklin Templeton Companies, LLC's ("**FTC**") (FRI, FinTech, and FTC, collectively, "**FT Defendants**") Motion to Dismiss the First Amended Complaint ("**Response to FT Defendants' MTD**"), and (ii) Plaintiff's Response to Roger Bayston's ("**Bayston**") Motion to Dismiss the First Amended Complaint ("**Response to Bayston's MTD**"). FT Defendants, Johnson, and Bayston may hereinafter be collectively referred to as "**Defendants**."

## INTRODUCTION

The thrust of this case is a series of breaches of fiduciary duties that culminated in Defendants orchestrating a sham liquidation of Plaintiff's predecessor, Onsa, Inc. ("**Onsa**"). Johnson, who is the CEO of FRI (commonly referred to with its affiliates as "**Franklin Templeton**"), aided and abetted these egregious breaches.

Onsa was a promising fintech startup, a software-based financial technology company that developed innovative blockchain technology. Johnson was familiar with Onsa's founders from another transaction between a Franklin Templeton affiliate and the founders' other startup. Once Johnson learned about Onsa's technology, she became enamored with it and decided that Franklin Templeton should invest in Onsa so that Franklin Templeton could pivot from its lumbering and antiquated systems and unveil the world's first SEC-approved, "tokenized" money market fund.

Johnson was involved knee-deep in this venture, from exciting beginning to tragic ending. She was substantially involved in negotiating the investment by FRI's subsidiary, FinTech, which acquired all of Onsa's voting stock. Once FRI and FinTech took control of Onsa, Johnson was personally involved in the company's operation. All seemed well with the relationship until July 2020 when Johnson and the other Defendants struck without warning and without cause by terminating Onsa's CEO and all other significant employees, including Onsa's software engineers and coders.

This was the opening salvo in what ultimately lead Johnson and the other Defendants to liquidate Onsa through an assignment for benefit of creditors ("**ABC**") in November 2020. Notwithstanding that the corporate documents relating to this ABC provided that the liquidation was subject to obtaining approval of Onsa's stockholders, the non-Franklin Templeton stockholders received no notice and were offered no vote prior to Defendants' decision to shutter Onsa. In a cruel irony, Bayston, the Franklin Templeton employee who was Onsa's sole director, signed a Unanimous Consent that the liquidation was in the "best interests" of the stockholders even though they were slated to have their entire investment wiped out as a result of the ABC. All this corporate chicanery was done with Johnson's participation, knowledge, and approval.

At the time Johnson and the other Defendants commenced liquidation, Onsa had no significant creditors, but did have very valuable infrastructure, trade secrets, and other intellectual property, according to Onsa's own financial statements and recent third-party valuations. Onsa also had the ability to raise funds and continue operations. But that was contrary to the plans of Johnson and the other Defendants to eliminate Onsa and use  Onsa's technology in launching Franklin Templeton's own tokenized fund, which Franklin Templeton has recently done.

Johnson puts forth three grounds why she should be dismissed from this lawsuit. None have merit. *First*, the aiding and abetting claims against Johnson are not preempted by the California Uniform Trade Secrets Act ("**CUTSA**"). Plaintiff's claims as to Johnson are governed by Delaware law, and further, neither CUTSA nor the Delaware equivalent preempt the fiduciary duty claims, which are independently supported by the well-plead allegations of the FAC. *Second*, the FAC has more than adequately alleged that Johnson aided and abetted breaches of fiduciary duty by Bayston, FinTech, and FRI—the FAC is replete with detail alleging Johnson's scienter and substantial assistance in killing Onsa. These allegations, and all plausible inferences stemming therefrom, must be taken as true. *Third*, specifics regarding Johnson's wrongdoing permeate the FAC. As further discussed below, the FAC puts forth explicit facts supporting Plaintiff's claim, and Johnson's cry of impermissible group pleading is disingenuous.

<u>**ARGUMENT**</u>

## I.    PLAINTIFF'S AIDING AND ABETTING CLAIM IS NOT PREEMPTED BY THE CALIFORNIA UNIFORM TRADE SECRETS ACT

For the same reasons set forth in Section II of Plaintiff's Response to the FT Defendants' MTD, Plaintiff's claim against Johnson for aiding and abetting breaches of fiduciary duties by FRI, FinTech, and Bayston is not superseded by CUTSA. First, contrary to Johnson's assumption, Delaware law applies to whether Plaintiff's claims for breach of fiduciary duty against FinTech, FRI, and Bayston are preempted. Similarly, Delaware law applies to whether Plaintiff's claim against Johnson for aiding and abetting is preempted. Delaware courts consistently hold that fiduciary-duty claims are not preempted by the Delaware Uniform Trade Secrets Act ("DUTSA"), even when those claims are based on the misappropriation of confidential information. Second, Plaintiff's claims for breach of fiduciary duty against FinTech, FRI, and Bayston are supported by facts independent of the facts supporting Plaintiff's trade-secret claims, so they are not preempted regardless of which state's law applies. Similarly, Plaintiff's claim against Johnson for aiding and abetting is supported by facts independent of Plaintiff's trade-secret claims.

Defendants' entire argument is based on the incorrect assumption that California law applies to the issue of preemption. Yet in Johnson's MTD, she expressly acknowledges that "[t]he internal affairs doctrine dictates that the aiding and abetting [breach of fiduciary duty] claim is governed by ***Delaware law***." *See* Dkt. 58 at 7 n.8 (emphasis added); *see also In re Sagent Tech., Derivative Litig.*, 278 F. Supp. 2d 1079, 1086-87 (N.D. Cal. 2003) ("Under the 'internal affairs' doctrine, which is followed in most states, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders. . . . "); *see also In re Petco Animal Supplies, Inc. Shareholder Litig.*, No. 07-cv-0602-BEN (WMc), 2008 WL 11508672, at *3 (S.D. Cal. Feb. 15, 2008) ("The court concludes that the internal affairs doctrine is applicable to this case. Furthermore, the aiding and abetting claims fall under the scope of the doctrine."). If Delaware law applies to Plaintiff's fiduciary-duty and aiding-and-abetting claims, then it is Delaware law, not California law, that should govern the availability of a cause of action in these circumstances. Holding otherwise would subject the internal affairs of a Delaware entity to the laws of multiple states—the very thing that the internal affairs doctrine seeks to avoid. *See Simon v. Stang*, No. C

10-00262 JF (HRL), 2010 WL 1460430, at *8 (N.D. Cal. Apr. 8, 2010) ("The internal affairs doctrine seeks to ensure that the internal affairs of corporations are not subjected to the conflicting laws of various states."). Moreover, it would effectively determine that one state's law can override another state's law—a proposition that has no support in the law.

While DUTSA "displaces conflicting tort, restitutionary and other laws of this State providing civil remedies for misappropriation of a trade secret," 6 Del. C. § 2007, Delaware courts have held that it does not preempt fiduciary-duty claims. Under DUTSA, "[a] claim will be preempted if it is 'grounded in the same facts which purportedly support the Misappropriation of Trade Secrets claim." *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (quoting *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170 (Del. Super. 2001)). Delaware courts hold that fiduciary-duty claims are not preempted under this test because "[t]he same facts are not required to establish all the elements of both the misappropriation and breach of fiduciary duty claims." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). The "distinguishing fact" of fiduciary-duty claims is "the existence of a fiduciary relationship, which require[s] proof beyond what is required for misappropriation under DUTSA and which brings with it special duties and obligations." *Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*, No. 2017-0583, 2018 WL 3006118, at *10 (Del. Ch. June 15, 2018); *see also iBio, Inc. v. Fraunhover USA, Inc.*, No. 10256-VCG, 2020 WL 5745541, at *13 (Del. Ch. Sep. 25, 2020) (recognizing holding of *Alarm.com*); *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, No. N15C-06-245 CEB, 2017 WL 1842899, at *15 (Del. Super. Ct. Apr. 20, 2017); *KT4 v. Palantir Techs.*, No. N17C-12-212 EMD CCLD, 2021 WL 2823567, at *25 (Del. Super. Ct. June 24, 2021). Thus, even if Johnson is correct that Plaintiff's fiduciary-duty claims are based on "a scheme to steal Onsa's alleged confidential and trade secret information for their own use," Dkt. 58 at 6, Plaintiff's claim against Johnson is not preempted.

Here, Plaintiff's claim against Johnson for aiding and abetting breach of fiduciary duty is not preempted for the same reasons that Plaintiff's claims for breach of fiduciary duty against FinTech, FRI, and Bayston is not preempted. Like the claims against FinTech, FRI, and Bayston, an element of the aiding and abetting cause of action against Johnson is the existence of a fiduciary relationship. *See* Dkt. 58 at 7

(citing *In re Oracle Corp. Derivative Litig.*, No. CV 2017-0337-SG, 2020 WL 3410745, at *10 (Del. Ch. June 22, 2020)). As such, additional proof is required beyond that required to establish misappropriation; thus, there is no preemption under DUTSA. *See Alarm.com Holdings, Inc.*, 2018 WL 3006118, at *10. Additionally, according to Johnson's own MTD, the aiding and abetting claim further requires the element of "knowing participation in that breach by the defendant[]." *See* Dkt. 58 at 7. This is yet another element requiring proof beyond that required to show trade secret misappropriation.

Even if CUTSA applies (or even if Delaware did not broadly allow fiduciary-duty claims based on the misappropriation of confidential information), Plaintiff's fiduciary-duty and aiding-and-abetting claims are not preempted because Plaintiff pleads facts in support of its those claims other than the facts that also support its trade-secret-misappropriation claims. Under California law, a claim is preempted by CUTSA if it is "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 958 (2009); *see also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232 (2010). To determine whether a claim is based on the same nucleus of facts as a trade secret misappropriation claim, courts in this district "ask[] whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to support other causes of action." *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see also Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ("[T]he CUTSA preempts a common law claim when, after the facts relating to the trade secrets are removed, there are insufficient facts for the claim to survive."). And, as explained above, a claim is preempted by DUTSA only when it is "grounded in the same facts" as a trade-secret-misappropriation claim. *Ethypharm*, 388 F. Supp. 2d at 433.

The FAC pleads significant facts in support its breach of fiduciary duty claims and its an aiding-and-abetting claim that are independent of the facts that support Plaintiff's trade secret misappropriation claims. For example, Plaintiff pleads that Bayston, FT Fintech, and Franklin Resources breached their duties of due care, good faith, and loyalty to Onsa by acting in secret from Onsa's non-Franklin Templeton shareholders and from Onsa's management. FAC ¶¶ 181-183. Plaintiff also pleads that Bayston, FT

Fintech, and Franklin Resources breached their duties of due care, good faith, and loyalty by making the decision to wind down and liquidate Onsa, culminating in the ABC. FAC ¶¶ 184-194. According to the First Amended Complaint, "the process undertaken by FT FinTech, Franklin Resources, and Bayston as well as the actual decision to liquidate Onsa were willfully uninformed, grossly negligent, self-interested, and in bad faith." FAC ¶ 185. For example, "there is no evidence that FT FinTech, Franklin Resources, and Bayston made any efforts to inform themselves of alternatives to liquidation or explore any alternatives with third parties." FAC, ¶ 186. Moreover, "[t]here was no legitimate reason to liquidate Onsa via the ABC" because "Onsa was extremely valuable in the marketplace and fully capable of capitalizing on its business plans and raising funds." FAC ¶ 187. Indeed, FinTech, FRI, and Bayston, "were aware that their decision to liquidate Onsa created litigation risks for them and they discussed efforts to try to remediate that risk, including purchasing additional D&O insurance and creating a litigation reserve for Onsa's cash." FAC ¶ 190. As set forth in greater detail below, the FAC alleges that alleges that Johnson was directly involved in the operation of Onsa on behalf of FRI. For example, Johnson was directly involved in FT Defendants' investment in Onsa. FAC ¶¶ 55, 84-86, 88. The FAC further alleges that Johnson was directly involved with the decision to liquidate Onsa via the ABC. FAC, ¶¶ 10, 41-43, 48, 55-56, 151-175, 244. And the FAC alleges that Johnson knowingly participated in the other Defendants' breaches of fiduciary duty. FAC ¶¶ 234-245. These facts are entirely separate from the facts supporting Plaintiff's claim for trade secret misappropriation and, as discussed in more detail below and in Plaintiff's Response to Bayston's MTD and Plaintiff's Response to FT Defendants' MTD, state a claim for breach of fiduciary duty.

Defendants' argument appears to be that Plaintiff's fiduciary-duty claims must be preempted by CUTSA because the reason that Defendants breached their fiduciary duties was to enable their misappropriation of confidential and trade secret information. *See* Dkt. 58 at 6 ("The gravamen of the FAC is that Defendants allegedly concocted a scheme to steal Onsa's alleged confidential and trade secret information for their own use."). To be sure, Plaintiff believes that at least one of the reasons that Defendants liquidated Onsa (and breached their fiduciary duties in the process) was to enable and cover up their theft of Onsa's assets. But Plaintiff also believes that there are a host of other reasons, such as to

"avoid having to compensate Onsa for its development efforts; to gain the ability to launch the tokenized money market without Onsa's involvement and thereby avoid payment obligations to Onsa under the promised MSA, and to avoid liability for their numerous breaches of fiduciary duty and other decisions (e.g., through a derivative action by the non-Franklin Templeton shareholders) by assignment of Onsa's legal claims to a third party." *See, e.g.*, FAC, ¶ 47; *see also* FAC, ¶ 169. Regardless, the reason that Defendants might have breached their fiduciary duties has nothing to do with whether they actually did so—"CUTSA does not displace tort claims, which, 'although related to a trade secret misappropriation, are independent and based on facts distinct from the facts the misappropriation.'" *Chromadex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (S.D. Cal. 2019) (quoting *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013)); *see also Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 WL 513287, at *14 (N.D. Cal. Jan. 31, 2020) ("For example, a claim alleging a violation of a duty of loyalty is not displaced by CUTSA where the duty of loyalty would be violated by undertaking competitive acts, regardless of whether any proprietary information was implicated.").

None of the cases addressing fiduciary-duty claims that Defendants cite actually support their position. In *Strategic Partners, Inc. v. FIGS, Inc.*, the fiduciary-duty claims were "premised upon allegations that [Defendant] . . . improperly accessed . . . confidential information and shared that information," and were thus preempted by CUTSA. No. 2:19-cv-02286-JHW-KSx, 2021 U.S. Dist. LEXIS 200224 at *9 (C.D. Cal. Aug. 10, 2021). In *ATS Products, Inc. v. Champion Fiberglass, Inc.*, the aiding-and-abetting claims "stem[med] out of plaintiff's allegations that [defendant] knew that various third parties had to use plaintiff's trade secrets to make their resins, and that with this knowledge, [defendant] agreed to purchase resin from those third parties." No. 13-cv-02403-SI, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015). And in *Mattel, Inc. v. MGA Entm't, Inc.*, the claimed fiduciary duty was imposed by an agreement and "was limited to the employees' obligation to maintain the confidentiality of 'proprietary information,' the definition of which is identical to the definition of a 'trade secret' under the UTSA." 782 F. Supp. 2 911, 989 (C.D. Cal. Dec. 27, 2010). The claims were thus "by necessity based upon nothing more than the misappropriation of trade secret information," and were therefore preempted. *Id.* As

explained above, however, the fiduciary-duty and aiding-and-abetting claims in this case are supported by facts independent of those supporting Plaintiff's claim for trade-secret misappropriation. Courts routinely hold that fiduciary-duty claims are not preempted in such situations. *See, e.g.*, *ChromaDex*, 369 F. Supp. 3d at 990; *Angelica Textile Servs.*, 220 Cal. App. 4th at 508; *Henry Schein*, 2017 WL 783617, at *3; *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1007 (N.D. Cal. Dec. 28, 2018); *Agile Sourcing Partners, Inc. v. Dempsey*, No. EDCV 21-773-JGB (SPx), 2021 WL 4860693, at *8 (C.D. Cal. July 15, 2021) (holding, in DTSA case, that fiduciary-duty claims were not preempted by CUTSA because they "allege bad behavior . . . that is outside the bounds of trade secret"). The Court should do the same here.

## II.  PLAINTIFF HAS SUFFICIENTLY ALLEGED THAT JOHNSON AIDED AND ABETTED BREACHES OF FIDUCIARY DUTIES OWED TO ONSA.

Plaintiff has plead more than sufficient factual allegations in support of its aiding and abetting claim against Johnson to survive its low burden required at the pleading stage. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007) ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). The complaint must simply contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). As the Ninth Circuit has recently observed, "[i]t is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (quoting *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991)).

As Johnson acknowledges in her motion, there are *four* elements required for a plaintiff to state a claim for aiding and abetting a breach of fiduciary duty under Delaware law: "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in the breach by the non-

fiduciary defendants, and (iv) damages proximately caused by the breach.'"[1] *See* Dkt. 58 at 7 (citing *In re Oracle Corp. Derivative Litig.*, No. CV 2017-0337-SG, 2020 WL 3410745, at *10 (Del. Ch. June 22, 2020)). Delaware courts have recognized that because "the involvement of secondary actors in tortious conduct can take a variety of forms that can differ vastly in their magnitude, effect, and consequential culpability," questions involving the sufficiency of aiding and abetting allegations are "necessarily fact intensive," and as such, they are unsuitably decided without discovery and/or trial. *In re Dole Food Co., Inc. Stockholder Litig.*, No. 8703-VCL, 2015 WL 5052214, at *41-42 (Del. Ch. Aug. 27, 2015); *see also In re Good Tech. Corp. Stockholder Litig.*, No. 11580-VCL, 2017 WL 2537347, at *6-7 (Del. Ch. May 12, 2017) ("Evaluating the[] factors [of an aiding and abetting claim] requires a trial."). Here, Plaintiff has adequately plead each element required under Delaware law to survive Johnson's MTD, and therefore Plaintiff is entitled to proceed with this "necessarily fact intensive" claim through discovery. *Id.*

### A. The FAC Pleads Factual Allegations that Reasonably Support the Existence and Breaches of Fiduciary Duty by FRI, Fintech, and Bayston.

Johnson's MTD first alleges that "the aiding and abetting claim fails for lack of any underlying breach of fiduciary duty." *See* Dkt. 58 at 8. In making this assertion, Johnson's MTD relies *entirely* on the motions to dismiss filed by FRI, FinTech, and Bayston. *See id.* ("Here, Plaintiff fails to allege underlying breaches of fiduciary duty for the reasons set forth in the FT Defendants' and Bayston's Motion to Dismiss."). Johnson's MTD does not assert any *independent* basis for its allegation that the FAC fails to adequately plead an "underlying breach of fiduciary duty." *See id.* Accordingly, Plaintiff incorporates by reference the arguments it makes in Plaintiff's Response to the FT Defendants' MTD and Plaintiff's Response to Bayston's MTD, filed concurrently herewith. Specifically, Plaintiff's Response to the FT Defendants' MTD demonstrates the existence of fiduciary duties owed by FRI and FinTech to Onsa, as well as the breach of these fiduciary duties by FRI and FinTech; Plaintiff's Response to Bayston's MTD demonstrates the existence of a fiduciary duty owed by Bayston to Onsa, as well as the

---

[1] Although Johnson has dedicated independent sections of her motion to argue that Plaintiff has failed to plead facts supporting Johnson's "scienter" and "substantial assistance," (*see* Johnson Mot. § II (B) & (C)), Plaintiff notes that these are not separate and independent elements of an aiding and abetting claim required under Delaware law, but rather they are two factors relevant to the court's analysis of the third element: *knowing participation*. Regardless, both are satisfied in this case.

1  breach of this fiduciary by Bayston. The Bayston MTD also details why the business judgment rule and

2  exculpatory provisions are inapplicable to this case.

3     Notwithstanding the adequacy of the FAC's pleading of an underlying breach, it is worth pointing

4  out that courts routinely find that the first two elements of an aiding and abetting claim are sufficiently

5  plead, or even assume as much at the motion to dismiss stage, because all of the factual allegations in the

6  complaint must be taken to be true.  *See, e.g.*, *Houseman v. Sagerman*, No. CIV.A. 8897-VCG, 2014 WL

7  1600724, at *9 (Del. Ch. Apr. 16, 2014) ("For purposes of my analysis here, I assume factors (1) and (2)

8  [i.e., (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty], and concentrate on

9  the sufficiency of allegations of knowing participation . . . ."); *Cumming ex. rel. New Senior Inv. Grp.,*

10 *Inc. v. Edens*, No. CV 13007-VCS, 2018 WL 992877, at *26 (Del. Ch. Feb. 20, 2018) ("The first two

11 elements have been addressed in my findings above. . . . Thus, as is often the case in aiding and abetting

12 litigation . . . the focus turns to whether Plaintiff has adequately pled 'knowing participation' by the

13 alleged aiders and abettors."); *Mesirov v. Enbridge Energy Co.*, No. 11314-VCS, 2018 WL 4182204, at

14 *13 (Del. Ch. Aug. 29, 2018) ("Here, as is often the case, the viability of Plaintiff's aiding and abetting

15 claim . . . turns on whether the TAC adequately pleads that Simmons "knowingly participated" in [the

16 defendants'] breaches of . . . fiduciary duties.").

17     **B.     Plaintiff Has Sufficiently Plead Johnson's "Knowing Participation" in the Breaches
           Committed by the Fiduciary Defendants.**

18     "Knowing participation in a fiduciary breach requires that the third party act with the knowledge

19 that the conduct advocated or assisted constitutes such a breach." [2] *BrandRep, LLC v. Ruskey*, No. 2018-

20 0541-MTZ, 2019 WL 117768, at *5 (Del. Ch. Jan. 7, 2019) (quoting *Malpiede v. Townson*, 780 A.2d

21 1075, 1097 (Del. 2001)). "[T]he element of 'knowing participation' requires that the secondary actor

22 have provided 'substantial assistance' to the primary violator." *Id.* (quoting *In re Dole Food Co., Inc.*

23 *S'holder Litig.*, 2015 WL 5052214, at *41).  "A court's analysis of whether a secondary actor

24

25     _____

26 [2] Johnson attempts to divide the element of "knowing participation" into two separate requirements,
   "scienter" and "substantial assistance." *See* Dkt. 58 at 8 ("Here, the FAC fails to plead facts supporting any

27 of (1) an underlying breach, (2) scienter, and (3) substantial assistance. *The failure of any one of these
   elements is fatal to Plaintiff's claim*.") (emphasis added).)

28

'knowingly' provided 'substantial assistance' is necessarily *fact intensive.*" *Id.* (emphasis added) (quoting *In re Dole Food Co., Inc.*, at *42).  Additionally, "in some circumstances, the [defendant's] actions may be so suspect as to permit, if proven, an inference of knowledge of an intended breach of trust." *Id.* (quoting *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. CIV.A. 3290-VCP, 2009 WL 1387115, at *16 (Del. Ch. May 18, 2009)); *see also Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, No. CIV.A. 6546-VCL, 2014 WL 5192179, at *11 (Del. Ch. Oct. 10, 2014) ("Knowledge also can be inferred from the circumstances.").

Regarding the element of Johnson's "knowing participation," the MTD commits the cardinal sin of *not* accepting the well-plead allegations of the FAC as true and *not* drawing plausible inferences in favor of Plaintiff. Indeed, the FAC is replete with detailed, specific allegations with respect to Johnson's deep personal involvement with Onsa from "Day 1," and her "knowing participation" in FRI, FinTech and Bayston's breach of their fiduciary duties to Onsa. For example, the FAC alleges that:

- **Johnson was *substantially* and *personally* involved in Franklin Templeton's decision to invest in Onsa, including personally meeting with Onsa's founders on multiple occasions:** FAC ¶¶ 19, 20, 55 ("*Johnson* was responsible for catalyzing Franklin Templeton's equity investment in Onsa."), ¶ 84 ("Immediately after the meeting with Citi, Franklin Templeton executive[] *Johnson* … pulled Trombley into a meeting to discuss Onsa"), ¶ 88 ("*Johnson* and Bayston were personally involved in Franklin Templeton's investment in Onsa. *Johnson*, Bayston, and other Franklin Templeton executives met with Onsa's founders on multiple occasions to discuss Franklin Templeton's plans for Onsa"), ¶¶ 238-39.

- **Johnson personally assured Onsa's founders (which assurances ultimately proved to be false) regarding Franklin Templeton's plans for Onsa post-investment:** FAC ¶ 23 ("*Johnson* and Bayston repeatedly reassured Onsa that post-investment, Onsa would function as an independent company and have an independent board of directors. However, post-investment, Franklin Templeton [did not follow through on this promise]."), ¶ 24 ("Pre-investment, Franklin Templeton,

*Johnson* and Bayston agreed that Onsa would be allowed to seek out customers beyond Franklin Templeton. But post-investment, Franklin Templeton shut down these efforts."), ¶ 96 ("To assuage these concerns, *Johnson* promised that *she* would create a three-person board that would include someone affiliated with Onsa prior to the acquisition, a Franklin Templeton member, and an independent member approved by both"), ¶¶ 240-42.

- **Johnson was personally involved in running Onsa:** FAC ¶ 55 ("*Johnson* was also directly involved with operational aspects of Onsa, including direct communications with Onsa's CEO concerning Onsa's operations."), ¶ 99 ("*Johnson* continued to stay actively involved in the management of Onsa."), ¶ 100 ("*Johnson* personally interviewed many, if not all, of the proposed CEO candidates."), ¶¶ 107, 109-110, 243 ("Post-investment, *Johnson* continued to stay actively involved in the management of Onsa and met regularly with Trombley and other Onsa representatives to discuss various aspects of Onsa's technology and Franklin Templeton's supposed plans to integrate its operations with Onsa's technology. *She* also had regular and direct communications with Onsa's CEO concerning Onsa's operations.").

- **Johnson was directly involved in the decision to abruptly fire all of Onsa's non-Franklin Templeton management and software engineers without notice or explanation:** FAC ¶7 ("With *Johnson's* knowledge and approval, Bayston terminated Onsa's CEO and all other significant employees"), ¶¶ 41, 133.

- **Despite her significant personal involvement in managing Onsa and her personal relationship with the Onsa founders forged over several years, Johnson *never* explored with Onsa's founders or Onsa's shareholders alternatives to Onsa's liquidation:** FAC ¶ 46 ("But neither Franklin Templeton, *Johnson*, nor Bayston ever approached these shareholders to explore alternatives to liquidation. Indeed, it appears to have been their plan to deliberately keep the non-Franklin Templeton

shareholders in the dark and to wind down and liquidate Onsa in secret at a time when, paradoxically, Onsa was far along in its business plan and had an extremely bright future."), ¶¶ 55, 97 ("*Johnson* knowingly participated in, and directed, these breaches of fiduciary duties. The ultimate breach of fiduciary duty was the decision by Franklin Templeton, Bayston, and *Johnson* to wind down Onsa and liquidate it via the ABC in secret and without pursuing any alternatives"), ¶ 131.

- **Johnson was *directly* and *personally* involved in the decision to liquidate Onsa via the ABC proceeding, which given Onsa's substantial progress and value, was the worst possible alternative for Onsa:** FAC ¶¶ 10-11, 33, 43 ("[W]ith Franklin Templeton and *Johnson's* agreement and approval, Bayston liquidated Onsa by executing the ABC"), ¶ 172 ("Upon information and belief, Franklin Templeton, *Johnson*, and Bayston decided to liquidate Onsa via an ABC proceeding because this type of proceeding imposed the greatest obstacles for the non-Franklin Templeton shareholders to bring Onsa's claims against Defendants"), ¶ 244 ("Finally, *Johnson* not only approved, but was directly involved with, the decision to liquidate Onsa via the ABC—the ultimate breach of fiduciary duty.").

- **Johnson knowingly aided and abetted the breach of fiduciary duty by FRI, Fintech, and Bayston:** FAC ¶¶ 236, 237 ("Based upon *her* personal involvement in matters pertaining to Franklin Templeton's tokenization efforts, in general, and *her* personal involvement in matters pertaining to Onsa, in particular, *Johnson* was aware of or had knowledge of the breaches of fiduciary duty committed by FT FinTech, Franklin Resources, and Bayston. *Johnson* knowingly participated in and provided substantial assistance to FT FinTech, Franklin Resources, and Bayston in their breaches of fiduciary duties, which assistance was a substantial factor in the harm suffered by Onsa.").

- **Johnson *repeatedly* made public statements emphasizing the strategic importance of Onsa's technology to Franklin Templeton:** FAC ¶ 77 (detailing

13

*Johnson's* first earnings call as Franklin Templeton's CEO, where *she* specifically highlighted Franklin Templeton's investment in Onsa (formerly known as TokenVault) and described Onsa's technology as part of a "technology industrial revolution."), ¶ 50 (citing an August 2021 interview, where *Johnson* bragged about the technology it took from Onsa ("We [Franklin Templeton] were the first to launch a regulated stablecoin [e.g., tokenized fund]—a money market fund with a stablecoin.")), ¶77 n.22 (recounting an interview where *Johnson* describes the critical importance of blockchain technology), ¶ 149 (highlighting an interview with *Johnson* where she describes the critical importance to Franklin Templeton of the blockchain technology that Plaintiff alleges Franklin Templeton misappropriated from Onsa), ¶ 238.

Other allegations illustrate Johnson's sinister motives. For example, the FAC alleges:

> On July 8, 2020, Johnson sent a "Privileged & Confidential" email[3] to Franklin Templeton executives, Bayston, Chuck Johnson, Les Kratter (Senior Vice President at Franklin Templeton), Meredith Gibbons (Senior Vice President at Franklin Templeton), and Boerio. The subject of the email was "TokenVault," which was Onsa's name before it was changed. In her email, Johnson asks to set up a conference call to discuss "***issues around TokenVault and coordinating next steps***." By mistake, Johnson also included Bashir, Onsa's CEO, on this email. This was apparently pointed out to Johnson, who then replied to her own email by telling Bashir that "I think it is best that TokenVault [Onsa] is not present on the call. Chuck [Johnson] & Roger [Bayston] can update you on anything relevant to TokenVault following the call." Johnson's exclusion of Onsa's CEO

---

[3] Johnson's MTD suggests that Plaintiff has been privy to all of Onsa's documents and records.  That is not the case. The records received in the ABC liquidation are incomplete on their face. For example, most of Onsa's email repositories have been suspiciously deleted. Moreover, despite Plaintiff's repeated requests to Defendants to agree to open discovery, they have steadfastly refused.

1
2
3
4
5

> from the call is remarkable given that her original email sought to discuss
> "issues around [Onsa] and coordinating next steps." Apparently, in
> Johnson's mind, Onsa's CEO was not relevant to a discussion regarding
> Onsa's future. By this time, there can be no mistake that the highest levels
> of Franklin Templeton were plotting the demise of Onsa.

6
7
8
9
10
11
12
13

FAC, ¶ 161-62. Just three weeks later, Bayston fired Onsa's CEO, General Counsel, and other employees *without cause* and *without explanation*. FAC ¶ 165. Shortly thereafter, Onsa was liquidated via the ABC. Given the timing of the Johnson's email, the number of high-level Franklin Templeton her email was sent to, and her intentional exclusion of Onsa's non-Franklin Templeton CEO from the "Privileged & Confidential" discussion regarding "next steps" for Onsa, a plausible inference—indeed, the most reasonable inference—is that Johnson was "circling the wagons" to coordinate the killing of Onsa. Johnson's attempt to minimize the significance of this email is just one example of Johnson's MTD improperly isolating individual facts devoid of any context. *See* Dkt. 58 at 9-10.

14
15
16
17
18
19
20
21
22
23
24
25
26

Johnson's argument that she did not know that it was improper to liquidate Onsa (Johnson's MTD at 9) simply ignores the well-plead allegations of the FAC. The FAC could not be clearer that "[t]here was no legitimate reason to liquidate Onsa via the ABC. At the time the liquidation process was initiated, Onsa was extremely valuable in the marketplace and fully capable of capitalizing on its business plans and raising funds." FAC ¶ 188. The FAC alleges that "[a]t the time Franklin Templeton, Johnson, and Bayston initiated the liquidation of Onsa, the company had no significant creditors but did have very valuable infrastructure, trade secrets, and other intellectual property, according to Onsa's own financial statements and recent third-party valuation." FAC ¶ 44. The FAC alleges that Onsa's management as well as its shareholders were kept in the dark regarding the ABC decision. FAC ¶ 45 ("The ABC was done with no advance notice or input from any of Onsa's other shareholders, who were left in the dark and completely blindsided. To this day, Defendants have never provided any update to Onsa's non-Franklin Templeton shareholders, or even attempted to justify to these shareholders why the ABC was initiated or was allegedly in Onsa's best interest"). The FAC is replete with other detailed allegations

27
28

regarding the impropriety of the ABC decision. *See, e.g.*, FAC ¶ 11 ("The ABC was designed to deliver the *coup de grâce* to Onsa as a competitor in the booming FinTech market for blockchain products while insulating Defendants from any exposure for their egregious conduct"); ¶ 47 ("[T]he ABC process in bad faith and for reasons that were contrary to Onsa's best interests, including to avoid having to compensate Onsa for its development efforts; to gain the ability to launch the tokenized money market without Onsa's involvement and thereby avoid payment obligations to Onsa under the promised MSA; and to avoid liability for their numerous breaches of fiduciary duty and other decisions (e.g., through a derivative action by the non-Franklin Templeton shareholders) by assignment of Onsa's legal claims to a third party"). Given Johnson's significant involvement with Onsa, it is not just a plausible inference, *but in fact the most reasonable inference*, that she knew the decision to liquidate Onsa was for improper motives and intended to serve Franklin Templeton. And that is just what the FAC alleges. *See, e.g.,* FAC ¶ 244 ("Finally, *Johnson* not only approved, but was directly involved with, the decision to liquidate Onsa via the ABC—*the ultimate breach of fiduciary duty*.")

Johnson's claim that the MTD does not plead "substantial assistance" also rings hollow. The well-plead allegations of the FAC described above detail Johnson's deep involvement with Onsa and her knowledge of the value of Onsa and its technology. Against this backdrop, and keeping in mind that Johnson was the CEO of all of the FT Defendants, it is more than reasonable to infer that Johnson directly participated in the decision to liquidate Onsa, and that in fact her consent was necessary to make such an important decision. Indeed, in view of Johnson's substantial involvement with Onsa, it would be naïve to assume that Johnson's consent was not necessary or obtained. And that is precisely what the FAC alleges: "Johnson knowingly participated in, *and directed*, these breaches of fiduciary duties. The ultimate breach of fiduciary duty was the decision by Franklin Templeton, Bayston, and Johnson to wind down Onsa and liquidate it via the ABC in secret and without pursuing any alternatives." FAC, ¶ 97.

The allegations in this case are similar to the allegations that have been found sufficient in other cases. For example, in *In re Shoe-Town, Inc. S'holders Litig.*, No. 9483, 1990 WL 13475, at *8 (Del. Ch. Feb. 12, 1990), allegations involving a financial advisor ("Shearson") who worked alongside a fiduciary management board and was involved in a challenged transaction were sufficient to withstand a motion to

1   dismiss:

> Shearson's knowing participation in the directors' breaches of fiduciary
> duty can be reasonably inferred from the complaint's allegations. In general
> these allegations lead me to believe that Shearson was *closely involved* with
> the management group, the special committee and the Shoe-Town board.
> The complaint alleges Shearson's *early involvement* with the management
> group. . . . It states that Shearson was *active at those meetings* . . . Finally,
> the complaint asserts that Shearson was *present and active at the*
> *management meeting at which it was decided* to concentrate on the GECC
> offer. The allegations that Shearson aided and abetted the board, special
> committee and management groups' breach of their fiduciary duties of
> loyalty and care are sufficient to withstand a motion to dismiss.

*In re Shoe-Town*, 1990 WL 13475, at *8  (emphasis added). Similarly, the allegations here show that
Johnson was aware of the plan to destroy Onsa, perhaps from the very beginning, and she was actively
involved in the planning, preparation, and execution of the ultimate fiduciary breach committed through
secretly and improperly liquidating Onsa through the ABC process.

Other cases have held that allegations of deceptive behavior to hide fiduciary misconduct are
sufficient to satisfy the "knowing participation" requirement under Delaware law. *See BrandRep, LLC v.
Ruskey*, No. 2018-0541-MTZ, 2019 WL 117768, at *5 (Del. Ch. Jan. 7, 2019) (emphasis added)
("[Plaintiff] alleges, reasonably in my view . . . that Mammano caused Business Solutions to take steps to
*attempt to conceal* [the fiduciary defendant's] misconduct. I conclude it is reasonably conceivable that
Mammano knowingly participated in Ruskey's alleged breaches of fiduciary duty."); *Firefighters' Pension
Sys. v. Presidio, Inc.*, 251 A.3d 212, 280 (Del. Ch. 2021) (emphasis added) ("The complaint's allegations
support a reasonable inference that [the defendant] *knowingly withheld the information* from the Board.
Those actions satisfy the requirements for pleading knowing participation."). The FAC contains such
allegations. Plaintiff has alleged that Johnson deliberately tried to conceal Bayston's and Franklin

Templeton's misconduct. For example, the July 8, 2020 "Privileged & Confidential" email detailed above was sent to various Franklin Templeton executives, including Bayston, to set up a conference call to discuss "*issues around TokenVault and coordinating next steps*." FAC ¶ 244.  After realizing that she mistakenly included Bashir, Onsa's CEO, on this email, she replied to Bashir by telling him that "it is best that" Onsa not be present on the call. Of course, unbeknownst to Bashir, or anyone not affiliated with Franklin Templeton, was that Johnson did not want Onsa's senior management to know that Johnson and other Franklin Templeton executives were plotting Onsa's demise.

Given that Johnson was heavily involved in almost every aspect of FRI's, FinTech's, and Bayston's plan and execution of the breaches alleged throughout the well-plead FAC, Plaintiff has appropriately plead Johnson's "knowing participation" in these breaches.

## III. PLAINTIFF HAS PROPERLY ALLEGED WRONGDOING PERSONALLY ATTRIBUTABLE TO JOHNSON.

Johnson contends that the FAC constitutes impermissibly vague group pleading and fails to identify specific wrongdoing by Johnson. That is wrong. FRCP 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In a complaint involving multiple defendants, the complaint must simply provide "fair notice [to each defendant] of what plaintiff's claims are" as well as "fair notice of the grounds of the various claims." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996). Notably, cases from this district have held that "the prohibition against group pleading only applies in cases of fraud," and "Rule 8 pleading standards do not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant…." *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 57861, at *6 (N.D. Cal. Jan. 3, 2013). The FAC easily meets these requirements. It clearly identifies which claims are asserted against which defendants, and it details the factual basis for each claim, including the actions that each defendant took that support that claim.

Johnson was allotted twenty-five pages in which to set forth arguments regarding why Plaintiff's

1    FAC should be dismissed. She used substantially less than that (thirteen pages), and out of those thirteen

2    pages, less than two are dedicated to this argument regarding purported "impermissibly vague group

3    pleading." Dkt. 58 at 12-13. Simply put, this argument is an afterthought for Johnson, and for good

4    reason—it is not legally or factually accurate. Johnson hyper-focuses on areas in the FAC that allege that

5    all of Johnson, Bayston, and FT Defendants performed certain acts or participated in particular

6    wrongdoings, and then claims that she should somehow be absolved of liability because other parties did

7    the same things she did. Dkt. 58 at 12. This is not the law. Regardless, the argument ignores that the FAC

8    contains a plethora of factually-specific allegations against Johnson, detailing her personal involvement in

9    Onsa and in the ultimate decision to harm the company in bad faith, as discussed above. It also glosses

10   over that Johnson, as the CEO of all of the FT Defendants (and Bayston's boss), is clearly a decision-maker

11   for these entities, again highlighting the plausibility (probability, really) that she was profoundly involved

12   in every one of the decisions that provide a basis for this lawsuit.

13   Notably, Johnson cites only two cases as legal support, and neither one of them helps Johnson's

14   argument. For instance, *Austin v. Budget Rental Car, Inc.* involved the Court sua sponte dismissing a

15   frivolous complaint filed by a pro se plaintiff because the plaintiff "refer[ed] only to conduct by 'financial

16   companies' without explaining what each of these companies did." *Austin v. Budget Rental Car, Inc.*, No.

17   20-CV-06229-AGT, 2020 WL 8614183, at *2 (N.D. Cal. Sept. 17, 2020). Considering the summary above

18   detailing the FAC's direct allegations against Johnson, the *Austin* case is distinguishable.

19   Similarly, in *Herrejon v. Ocwen Loan Servicing, LLC*, the court found that pro se plaintiffs, suing

20   a lending company that foreclosed on their home for failure to pay rent, failed to satisfy pleading

21   requirements because "[t]he complaint lack[ed] facts of defendants' specific wrongdoing to provide fair

22   notice as to what each defendant is to defend." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d

23   1186, 1196 (E.D. Cal. 2013). The court opined that "[t]he complaint lack[ed] cognizable claims or legal

24   theories upon which to support defendants' liability and rests on overbroad conclusions that defendants are

25   prohibited to foreclose on the property," and that "[t]he complaint makes passing conclusions without

26   supporting facts as to 'misrepresentations and deceptive omissions,' 'unjust enrichment,' 'unlawful

27

28

foreclosure,' and gross inaccuracies." *Id*. at 1196-97. Th pro se complaint from *Herrejon* is clearly distinguishable. Here, the FAC provides dozens of pages of facts and targeted allegations that are more than sufficient to put Johnson on notice of what she must defend.

From the beginning, Johnson has been intimately familiar Onsa, its technology, and its founders, and she is undoubtedly well acquainted with the exact facts and reasons behind the institution of this lawsuit. *See, e.g.*, Section II.B to this Response. As Johnson knows, she is named personally in this suit because of the part she played in exterminating an innovative startup company for her and her family's companies' gain,[4] all at the expense of over fifty other shareholders that Bayston and the FT Defendants were and are beholden to. *See*, *e.g.*, FAC ¶¶ 234-45. Via the FAC, Johnson is put on notice of what is alleged against her, and Plaintiff has done far more than just "identify[] the transaction or occurrence giving rise to the claim and the elements of the prima facie case" as is required by FRCP 8. *Bautista v. L.A. Cty.*, 216 F.3d 837, 840 (9th Cir. 2000). Johnson's MTD should therefore be denied.

## IV.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND IF ITS PLEADINGS ARE FOUND DEFICIENT.

If the Court determines that Plaintiff has failed to state a claim for any of its causes of action, it should grant Plaintiff leave to amend. "Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,' bearing in mind 'the underlying purpose of Rule 15 to facilitate a decision on the merits rather than on the pleadings or technicalities." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694 LHK, 2012 WL 6160472, at *16 (N.D. Cal. Dec. 11, 2012) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). "When dismissing a complaint for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez*, 203 F.3d at 1130). "Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Id.* at *50 (N.D. Cal. Dec. 11, 2012) (citing *Leadsinger, Inc. v. BMG Music*

---

[4] Johnson's grandfather, Rupert, founded Franklin Templeton in 1947. It is estimated that the Johnson family owns 44% of outstanding Franklin Templeton shares. FAC ¶ 129.

*Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). There would be no reason to deny leave to amend here. Defendants would suffer no prejudice, and Plaintiff has not acted in bad faith. Nor would amendment cause undue delay—this case was only filed in November 2021. There are also no indications that amending would be futile.

Dated:  April 22, 2022                    Respectfully submitted,

                                          /s/ Gary Cruciani
                                          Jeffery D. McFarland
                                          California Bar No. 157628
                                          jmcfarland@mckoolsmithhennigan.com
                                          MCKOOL SMITH HENNIGAN P.C.
                                          300 South Grand Avenue, Suite 2900
                                          Los Angeles, California 90071
                                          Telephone: (213) 694-1010
                                          Fax: (213) 694-1234

                                          Gary Cruciani (Admitted *Pro Hac Vice*)
                                          Texas Bar No. 05177300
                                          Lew LeClair
                                          California Bar No. 77136
                                          gcruciani@mckoolsmith.com
                                          lleclair@mckoolsmith.com
                                          MCKOOL SMITH P.C.
                                          300 Crescent Court, Suite 1500
                                          Dallas, Texas 75201
                                          Telephone: (214) 978-4000

                                          Brent N. Bumgardner (Admitted *Pro Hac Vice*)
                                          Texas Bar No. 00795272
                                          Christopher G. Granaghan (Admitted *Pro Hac Vice*)
                                          Texas Bar No. 24078585
                                          Carder W. Brooks (Admitted *Pro Hac Vice*)
                                          Texas Bar No. 24105536
                                          brent@nelbum.com
                                          chris@nelbum.com
                                          carder@nelbum.com
                                          NELSON BUMGARDNER CONROY P.C.
                                          3131 West 7th Street, Suite 300
                                          Fort Worth, Texas 76107
                                          Telephone: (817) 377-9111

                                          Patrick J. Conroy (Admitted *Pro Hac Vice*)
                                          Texas Bar No. 24012448
                                          pat@nelbum.com
                                          NELSON BUMGARDNER CONROY P.C.
                                          2727 N. Harwood Street, Suite 250
                                          Dallas, Texas 75201
                                          Telephone: (214) 446-4954

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attorneys for Plaintiff**
**BLOCKCHAIN INNOVATION, LLC**