UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOCKCHAIN INNOVATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>Defendants. | Case No.  21-cv-08787-HSG<br><br>**ORDER DENYING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 56, 57, 58, 78 |

Before the Court are Defendants' motions to dismiss the First Amended Complaint ("FAC").  The Court found this matter appropriate for disposition without oral argument and took the motion under submission.  *See* Civil L.R. 7-1(b); Dkt. No. 108.  The Court **DENIES** the motions.

I.      **BACKGROUND**

The financial technology deal at the center of this case has spawned the following claims: (1) breaches of fiduciary duty by Franklin Resources, Inc. ("FRI") doing business as Franklin Templeton, FT FinTech ("FT"), and Roger Bayston; (2) trade secret misappropriation by FT, FRI, and Franklin Templeton Companies, LLC ("Corporate Defendants"); (3) breach of contract by Corporate Defendants; (4) copyright infringement by Corporate Defendants; and (5) aiding and abetting by Jennifer Johnson of breaches of fiduciary duties by FRI, FT, and Bayston.  FAC ¶ 64.

Plaintiff Blockchain Innovation, LLC is a Delaware limited liability company.  FAC ¶ 51. Plaintiff avers that it obtained the rights to the claims brought here through a complex series of transactions.  *See* FAC ¶¶ 17 n.5, 43, 48, 95, 146, 197, 199.  Defendant FRI is an asset management company incorporated in Delaware, and Plaintiff alleges that it was the controlling shareholder of FT, thereby giving it 100% control of the voting stock of an entity called Onsa.  *Id.* ¶ 52.  Plaintiff identifies Defendant FT, a Delaware limited liability company, as "the nominal

owner of 100% of Onsa's issued and outstanding voting common stock and nominal owner of approximately one-quarter of Onsa's issued and outstanding non-voting common stock." *Id.* ¶ 53. Defendant Franklin Templeton Companies, LLC, also a Delaware limited liability company, was allegedly a party to the Non-Disclosure Agreement ("NDA") at issue in this litigation, and entered into it on behalf of a group of companies including but not limited to FRI and its subsidiaries. *Id.* ¶ 54. Defendant Jennifer Johnson is the President and CEO of Franklin Templeton and is also a board member. *Id.* ¶ 55. Defendant Roger Bayston is a senior Franklin Templeton executive who also served as Onsa's sole board member. *Id.* ¶ 56.

According to Plaintiffs, "Onsa was a promising startup company" seeking to develop breakthrough blockchain technology to tokenize financial assets. *Id.* ¶ 2. The complex cascade of events leading to this suit began with FT investing in Onsa. *Id.* ¶ 4. In essence, what began as an apparent investment became a purported acquisition, and Plaintiff believes that Defendants are now launching technology that was developed by Onsa, enabled by Defendants' deceptive and misleading actions and representations. FAC ¶¶ 7-50.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless,

1    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

2    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

3    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  The Court

4    also need not accept as true allegations that contradict matters properly subject to judicial notice or

5    allegations contradicting the exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988.

6    **III.    DISCUSSION**

7        **A.    Corporate Defendants**

8        Corporate Defendants seek dismissal on several grounds, including that Plaintiff lacks

9    standing to bring claims for trade secret misappropriation, copyright infringement, and breach of

10   contract.  *See generally* Dkt. No. 60-3, ("Corporate Defs.' Mot.").

11           **1.    Standing**

12       Corporate Defendants bring a factual attack on Plaintiff's standing under Rule 12(b)(1),

13   arguing that the Court lacks subject matter jurisdiction over these claims.  "A 'factual' attack . . .

14   contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the

15   pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal citation omitted).

16   "When the defendant raises a factual attack, the plaintiff must support [its] jurisdictional

17   allegations with 'competent proof,' under the same evidentiary standard that governs in the

18   summary judgment context." *Id.* (citations omitted).  The plaintiff "bears the burden of proving

19   by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction

20   has been met." *Id.*  However, "a court must leave the resolution of material factual issues to the

21   trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the

22   merits of the plaintiff's claim." *Id.* at 1121-22 and n.3.  The merits and subject-matter jurisdiction

23   are "intertwined when the question of jurisdiction is dependent on the resolution of factual issues

24   going to the merits." *Mie Yang v. Francesca's Collections, Inc.*, No. 17-CV-04950-HSG, 2018

25   WL 984637, at *3 (N.D. Cal. Feb. 20, 2018) (internal citations and quotations omitted).  In that

26   scenario, the Court must apply the standard for summary judgment, "rather than resolving the

27   factual dispute[.]" *Id.* (internal citation and quotations omitted); *see also Edison v. U.S.*, 822 F.3d

28   510, 517 (9th Cir. 2016) ("Any factual disputes [at this stage] must be resolved in favor of

1    Plaintiffs" (internal citation omitted)).

2           Defendants' subject matter jurisdiction argument is intertwined with the merits of the

3    claims, because Corporate Defendants argue that Plaintiff does not have standing since (1) it does

4    not actually own the asserted IP or trade secrets; and (2) no contract ever existed between Plaintiff

5    and Corporate Defendants.  Corporate Defs.' Mot. at 1-2.  These arguments self-evidently attack

6    foundational elements of Plaintiff's substantive claims.  The Court accordingly applies the

7    summary judgment standard in assessing Defendants' standing-based jurisdictional challenge, and

8    finds that, at this stage, Plaintiff has sufficiently established standing to bring claims for trade

9    secret misappropriation, copyright infringement, and breach of contract.

10                           **i.       Intellectual Property Ownership**

11           Corporate Defendants do not contest Plaintiff's assertion that, of the intellectual property

12   ("IP") potentially relevant in the suit, they dispute Plaintiff's ownership of only the "TokenVault

13   IP."[1]  Dkt. No. 72 ("Corp. Defs.' Reply") at 1.  This IP consists of "trade secrets" and computer

14   code developed by TokenVault Limited employees, such as its founder, Austin Trombley.  *See*

15   FAC ¶ 197; Corp. Defs.' Mot. at 6.  Thus, for purposes of this motion, the Court need only

16   consider Defendants' factual challenge to Plaintiff's claim based on its ownership of the

17   TokenVault IP.

18           Corporate Defendants argue at length that Plaintiff has not adequately shown that it owns

19   the TokenVault IP so as to have standing to bring its trade secret and copyright claims.  *See* Corp.

20   Defs.' Mot. at 5-8; Corp. Defs.' Reply at 1-5.  In response, Plaintiff contends that it obtained

21   ownership of this IP through a series of transactions.[2]  Plaintiff provides declarations with exhibits

22   showing that this IP was transferred from developers in India to TV Limited (Dkt. No. 70-1, Ex. 1

23   to Travis Decl., § 6), from TV Limited to Onsa (Dkt. No. 41-3, Ex. B to Bayston Decl., ("Asset

24   Purchase Agreement") § 2.2(e)), from Onsa to BLKCHN (Dkt. No. 55-2, Ex. B to the FAC

25

26   _____
     [1] Onsa, Inc., from which Plaintiff alleges it ultimately obtained the right to assert these claims, was
27   formerly called "TokenVault, Inc."  *See* FAC ¶ 17, n. 5.  Corporate Defendants refer to this as the
     "India IP" in their reply.  *See* Corp. Defs.' Reply at 1.
28   [2] The Court discusses the sufficiency of Plaintiff's pleading with respect to its copyright and trade
     secrets below.  *See supra* III.A.4.c; III.A.4.d.

United States District Court
Northern District of California

1   ("ABC")), and from BLKCHN to Plaintiff (Ex. C to the FAC, Dkt. No. 55-3).  Plaintiff also

2   presents evidence describing an alternative route through which it retained all rights in any IP that

3   had been retained by Tokentech: a Software Transfer Agreement from Tokentech to Barefoot

4   Capital, LLC (Dkt. No. 70-4, Ex. A to Ex. 4 to Travis Decl.), and then a quitclaim assignment

5   from Maven Venture Capital, LLC (successor to Barefoot Capital, LLC) to Plaintiff (Dkt. No. 70-

6   4, Ex. 4 to Travis Decl.).

7        Plaintiff has done enough to plausibly support its claim of ownership of the IP at this stage.

8   *See Sprint Comm'ns Co., L.P. v. APCC Svcs., Inc.*, 554 U.S. 269 (2008) (finding that assignees

9   met case or controversy requirement so as to have Article III standing); *cf. Brown v. Bank of Am.,*

10  *N.A.*, 660 F. App'x 506, 508 (9th Cir. 2016) (holding that the plaintiff lacked standing because he

11  "did not allege any facts—or provide any exhibits with his [complaint]—to support his bald

12  assertion" of assignment).  Corporate Defendants' arguments take detailed issue with the ultimate

13  truth of Plaintiff's theory, but the Court must resolve factual disputes in Plaintiff's favor at this

14  stage.  *See* Corp. Defs.' Reply at 2 (complaining that Plaintiffs "ignore" a certain letter in their

15  opposition); *id*. at 3 (arguing that the quitclaim assignment is invalid for lack of consideration

16  and/or because the officer who authorized the transfer from Tokentech to Barefoot lacked

17  authority to do so).  Ownership of the TokenVault IP is one of the central substantive issues to be

18  determined in this case, and the controlling precedent cited above makes clear that resolution of

19  this hotly contested factual issue must be deferred given the numerous disputes presented.

20                          **ii.   Breach of Contract**

21       The same reasoning largely applies to Plaintiff's standing to bring its breach of contract

22  claim.  Plaintiff has plausibly shown the nature of its rights in the NDA.  *See* Ex. D to FAC, Dkt.

23  No. 55-4 at 1.  That chain runs from TV Limited to Plaintiff in the same way for the NDA as for

24  the IP: from TV Limited to Onsa (Asset Purchase Agreement, § 2.2(a)), from Onsa to BLKCHN

25  (ABC, §§ 1.1, 3.1), and from BLKCHN to Plaintiff (Ex. C to the FAC, Dkt. No. 55-3, § 1).

26  Corporate Defendants again mount a fact-heavy argument that no assignment occurred and that

27  "Plaintiff's allegations concerning the NDA contradict the plain terms of the APA and NDA" so

28  as to defeat standing.  Corp. Defs.' Mot. at 8-10.  Plaintiffs respond with an equally fact-laden

United States District Court
Northern District of California

discussion of the underlying events and documents.  *See* Dkt. No. 67 ("Opp. to Corp. Defs.") at 4-8.  This is enough to establish standing based on the standard of review that applies at this stage, and these highly-convoluted factual disputes that are deeply intertwined with the ultimate contested merits questions will have to be resolved later.  *Leite*, 749 F.3d at 1122 and n.3.

### 2. Preemption or Supersession of Plaintiff's Claims for Breach of Fiduciary Duty, Injunctive Relief, and Breach of Contract

Corporate Defendants next argue that Plaintiff's breach of fiduciary duty (Count I) and injunctive relief (Count VI) claims must be dismissed because they are superseded by the California Uniform Trade Secrets Act ("CUTSA").  Corp. Defs.' Mot. at 10.[3]  Plaintiff responds that Delaware rather than California law governs these claims, and that under either state's law the claims are not superseded.  Opp. to Corp. Defs. at 8-13.  So two questions are presented:  (1) which state's law applies?; and (2) does the choice of law decision make any substantive difference to the outcome of the motion to dismiss?  The Court finds that it does not need to resolve the parties' choice of law dispute to decide this motion, because the claims are not superseded under either Delaware or California law.[4]

As a general rule, "[i]n a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state. . . ."  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  The forum state here is California, so Defendants argue that California law applies here consistent with the general rule.  Plaintiff, on the other hand, does no choice of law analysis at all, instead assuming that Delaware law applies because there is no dispute that under the internal affairs doctrine, Delaware law applies to the fiduciary duty claims.

---

[3] Plaintiff concedes that the injunctive relief claim "is a remedy, not a cause of action."  Opp. to Corp. Defs. at 8, n.9.  So a choice of law and supersession analysis is required, at most, only as to the breach of fiduciary duty claim.

[4] In the end, for all the ink spilled on this issue, no one suggests that resolution of the choice of law question makes a difference in the outcome.  *See* Corp. Defs.' Reply at 8 (contending that "California and Delaware law are in accord," such that "proper application of [the Delaware Uniform Trade Secrets Act, or] DUTSA preempts the claims here anyway"); Dkt. No. 68 ("Opp. to Johnson Mot.") at 5 (arguing no preemption "[e]ven if CUTSA applies"); Dkt. No. 73 ("Johnson Reply") at 1 ("Resolving a conflict of law is unnecessary, however, because California and Delaware law are not in conflict . . . .").

United States District Court
Northern District of California

1    First, under California law, the Court finds that the breach of fiduciary duty claim is not

2    superseded.  CUTSA "preempts common law claims that are based on the same nucleus of facts as

3    the misappropriation of trade secrets claim for relief."  *K.C. Multimedia, Inc. v. Bank of Am. Tech.*

4    *& Operations, Inc.*, 171 Cal.App.4th 939, 958, 90 Cal.Rptr.3d 247, 261 (2009) (internal citations

5    and quotations omitted).  "At the pleadings stage, the supersession analysis asks whether, stripped

6    of facts supporting trade secret misappropriation, the remaining factual allegations can be

7    reassembled to independently support other causes of action."  *Waymo LLC v. Uber Techs., Inc.*,

8    256 F.Supp.3d 1059, 1062 (N.D. Cal. 2017) (internal citation omitted).  Here, the Court agrees

9    that Plaintiff pleads facts that would allow this claim to survive in the absence of the trade secret-

10   related facts.  For example, Plaintiff pleads that Defendants breached their duties of care, good

11   faith and loyalty to Onsa by acting in secret from Onsa's non-Franklin Templeton shareholders

12   and from Onsa's management, to Onsa's detriment.  Opp. to Corp. Defs. at 10 (citing FAC ¶¶ 181-

13   183).  Plaintiff also alleges that the process of winding down and liquidating Onsa breached these

14   duties.  *Id.* (citing FAC ¶¶ 184-194).  The complaint alleges several objectives beyond the

15   misappropriation of trade secrets, including "avoid[ing] having to compensate Onsa for its

16   development efforts," "gain[ing] the ability to launch the tokenized money market without Onsa's

17   involvement and thereby avoid payment obligations to Onsa under the promised [master services

18   agreement]," and "avoid[ing] liability for their numerous breaches of fiduciary duty and other

19   decisions (e.g., through a derivative action by the non-Franklin Templeton shareholders) by

20   assignment of Onsa's legal claims to a third party."  FAC ¶ 47.  The point for present purposes is

21   not whether these and the other claims in the complaint have merit, but only whether they could be

22   proven without facts going to trade secret misappropriation.  The Court agrees that the claims as

23   pled meet this standard at this stage.

24   The result is the same under DUTSA.  A breach of fiduciary duty claim is not preempted

25   where "the same facts are not required to establish all the elements of both the misappropriation

26   and breach of fiduciary duty claims."  *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010),

27   *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).  This is the case here:  the

28   success of the breach of fiduciary duty claim does not depend on the success of the trade secret

claim, so DUTSA does not preempt that claim. *See id.* (finding that the plaintiff could still show breach of fiduciary duty by proving that the defendant, for example, "stole and misused [] confidential information" even if the trade secret claim failed, meaning that the common law claim was not preempted).

### 3.   Preemption by the Copyright Act

The Corporate Defendants' contention that Plaintiffs' breach of contract claim is preempted by the Copyright Act turns on whether the alleged "breach of contract [] affect[s] rights unrelated to those held under federal copyright law." *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 19-08420-CJC(Ex), 2020 WL 2510652, at *4 (C.D. Cal. Feb. 12, 2020) (internal citation omitted). The parties do not dispute the standard. The Court agrees with Plaintiff that it is not met here for at least the following reasons: (1) copyright law does not bear on the obligation to delete material and provide verification thereof, as Plaintiff alleges Corporate Defendants failed to do (FAC ¶ 214), and (2) Plaintiff plausibly pleads that at least some of the material it alleges Corporate Defendants unlawfully kept would not fall within the scope of copyright.

### 4.   Adequate Pleading under Rule 12(b)(6)

#### i.   Group Pleading

Corporate Defendants argue that Plaintiff engages in impermissible group pleading. The Court disagrees. Paragraph 1 of the FAC understandably discusses "Defendants" without particularization because the remainder of the Complaint sets forth detailed allegations with regard to each defendant. Paragraph 32 of the FAC refers to "Defendants" after identifying the particular defendants "Franklin Templeton and Bayston." Plaintiff is correct that all other paragraphs cited by Defendants do not use group pleading at all. The complaint adequately alleges wrongdoing by specific defendants. FAC ¶¶ 179, 212, 217, 226, 230.

#### ii.   Fiduciary Duty Claim[5]

#### a.   Existence of Fiduciary Duty

---

[5] Defendants FT and FRI join in Defendant Bayston's motion with respect to Count I and vice versa. *See* Dkt. No. 56 ("Bayston Mot.") at 13, 22-23; Corp. Defs.' Mot. at 2. For purposes of this section, "Corporate Defendants" does not include Franklin Templeton Companies, against whom breach of fiduciary duty is not pled.

1      In their motion, Corporate Defendants argue that Plaintiff fails to adequately plead

2  controlling shareholder status.  Corp. Defs.' Mot. at 17.  "Delaware law imposes fiduciary duties

3  on those who effectively control a corporation."  *In re Pattern Energy Group, Inc. Stockholders*

4  *Litig.*, 2021 WL 1812674, at \*36 (Del. Ch. May 6, 2021) (internal citations and quotations

5  omitted).  But "the question whether a shareholder is a controlling one is highly contextualized

6  and difficult to resolve based solely on the complaint[,]" and "there is no magic formula to find

7  control; rather, it is a highly fact specific inquiry." *Id.* (cleaned up).  Plaintiff provides support for

8  the proposition that an entity can have such control by owning more than half of the voting power

9  of a corporation or "exercis[ing] control over the business and affairs of the corporation."  *In re*

10  *Primedia Inc. Derivative Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006) (internal citations and

11  quotations omitted).

12      FRI alleges that it cannot be held liable because it held shares in Onsa through FinTech.

13  But Plaintiff pleads "that FRI controlled Onsa" by controlling "FinTech, which owns 100 percent

14  of Onsa's voting stock, directly as a wholly-owned subsidiary[.]"  Opp. to Corp. Defs. at 16; FAC

15  ¶¶ 52, 53, 95.  Given the "highly fact specific" nature of this inquiry, Plaintiff adequately pleads at

16  this stage that each Corporate Defendant exercised effective control over Onsa. *See In re Ezcorp*

17  *Inc. Consulting Agreemt. Derivative Litig.*, 2016 WL 301245, at \*2, \*10 (Del. Ch. Jan. 25, 2016)

18  (finding in derivative action brought by shareholder of a corporation called "EZCORP" that

19  corporation and limited partnership owed a fiduciary duty to EZCORP because limited partnership

20  was EZCORP's immediate controller and corporation controlled the limited partnership and was

21  EZCORP's indirect controller).  As with many of the issues raised in these motions to dismiss, the

22  ultimate resolution of this factual dispute is for a later day.

23             **b.**     **Breach of Fiduciary Duty**

24      "A basic duty of fairness, *i.e.*, the requirement to treat shareholders and their equity interest

25  in the corporation fairly, is the broadest notion of the duties directors owe to the corporation's

26  shareholders." *Solomon v. Armstrong*, 747 A.2d 1098, 1111 (Del. Ch. 1999), *aff'd*, 746 A.2d 277

27  (Del. 2000).  Corporate Defendants argue that (1) the FAC fails to plead facts sufficient to

28  plausibly support the breach of fiduciary duty claim; and (2) the "decision to enter the ABC" was

United States District Court
Northern District of California

9

1   protected by the business judgment rule.  Corp. Defs.' Mot. at 15-20.  The Court disagrees with

2   both arguments at this stage.

3          First, Plaintiff plausibly alleges that Corporate Defendants failed to act in the best interests

4   of the company and did so knowingly.  The overall theory of the complaint, detailed at length, is

5   that the Corporate Defendants, in conjunction with Onsa's sole director Bayston (who was a

6   longtime executive of Franklin Templeton and remained in that role at the time of the relevant

7   events), executed a scheme to handicap and ultimately eliminate Onsa for their own benefit.  The

8   complaint alleges that FT falsely represented 1) that it "would compensate Onsa for use of its

9   technology" (FAC ¶ 25) and 2) that Onsa need not seek third-party financing because FT would

10  fully fund it (FAC ¶ 30).  But according to the complaint, FT secretly schemed to liquidate Onsa,

11  executed that plan, fired Onsa's staff, and disallowed Onsa from taking on new employees.  FAC

12  ¶¶ 41-43.  Plaintiff alleges that FT executives were even presented with a plan for using Onsa's

13  cash to defend FT from the ensuing litigation.  FAC ¶ 42.  No other Onsa shareholder was

14  included in the liquidation decision-making process.  FAC ¶ 45.[6]  The FAC alleges that the ABC

15  process was "undertaken in bad faith and for reasons that were contrary to Onsa's best interests,"

16  for the purpose of, among other things "avoid[ing] having to compensate Onsa for its development

17  efforts," "gain[ing] the ability to launch the tokenized money market without Onsa's involvement

18  and thereby avoid payment obligations to Onsa under the promised [master services agreement],"

19  and "avoid[ing] liability for their numerous breaches of fiduciary duty and other decisions (*e.g.*,

20  through a derivative action by the non-Franklin Templeton shareholders) by assignment of Onsa's

21  legal claims to a third party."  FAC ¶ 47.  Contrary to Corporate Defendants' protestations, these

22  allegations are not "conclusory," Corp. Defs.' Mot. at 16, and they provide amply enough detail to

23  survive a motion to dismiss.  *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 798

24  (Del. Ch. 2004) (denying in part motion to dismiss breach of fiduciary duty claim where plaintiff

25  pled "a suspicious pattern of dealing that raise[d] legitimate concerns that the [defendant] board

26

27  _____

28  [6] Corporate Defendants argue that Plaintiff cannot raise the issue of failure to disclose or consult
    because those are "shareholder issues."  Corp. Defs.' Reply at 12-13.  But the Court does not
    understand Plaintiff to assert these points as stand-alone claims: instead, they are pled as evidence
    tending to suggest bad faith and disloyalty in the way that Defendants controlled Onsa's affairs.

United States District Court
Northern District of California

[was] not pursuing the best interests of" the company's creditors).

Nor does the business judgment rule require dismissal of the fiduciary duty claim, because Plaintiff has adequately pled a breach of the duty of loyalty at this stage.  The business judgment rule is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, and in the honest belief that the action taken was in the best interests of the company and its shareholders."  *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 747 (Del. Ch. 2005) (cleaned up).  "This presumption applies when there is no evidence of 'fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment' on the part of the directors."  *Id.* A plaintiff may allege bad faith violating the duty of loyalty by pleading facts showing that "the fiduciary intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation" or "intentionally fail[ed] to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."  *In re Crimson Exploration Inc. Stockholder Litig.*, 2014 WL 5449419, at *22 (Del. Ch. October 24, 2014) (internal quotation omitted).  Here, Plaintiff adequately alleges a course of conduct in which Defendants were intentionally taking actions to damage Onsa, based on their own self-interest.  Taking those allegations as true, as it must at this stage, the Court finds that the business judgment rule does not mandate dismissal.  *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d at 753 ("In other words, an action taken with the intent to harm the corporation is a disloyal act in bad faith.").

For the same reason, the exculpation clause in the Certificate of Incorporation does not exculpate Defendants as a matter of law at the motion to dismiss stage with respect to the breach of fiduciary duty claim.  Under Delaware law, an exculpation provision may not relieve directors "from monetary liability for [] conduct that is not in good faith or a breach of the duty of loyalty."  *In re Evergreen Energy, Inc.*, 546 B.R. 549, 561 (Bankr. D. Del. 2016) (internal citations and quotations omitted).  By contrast, such a provision may exculpate a claim for breach of duty of care, but not if it "is not the *exclusive* claim[.]"  *Id.* (internal citations and quotations omitted) (emphasis in original).  Because here Plaintiff sufficiently pleads breaches of both the duty of loyalty and the duty of good faith, the exculpatory clause does not support dismissal  *Cf. Malpiede v. Towson*, 780 A.2d 1075, 1094 (Del. 2001) ("Because we have determined that the complaint

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

fails properly to invoke loyalty and bad faith claims, we are left with only a due care claim.").

### iii.    DTSA Claim

To state a claim under the DTSA, Plaintiff must allege "that (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868, 877 (N.D. Cal. 2018) (internal citations and quotations omitted). Corporate Defendants' arguments regarding the sufficiency of the pleading of this claim largely track those they made in challenging Plaintiff's standing to bring its IP claims, and the Court finds them unpersuasive for the same reasons. Plaintiff adequately alleges that Defendants copied and are using materials that were developed by Onsa and protected as a trade secret. *See* FAC ¶¶ 202, 203, 207, 214. No party contests that Corporate Defendants had access to such materials, and the FAC provides details about the similarities between the technology that Onsa agreed to share with Defendants and the tokenized assets Plaintiff alleges Defendants plan to launch, as well as detailing the circumstances under which the Defendants obtained and planned to use the trade secret information. FAC ¶¶ 116-123, 217. This is enough to survive a motion to dismiss.

### iv.    Copyright Infringement Claim

To allege copyright infringement, a plaintiff must claim "(1) ownership of a valid copyright; and (2) copying constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991) (internal citation omitted). A plaintiff must also show "access to [the] copyrighted work[.]" *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (internal citation omitted). Plaintiff alleges and Corporate Defendants do not seriously contest that they had access to Plaintiff's copyrighted works, and the complaint describes evidence that Franklin Templeton reviewed a number of specific code repositories by name. FAC ¶ 224. Moreover, Plaintiff alleges that it owns valid copyrights, which Corporate Defendants also do not contest. *See* Corp. Defs.' Mot. at 24. And as is the case with the trade secret claim, the FAC provides details about the similarities between the technology that Onsa agreed to share with Defendants and the tokenized assets Plaintiff alleges Defendants plan to launch. FAC ¶ 226. This is enough to survive a motion to dismiss.

United States District Court
Northern District of California

### v.    Breach of Contract Claim

For purposes of this motion, Plaintiff pleads enough to plausibly allege breach of contract. The NDA includes FRI and FT among the parties to the agreement, and Corporate Defendants do not seriously contend otherwise.  *See* NDA at 1.  And the FAC plausibly alleges that Corporate Defendants breached the NDA in numerous ways.  *See, e.g.*, FAC ¶¶ 93, 214.

## B.    Johnson[7]

### 1.    Preemption

Johnson argues that Plaintiff's aiding and abetting claim is preempted for the same reasons as Corporate Defendants argued the breach of fiduciary duty claim is preempted.  The Court rejects this argument on the same grounds as it did those arguments.  *See supra* III.A.2.

### 2.    Breach of Fiduciary Duty

Johnson next argues that there is no underlying breach alleged, and that Plaintiff fails to sufficiently allege that Johnson knowingly caused Plaintiff harm.  *See* Johnson Mot. at 8-11.  The Court again disagrees.

Plaintiff accuses Johnson of aiding and abetting the alleged breach of fiduciary duty committed by the Corporate Defendants in the form of knowingly participating in the plan to harm Onsa, before and as part of the liquidation.  FAC ¶¶ 234-244.  Plaintiff adequately pleads Johnson's knowing participation in the alleged breach of fiduciary duty.  The complaint alleges that "Johnson is responsible for the operation of all aspects of Franklin Templeton's business. Johnson was responsible for catalyzing Franklin Templeton's equity investment in Onsa."  FAC ¶ 55.  The complaint also alleges that Johnson approved the liquidation and was part of the decision-making process that led to doing so.  FAC ¶¶ 172, 244.  Plaintiff is correct that courts have found similar facts to be enough to plead aiding and abetting a breach of fiduciary duty claim at the motion to dismiss stage.  *See In re Shoe-Town, Inc. S'holders Litig.*, No. C.A. 9483, 1990 WL 13475, at *8 (Del. Ch. Feb. 12, 1990) (finding allegations regarding the defendant's involvement, presence, and activity at board meetings concerning the challenged transaction sufficient to

---

[7] Johnson joins in the Corporate Defendants' motion as applicable and the motion brought by Bayston "except as to venue."  Dkt. No. 58 ("Johnson Mot.") at 2.

survive motion to dismiss).  The Court again finds that the complaint is adequate to state a claim at this stage, with the ultimate truth of the allegations being a matter for summary judgment or trial.

## C.     Bayston

### 1.      The Forum Selection Clause Does Not Control

Bayston argues that the claim against him must be dismissed because it may only be brought in the Court of Chancery of Delaware under Onsa's Certificate of Incorporation.  *See* Bayston Mot. at 5.  While the Court shares Bayston's view that some gamesmanship may be at work here, it cannot find that the terms of the forum selection clause apply to this claim.

The Amended and Restated Certificate of Incorporation of TokenVault, Inc. provides in relevant part that:

> **Unless the Corporation consents in writing to the selection of an alternative forum**, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for **any stockholder (including a beneficial owner)** to bring (i) any derivative action or proceeding brought on behalf of the Corporation, **(ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee** of the Corporation to the Corporation or the Corporations stockholders . . . .

Dkt. No. 56-2 at 6 (emphasis added).  Bayston argues that Plaintiff's claims against him here fall within the scope of the clause, contends that Plaintiff is a stockholder or beneficial owner, and posits that Onsa has not consented in writing to an alternative forum as would be required to file the claim in this district.  Bayston Mot. at 7-12.  Plaintiff responds that venue here is proper because Plaintiff is neither a stockholder nor a beneficial owner of Onsa and, in any event, Plaintiff (*i.e.*, Blockchain) has *itself* consented in writing to this suit.  *See* Opp. to Bayston at 4-6.

As with seemingly everything else in this case, what would normally be a straightforward analysis is complicated by the byzantine series of transactions that led to Plaintiff's formation and the filing of this lawsuit.  But fundamentally, the Court finds that while the obvious spirit of the forum selection clause would seem to counsel for this claim proceeding in the Chancery Court, the letter of the clause does not require that outcome.

First, the Court rejects Plaintiff's argument that its own actions, including filing the lawsuit, can constitute the required consent by "the Corporation" (*i.e.*, Onsa).  Bayston represents, and Plaintiff does not dispute, that at least at the time the motion was filed Onsa still existed as a

14

corporate entity. Bayston Mot. at 10.[8]  Plaintiff fails to show that the assignment of Onsa's claims to it also conferred Onsa's right to choose the forum of the claims described in the certificate of incorporation, and that result would make little sense given Onsa's *own* ongoing interest in making decisions for itself as to this issue.

That said, the Court cannot find based on the complaint that this is a claim brought by a "stockholder or beneficial owner" so as to fall within the scope of the clause.  From an equitable standpoint, Bayston is right that in substance the core of the claims sure sounds like what the clause is intended to cover.  As Bayston correctly points out, the complaint itself characterizes this suit as the result of "the non-Franklin Templeton shareholders' resolve to have their day in court." FAC ¶ 173.  "Plaintiff's members include, without limitation, over fifty of the non-Franklin Templeton shareholders of Onsa."  *Id.* ¶ 146.  And the Asset Purchase Agreement attached to the complaint explains that "prior to the formation of [Plaintiff] and the entering into of this agreement, all Non-Voting Shareholders were offered the right to participate in an informal group of Non-Voting Shareholders seeking to pursue claims against, *inter alia*, Franklin Templeton." *Id.*, Ex. C at 1.  It is plain, therefore, that whatever machinations resulted in the creation of the particular form Plaintiff now takes, the substance of its claims is the same as the substance of those it acknowledges would have to be brought in Delaware if derivatively asserted by the individual shareholders who comprise it.  *See* Bayston Opp. at 5 ("Were these Onsa shareholders to *individually* file a suit against Onsa or Bayston falling within the forum selection clause, they would have to file it in Delaware Chancery Court (absent written consent by Onsa).").

But while it may be that Plaintiff has exploited a loophole by virtue of the details of its formation, the Court finds that the record does not support the conclusion that Plaintiff *itself* is a "stockholder" or "beneficial owner" of Onsa, which are the triggering conditions.  As Plaintiff notes, none of Onsa's stockholders are plaintiffs in this case, and those shareholders have not

---

[8] The Court takes judicial notice of the certification from the Delaware Secretary of State submitted with Bayston's motion, as it is a reliable public record whose accuracy cannot reasonably be questioned.  *See* Dkt. Nos. 56-3 and 56-4.

United States District Court
Northern District of California

transferred their Onsa shares to Plaintiff.  Bayston Opp. at 4-5.  And Plaintiff persuasively points out that while an entity comprised of Onsa shareholders ended up being the winning bidder for the Onsa assets at auction, any third party could have bought those assets, without being subject to the forum selection clause.  *Id.* at 5.  In short, Plaintiff simply is not a "stockholder" of Onsa.

Nor does the "beneficial owner" prong apply to the circumstances here.  The Court of Chancery of Delaware has "held that the phrase 'beneficial ownership' requires construction by the Court, and that the context in which the term is used should shape its interpretation." *Mangano v. Pericor Therapeutics*, No. CIV.A. 3777-VCN, 2009 WL 4345149, at *4 (Del. Ch. Dec. 1, 2009) (internal quotations and citations omitted).  "'[B]eneficial interest' or 'beneficial ownership' is often used to describe the tangible interests one has in securities held in trust or held by a brokerage firm as record owner." *Id*. at *5.  Black's Law Dictionary defines "beneficial ownership" as "[a] corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner."  Black's Law Dictionary (11th ed. 2019).  Neither this definition nor any other one proffered by Bayston fits the situation posed by this lawsuit.

The Court suspects that these claims *should* be subject to Onsa's forum selection decision from a common sense standpoint.  But it has to read the language of the certificate as written, and that language simply does not cover the lawsuit Plaintiff has brought.  Accordingly, the motion to dismiss is denied to the extent it relies on a *forum non conveniens* rationale based on the forum selection clause.

### 2. The Complaint Adequately Alleges a Breach of Fiduciary Duty By Bayston

For the same reasons detailed above in the discussion of the fiduciary duty claims against the Corporate Defendants, the complaint adequately pleads facts sufficient to state a claim against Bayston.  The complaint sufficiently alleges Bayston's role in the alleged scheme, and pleads his lack of independence, and breach of the duty of loyalty and bad faith by allegedly acting in the interest of his longtime employer Franklin Templeton at the expense of Onsa's interests.  *See, e.g.,* FAC ¶¶ 5, 11, 23, 30, 32, 41-47, 97-133, 178-195.  Obviously, Bayston vehemently disagrees with

United States District Court
Northern District of California

16

the facts pled in the complaint, but at this stage the Court must accept those facts as true and make all inferences in Plaintiff's favor.  At this stage, the claim is adequately pled.[9]

### D.    Request for Judicial Notice

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (internal citation omitted).  "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*  "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (quoting Fed. R. Evid. 201(b)).  Incorporation-by-reference, by contrast, "treats certain documents as though they are part of the complaint itself." *Id.* at 1002.  Finally,

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint—accepted as true at the pleading stage—can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Id.* at 1003.

Defendants filed a request for judicial notice regarding Exhibits A, B, C, and F to the Bayston Declaration; Exhibit G to the Supplemental Declaration of Roger Bayston; and Exhibits 1, 2, 3, and 5 to the Woo Declaration.  *See* Dkt. No. 59.  Plaintiff opposes this request for judicial notice as to the exhibits to the Bayston Declaration and the Supplemental Bayston Declaration on the ground that these documents are not the proper subject of judicial notice because they are not "matters of public record" or generally undisputed adjudicative facts.  *Khoja*, 899 F.3d 988 at 999.

---

[9] Plaintiff also objects to and moves to strike certain evidence submitted by Bayston in support of his motion.  *See* Dkt. No. 69 ("Opp. to Bayston") at 21-22.  The Court need not and does not rely on the challenged materials, and accordingly **DENIES** the request to strike.

The Court agrees that these not matter of public record and they are generally not undisputed facts. Plaintiff, however, relies on some of these documents in its pleading, and concedes that Exhibits A, B, and C to the Bayston Declaration, as well as Exhibit G to the Supplemental Bayston Declaration, are properly incorporated by reference.  *See* Dkt. No. 65 at 2 ("as Plaintiff referred to Exhibits A, B, C, and G in its pleadings, Plaintiff does not oppose that such documents should be considered incorporated-by-reference into the original Complaint and FAC").  The Court thus **GRANTS** the request as unopposed as to these four exhibits.

The Court further agrees with Plaintiff that Exhibit F to the Bayston Declaration should not be incorporated by reference because Plaintiff does not rely on or even mention it in the Complaint.  As pled, Plaintiff's claims do not depend on it.  The Court thus **DENIES** the request as to this document, and does not consider it.

Plaintiff does not oppose Defendants' Request for Judicial Notice with respect to the exhibits to the Woo Declaration, so the RJN as to those documents is **GRANTED**.

Finally, the Court **DENIES AS MOOT** Plaintiff's motion for leave to file a request for judicial notice because the Court is not considering Exhibit F to the Bayston Declaration (the Franklin-Templeton-Trombley Agreement) at this time.  *See* Dkt. No. 78, Mot. for Leave to File Request for Judicial Notice.

## IV.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

The Court **DENIES** Defendants' motions to dismiss the First Amended Complaint.  Dkt. Nos. 56, 57, 58.  The Court **DENIES AS MOOT** Plaintiff's motion for leave to file a request for judicial notice at Dkt. No. 78.

The Court further **SETS** a telephonic case management conference on April 11, 2023, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  **NOTE REGARDING TELEPHONIC CASE**

**MANAGEMENT CONFERENCES**:  All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD.  The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by April 4, 2023.  The parties should be prepared to discuss how to move this case forward efficiently.

This order terminates Docket Numbers 56, 57, 58 and 78.

**IT IS SO ORDERED.**

Dated:    3/20/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California