1  DARIN SNYDER (S.B. #136003)
   dsnyder@omm.com
2  LUANN L. SIMMONS (S.B. #203526)
   lsimmons@omm.com
3  **O'MELVENY & MYERS LLP**
   Two Embarcadero Center, 28th Floor
4  San Francisco, California 94111-3823
   Telephone: (415) 984-8700
5  Facsimile: (415) 984-8701

6  *Attorneys for Defendants*
   *FRANKLIN RESOURCES, INC.,*
7  *FT FINTECH HOLDINGS, LLC,*
   *FRANKLIN TEMPLETON COMPANIES,*
8  *LLC, and JENNIFER JOHNSON*

9  *(additional counsel listed on signature page)*

10
                    **UNITED STATES DISTRICT COURT**
11
                    **NORTHERN DISTRICT OF CALIFORNIA**
12
                       **SAN FRANCISCO DIVISION**
13

14
   BLOCKCHAIN INNOVATION, LLC,              Case No. 3:21-cv-08787-AMO (TSH)
15
                Plaintiff,                  **DEFENDANTS' NOTICE OF MOTION
16                                          AND MOTION FOR SANCTIONS
                                            UNDER FED. R. CIV. P. 37(E) DUE TO
17        v.                                PLAINTIFF'S SPOLIATION OF
                                            EVIDENCE**
18  FRANKLIN RESOURCES, INC. d/b/a
   FRANKLIN TEMPLETON, FT FINTECH           **PUBLIC REDACTED VERSION**
19  HOLDINGS, LLC, FRANKLIN
   TEMPLETON COMPANIES, LLC,                [DECLARATION OF DARIN SNYDER;
20  JENNIFER JOHNSON, AND ROGER             [PROPOSED] ORDER;
   BAYSTON,                                 ADMINISTRATIVE MOTION TO
21                                          CONSIDER WHETHER ANOTHER
                Defendants.                 PARTY'S MATERIAL SHOULD BE
22                                          SEALED FILED CONCURRENTLY
                                            HEREWITH]
23
                                            Date:       July 18, 2024
24                                          Time:       10:00 a.m.
                                            Courtroom:  E, 15th Floor
25                                          Judge:      Hon. Thomas S. Hixson

26

27

28
                                            DEFENDANTS' MOTION FOR SANCTIONS
                                            UNDER FED. R. CIV. P. 37(E)
                                            3:21-CV-08787-AMO (TSH)

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 18, 2024, at 10:00 a.m., or as soon thereafter as the matter may reasonably be heard before the Honorable Thomas S. Hixson in Courtroom E of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Franklin Resources, Inc. d/b/a Franklin Templeton, FT FinTech Holdings, LLC, Franklin Templeton Companies, LLC, Jennifer Johnson, and Roger Bayston (collectively, "Defendants") will, and hereby do, move this Court, under Federal Rule of Civil Procedure 37(e) and Civil Local Rule 37-4 of the U.S. District Court for the Northern District of California, for an order imposing sanctions, including an adverse jury instruction, against Plaintiff Blockchain Innovation, LLC ("Plaintiff") for its spoliation of evidence.

This Motion is made on the grounds that Plaintiff's agents, Austin Trombley, Aaron Travis, and Alina Trombley, failed to take reasonable steps to preserve relevant electronically stored information ("ESI") in text messaging platforms, including iMessage and WhatsApp, when they were actively anticipating litigation against Defendants, which failure resulted in the loss of nearly all text messages for the time period relevant to this litigation.  Plaintiff's spoliation of text messages was done with the intent to deprive Defendants of responsive, relevant evidence in this litigation and has prejudiced Defendants by depriving them of receiving and reviewing evidence from text messaging platforms that Plaintiff's agents regularly used to conduct business.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Darin Snyder and any exhibits thereto, any reply brief that might be submitted by Defendants in support of this Motion, all papers, files, and pleadings on file in this action, and such further evidence and argument as the Court may allow at or before the hearing on this Motion or prior to the Court's decision.

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1

## ISSUES TO BE DECIDED

2      1.      Whether Plaintiff spoliated evidence.

3      2.      Whether Plaintiff's spoliation of evidence warrants Defendants' requested

4   sanctions under Federal Rule of Civil Procedure 37(e).

5

6          Dated:  June 7, 2024

7                                                      By:      /s/ Darin Snyder
                                                              Darin Snyder
8

9                                                      DARIN W. SNYDER (S.B. #136003)
                                                       dsnyder@omm.com
10                                                     LUANN L. SIMMONS (S.B. #203526)
                                                       lsimmons@omm.com
11                                                     O'MELVENY & MYERS LLP
                                                       Two Embarcadero Center, 28th Floor
12                                                     San Francisco, California  94111-3823
                                                       Telephone:    +1 415 984 8700
13
                                                       HANA OH (S.B. #300846)
14                                                     hoh@omm.com
                                                       STACY YAE (S.B. #315663)
15                                                     syae@omm.com
                                                       O'MELVENY & MYERS LLP
16                                                     610 Newport Center Drive, 17th Floor
                                                       Newport Beach, California 92660-6419
17                                                     Telephone:    +1 949 823 6900

18                                                     BRITTANY ROGERS (S.B. #274432)
                                                       brogers@omm.com
19                                                     O'MELVENY & MYERS LLP
                                                       400 South Hope Street, 18th Floor
20                                                     Los Angeles, CA 90071-2899
                                                       Telephone:    +1 213 430 6000
21
                                                       *Attorneys for Defendants*
22                                                     *FRANKLIN RESOURCES, INC.,*
                                                       *FT FINTECH HOLDINGS, LLC,*
23                                                     *FRANKLIN TEMPLETON COMPANIES,*
                                                       *LLC, and JENNIFER JOHNSON*
24

25                                                     By:      /s/ Lyn Agre
                                                              Lyn Agre
26

27                                                     GLENN AGRE BERGMAN & FUENTES
                                                       LLP
28                                                     Lyn R. Agre (Cal. Bar No. 178218)

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

Edward E. Shapiro (Cal. Bar No. 326182)
44 Montgomery St., Suite 2410
San Francisco, California 94104
Telephone: (332) 233-5784
lagre@glennagre.com
eshapiro@glennagre.com

Jed I. Bergman (admitted pro hac vice)
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
jbergman@glennagre.com

*Attorneys for Defendant*
*ROGER BAYSTON*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     INTRODUCTION ............................................................................ 1

II.    BACKGROUND ............................................................................. 3

    A.   Onsa Struggles At The Hands Of Its Founder And Officers ..................... 3

    B.   The Trombleys And Mr. Travis Begin Investigating Claims Against Defendants On Behalf Of Plaintiff. ............................................................ 4

    C.   Plaintiff Files Suit Against Defendants .................................................. 5

    D.   Discovery Reveals Plaintiff's Spoliation Of Text Messages ..................... 5

III.   LEGAL STANDARD ...................................................................... 11

IV.   PLAINTIFF SPOLIATED ESI RELATED TO ITS CLAIMS ........................ 11

    A.   A Duty To Preserve Text Messages Arose By August 2020. ................... 12

    B.   The Trombleys And Mr. Travis Failed To Take Reasonable Steps To Preserve The Text Messages. .......................................................... 14

    C.   The Text Messages Cannot Be Restored Or Replaced. ........................... 15

    D.   The Trombleys' And Travis's Spoliation Is Imputable To Plaintiff. ......... 17

V.    DEFENDANTS ARE ENTITLED TO AN ADVERSE INFERENCE INSTRUCTION UNDER RULE 37(E) ...................................................... 17

    A.   Plaintiff's Spoliation Has Prejudiced Defendants. .................................. 18

    B.   Plaintiff Acted With The Intent To Deprive Defendants Of The Text Messages. .................................................................................... 20

    C.   An Adverse Instruction Is Necessary To Remedy The Harm To Defendants. ..................................................................................... 21

VI.   CONCLUSION ............................................................................. 25

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aramark Mgmt., LLC v. Borgquist*,
  2021 WL 864067 (C.D. Cal. Jan. 27, 2021), report and recommendation
  adopted, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021) ........................................... 11, 12, 19, 24

*Armstrong v. Holmes*,
  2024 WL 1345214 (D. Nev. Mar. 29, 2024).................................................................... 20

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  2016 WL 6609208 (C.D. Cal. July 12, 2016), report and recommendation
  adopted, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) ............................................. 13

*Clear-View Techs., Inc. v. Rasnick*,
  2015 WL 2251005 (N.D. Cal. May 13, 2015) ............................................................ 24

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)..................................................... passim

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) .................................................................... 22

*Culhane v. Wal-Mart Supercenter*,
  364 F. Supp. 3d 768 (E.D. Mich. 2019) ................................................................... 21

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
  2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) ......................................................... 22

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
  2022 WL 11270394 (N.D. Cal. Oct. 19, 2022)................................................... passim

*Estate of Bosco v. Cnty. of Sonoma*,
  640 F. Supp. 3d 915 (N.D. Cal. 2022) .................................................... 16, 18, 22, 24

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ............................................................................... 12

*Fourth Dimension Software v. DER Touristik Deutschland GmbH*,
  2021 WL 5919821 (N.D. Cal. Dec. 15, 2021) ..................................................... 21, 22

*Gaina v. Northridge Hosp. Med. Ctr.*,
  2019 WL 1751825 (C.D. Cal. Feb. 25, 2019)............................................................ 19

*Gemsa Enters., LLC v. Specialty Foods of Ala., Inc.*,
  2015 WL 12746220 (C.D. Cal. Feb. 10, 2015)......................................................... 17

*Glaukos Corp. v. Ivantis*,
  2020 WL 10501850 (C.D. Cal. June 17, 2020) ............................................. 19, 21, 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  639 F. Supp. 3d 944 (N.D. Cal. 2022) ........................................................ 18

*Hugler v. Sw. Fuel Mgmt., Inc.*,
  2017 WL 8941163 (C.D. Cal. May 2, 2017) ................................................ 15

*In re Nat'l Security Agency Telecomm. Records Litig.*,
  2007 WL 3306579 (N.D. Cal. Nov. 6, 2007) ............................................... 17

*Jones v. Riot Hosp. Grp. LLC*,
  2022 WL 3682031 (D. Ariz. Aug. 25, 2022), *aff'd*, 95 F.4th 730 (9th Cir.
  2024) .................................................................................................... 15, 20

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ....................................................................... 11

*Laub v. Horbaczewski*,
  2020 WL 9066078 (C.D. Cal. July 22, 2020) ................................... 11, 15, 20

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ....................................................................... 19

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  2016 WL 2957133 (N.D. Cal. May 23, 2016) ........................................... 1, 18

*Microvention, Inc. v. Balt USA, LLC*,
  2023 WL 7476998 (C.D. Cal. Oct. 5, 2023), report and recommendation
  adopted, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) ................. 13, 17, 24, 25

*Morehead v. City of Oxnard*,
  2023 WL 8143973 (C.D. Cal. Oct. 4, 2023) ............................... 11, 16, 20, 24

*Oppenheimer v. City of La Habra*,
  2017 WL 1807596 (C.D. Cal. Feb. 17, 2017) ............................................... 11

*Phan v. Costco Wholesale Corp.*,
  2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ........................................ 12, 24

*Rapp v. NaphCare, Inc.*,
  2023 WL 3741475 (W.D. Wash. May 31, 2023) ........................................... 20

*Resendez v. Smith's Food & Drug Centers, Inc.*,
  2015 WL 1186581 (D. Nev. Mar. 16, 2015) ................................................ 13

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
  342 F.R.D. 461 (C.D. Cal. 2022) ...................................................... 16, 19, 22

*Sanders v. L.A. Cnty.*,
  2019 WL 12831725 (C.D. Cal. Aug. 1, 2019) .......................................... 11, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Singleton v. Kernan*,
    2018 WL 5761688 (S.D. Cal. Nov. 1, 2018) ................................................... 21, 24

*Soule v. P.F. Chang's China Bistro, Inc.*,
    2020 WL 959245 (D. Nev. Feb. 26, 2020) ............................................................. 21

*Su v. NAB LLC*,
    2023 WL 9494449 (D. Nev. Dec. 4, 2023) ............................................................. 21

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010) .............................................................................. 17

*Yela Fiduciary Servs., LLC v. Benton Cnty.*,
    2022 WL 17666400 (D. Or. Dec. 14, 2022) ......................................................... 18

*Youngevity Int'l v. Smith*,
    2020 WL 7048687 (S.D. Cal. July 28, 2020) ........................................... 16, 18, 19

**Rules**

Fed. R. Civ. P. 37(e) ................................................................................................ passim

Fed. R. Civ. P. 37(e)(1) ......................................................................... 3, 18, 19, 21, 22

Fed. R. Civ. P. 37(e)(2) ............................................................................... 3, 20, 22, 24

### MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.    INTRODUCTION

"The rules governing parties' duties to preserve data do not demand perfection." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016). "The standard is an attainable one":  a court may impose sanctions "only when a party should have preserved electronically stored information 'in the anticipation or conduct of litigation' and . . . 'failed to take reasonable steps to preserve it." *Id.*; *see also* Fed. R. Civ. P. 37(e).  Plaintiff Blockchain Innovation LLC's "efforts" to preserve text messages of its agents—Austin Trombley, Alina Trombley, and Aaron Travis ("the Trombleys and Mr. Travis")—did not come close to reaching this standard.  While the Trombleys and Mr. Travis are the individuals driving this litigation and at the heart of its claims, Plaintiff did ***nothing*** to preserve electronic messages that were the trio's primary form of communication, even as it spent over a year meeting with lawyers and collecting ***other*** evidence for use in this very litigation.  Short of offering a partial explanation for Mr. Trombley the morning that Defendants were to file this Motion—which is unsupported by the record and conflicts with Mr. Trombley's sworn testimony—Plaintiff has provided no explanation for the destruction of these text messages.  Defendants have spent months trying to resolve this matter out of court, but now respectfully request that the Court issue an adverse inference instruction to remedy Plaintiff's admitted failure to preserve this relevant evidence.

Plaintiff's predecessor, Onsa, was a failed startup built on deception and disfunction.  It did not own the intellectual property it said it did and touted technology that turned out to be either theoretical or rudimentary and non-functional.  At the core of Onsa's problems were its founders and officers—the Trombleys and Mr. Travis.  The trio negotiated a multi-million-dollar investment from Defendant FT FinTech Holdings, LLC ("FT FinTech") using false pretenses, and soon thereafter resigned, leaving Onsa to struggle for months before its deep-rooted issues led to the company's wind down.  But after parting ways with Onsa, the Trombleys and Mr. Travis did not fade into the background.  They retained counsel, formed a coalition of non-voting Onsa

---

[1] Unless otherwise indicated, internal quotations and citations are omitted and emphasis is added. All Exhibits are attached to the concurrently filed Declaration of Darin Snyder ("Snyder Decl.").

1    shareholders, and started planning a lawsuit.  When Onsa sold its assets in an assignment for benefit

2    of creditors ("ABC"), the Trombleys and Mr. Travis formed Plaintiff, bought Onsa's assets,

3    including its potential legal claims, and sued Defendants.

4        For the last year and a half, the parties have engaged in extensive fact discovery.  Through

5    discovery, Defendants discovered how long the Trombleys and Mr. Travis had been hatching their

6    plan to extract millions more from Defendants through litigation.  As their own privilege log shows,

7    in mid-2020, the Trombleys and Mr. Travis began discussing potential claims against FT FinTech.

8    As early as August 2020, the group, as admitted agents for Plaintiff, began collecting documents

9    for "anticipated litigation against Franklin."  And one month later, they began meeting with the

10   same attorneys who are counsel of record for Plaintiff.

11       But Plaintiff's preservation efforts were selective and incomplete, at best.  Documents

12   produced in discovery and deposition testimony make clear that the Trombleys and Mr. Travis

13   primarily used iMessage and WhatsApp to conduct Onsa-related business and discuss issues at the

14   center of this case, such as Onsa's intellectual property, FT FinTech's investment in Onsa, and

15   Onsa's decision to wind down via an ABC.  Although unquestionably relevant to Plaintiff's

16   "anticipated litigation," the Trombleys' and Mr. Travis's text messages were not preserved when

17   they started collecting other materials for their claims.  And short of an informal, unwritten

18   litigation hold that Plaintiff's counsel estimate was communicated around the time this case was

19   filed, some 14 months after the Trombleys and Mr. Travis started to meet with them about litigation,

20   it is unclear when efforts to preserve the text messages started.  By the time Plaintiff took steps to

21   preserve the text messages (whenever that was), nearly all of the Trombleys' and Mr. Travis's text

22   messages for the relevant period had been irretrievably lost.  Of the 130,000 documents produced

23   by Plaintiff, only 13 are text messages—all coming from Ms. Trombley.

24       Given the Trombleys' and Mr. Travis's central roles at Onsa, their text messages would

25   have been highly relevant to the issues at stake in this case.  The destruction of those messages has

26   therefore eliminated a critical category of evidence necessary to test Plaintiff's allegations.  The

27   circumstances surrounding that destruction—including the planning for litigation against

28   Defendants with Plaintiff's counsel in the year leading to filing this case, and the selective pre-

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1   litigation collection and preservation of evidence—raise the strong inference that the failure to

2   preserve the text messages was done with an intent to deprive Defendants of their use.  Given these

3   facts, sanctions under Federal Rule of Civil Procedure 37(e)(1) and (2) are appropriate for

4   Plaintiff's spoliation of the text messages.  Defendants respectfully request that the Court grant the

5   Motion and order sanctions in the form of an adverse inference instruction to be provided at trial.

6   **II.    BACKGROUND**

7       **A.    <u>Onsa Struggles At The Hands Of Its Founder And Officers</u>**

8          Onsa was founded in 2017 by Mr. Trombley with a goal to leverage blockchain technology

9   to tokenize financial assets.  Mr. Trombley was also Onsa's CTO and was joined at the company

10  by Ms. Trombley (Onsa's VP of Operations) and Mr. Travis (its COO).  During their time at Onsa,

11  the Trombleys and Mr. Travis worked closely together and regularly used text messaging platforms,

12  including iMessage and WhatsApp, to stay in contact and for business purposes.  *See, e.g.*, Ex. 1

13  (Austin Trombley Dep. Tr.) at 21:12–14; Ex. 2 (Alina Trombley Dep. Tr.) at 11:14–17 (admitting

14  to using iMessage and WhatsApp for work purposes).  In fact, text messaging was Mr. Trombley's

15  ***preferred*** means of communications while conducting business at Onsa.  *See, e.g.*, Ex. 4

16  (BLOCKCHAIN-00306363) at 1 (WhatsApp "is how I communicate with everyone").[2]

17         While all startups face speedbumps, Onsa's problems were acute from the beginning.  In an

18  effort to strengthen Onsa's finances, Mr. Trombley negotiated a multi-million-dollar investment by

19  FT FinTech in October 2019.  *See* Ex. 5 (BLOCKCHAIN-00000367) at 1.   FT FinTech's

20  investment came with the promise of future investments if Onsa met milestones tied to its work

21  streams. *See id.* at 2–3.  FT FinTech was not aware, however, that Onsa did not own the intellectual

22  property that Mr. Trombley represented in negotiations.  *See* Ex. 1 at 274:17–22.  And FT FinTech

23  soon learned that Onsa could not develop the technology it pitched to Defendants.  *See* Ex. 34

24  (Roger Bayston Dep. Tr.) at 130:17–131:4.

25

26

---

27  [2] *See also* Ex. 6 (BLOCKCHAIN-00176867) (Onsa's CEO admonishing Mr. Trombley's use of WhatsApp to communicate about Onsa confidential business); Ex. 7 (FRANKLIN_00012940)

28  (employee stating that WhatsApp "is the only way Austin communicates with me.").

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

Within months of FT FinTech's investment, Mr. Travis left Onsa, and Mr. Trombley and Onsa's CEO turned on each other. *See* Ex. 3 (Aaron Travis Dep. Tr.) at 232:22–25; *see also* Ex. 1 at 202:13–23. By June 2020, with Onsa facing infighting, delays in product development, and continued financial strain, the Trombleys parted ways with the company as well. *See* Ex. 1 at 32:12–16, 202:13–23; Ex. 2 at 27:11–13.

### B. The Trombleys And Mr. Travis Begin Investigating Claims Against Defendants On Behalf Of Plaintiff

Soon after the Trombleys departed Onsa, they began discussing potential litigation against Defendants with Mr. Travis. Those discussions began as early as "mid to late 2020." Ex. 2 at 11:22–12:8; *see also* Ex. 1 at 218:21–219:3 (Mr. Trombley stating that he first started thinking about suing Franklin around June 2020). Throughout August and September of 2020, the Trombleys and Mr. Travis were admittedly "collecting information for the purpose of anticipated litigation against Franklin." *See* Ex. 8 (Alina Trombley Privilege Log) at 1, 4. At the same time, Mr. Travis had begun meeting with litigation counsel—counsel of record for Plaintiff in this case—about potential litigation against Defendants. *See* Ex. 9 (Aaron Travis Privilege Log) at 1. By October 2020, Mr. Travis was texting Onsa's CEO, boasting of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 35 (FRANKLIN_00332457); Ex. 36 (FRANKLIN_00370552).

In November 2020, Onsa decided to wind down its operations through an ABC process, which allowed Onsa to protect stakeholders' interests while achieving an orderly closure. *See* Ex. 10 (BLOCKCHAIN-00000413). Around the same time, the Trombleys, Mr. Travis, and Plaintiff's counsel were meeting with Onsa's non-voting shareholders about planned litigation. *See* Ex. 11 (DILLARD-SUBPOENA_00000122).

In July 2021, Messrs. Trombley and Travis joined other Onsa shareholders to form Plaintiff Blockchain Innovation LLC—an entity with the sole mandate of pursuing this lawsuit. *See* Ex. 12 (BLOCKCHAIN-00003660); Ex. 13 (BLOCKCHAIN-00359031). Mr. Travis is Plaintiff's CEO and manager, holding more than 5% interest in the company. *See* Dkt. No. 54. The Trombleys

1    jointly own an interest in Plaintiff as well. *See id.*; Ex. 1 at 19:25–20:6, 34:4–6; Ex. 2 at 265:10–

2    23.  Plaintiff's counsel has represented that the Trombleys and Mr. Travis have acted as Plaintiff's

3    representatives and agents since they began meeting with counsel to develop this lawsuit and began

4    selectively gathering and preserving evidence for use in this litigation, as early as August 2020.

5    *See* Ex. 8 at 4; Ex. 14 (B. Rogers 5/14/2024 email) at 1.

6              **C.    Plaintiff Files Suit Against Defendants**

7              On November 12, 2021, Plaintiff, as Onsa's alleged successor-in-interest, filed its initial

8    complaint against Franklin Resources, Inc., FT FinTech, Franklin Templeton Companies, LLC

9    (collectively, the "Franklin Defendants"), Jennifer Johnson, and Roger Bayston.  *See* Dkt. No. 1.

10   On February 12, 2024, Plaintiff filed its operative, Second Amended Complaint ("SAC").  *See* Dkt.

11   No. 179.  The crux of Plaintiff's case is the allegation that the Franklin Defendants allegedly

12   misappropriated Onsa's putative proprietary technology that was shared in the run up to

13   FT FinTech's investment and that Defendants—who allegedly controlled Onsa through FT

14   FinTech's voting shares and Mr. Bayston's role as director—took actions that impaired Onsa's

15   development and ultimate value.  *See* SAC ¶¶ 1–50.  Plaintiff alleges that, after Defendants

16   purportedly squandered Onsa's technology and value, they wound-up Onsa's operations to

17   somehow benefit Franklin.  *See id.*  Based on these allegations, Plaintiff brings five claims for

18   alleged (1) trade secret misappropriation, (2) copyright infringement, (3) breach of contract, (4)

19   breach of fiduciary duty, and (5) aiding and abetting breach of fiduciary duty.  *See id.* ¶¶ 180–267.

20             **D.    Discovery Reveals Plaintiff's Spoliation Of Text Messages**

21             For the last year and a half, the parties have engaged in extensive fact discovery, conducting

22   more than 26 depositions, exchanging over 24 sets of written discovery, and producing over

23   200,000 documents, comprising some 780,000 pages.  *See* Snyder Decl. ¶ 21.  Given their key roles

24   at Onsa leading up to FT FinTech's investment and in Onsa's operations at the core of Plaintiff's

25   claims, one particular area of focus for Defendants was the Trombleys and Mr. Travis.  *See, e.g.*,

26   Exs. 15, 16, 33 (document subpoenas to the Trombleys and Mr. Travis).

27             Documents produced by Defendants in discovery confirmed the Trombleys' and

28   Mr. Travis's involvement in Onsa's alleged technology, in supporting due diligence and

- 5 -

negotiations surrounding FT FinTech's investment in Onsa, and in Onsa's operations following that investment. For example, Defendant Roger Bayston produced text messages reflecting extensive conversations with Mr. Trombley about Onsa, its alleged IP, and FT FinTech's investment in the company. *See, e.g.*, Ex. 17 (BAYSTON000213) (text messages between Messrs. Bayston and Trombley from November 2017 to January 2020, including discussions of Franklin's pre-investment due diligence and Onsa's IP ownership). Mr. Bayston also produced conversations with Ms. Trombley and Mr. Travis for the months leading up to FT FinTech's investment covering subjects directly relevant to Plaintiff's claims. *See, e.g.*, Ex. 18 (BAYSTON000015) (text messages between Messrs. Bayston and Travis from June 2018 to February 2020, including discussions of Franklin's investment in Onsa and Mr. Bayston's efforts to support Onsa); Ex. 19 (BAYSTON000187) (text messages between Mr. Bayston and Ms. Trombley, including discussions of Franklin's investment in Onsa and Franklin's efforts to support Onsa). Mr. Bayston also produced WhatsApp messages showing that the Trombleys and Mr. Travis used that application to regularly discuss Onsa business from at least August 2019 to December 2021. *See, e.g.*, Ex. 37 (BAYSTON000507) (WhatsApp messages with Mr. Trombley and Onsa employees discussing the lead up to FT FinTech's investment); Ex. 38 (BAYSTON000621) (WhatsApp messages with Ms. Trombley, Mr. Travis, and Mr. Bayston discussing an Onsa "org chart" and money transmitter licenses); Ex. 39 (BAYSTON000626) (WhatsApp messages with Mr. Trombley, Mr. Bayston, and Sheffield Nolan discussing candidates for Onsa's chief compliance officer role).

While these documents confirmed that the Trombleys and Mr. Travis were involved in events surrounding Plaintiff's claims and regularly engaged in text message conversations about subjects central to this case, Plaintiff inexplicably did not produce any text messages from the Trombleys or Mr. Travis in response to Defendants' discovery requests. *See* Snyder Decl. ¶ 21. On January 28, 2024, Defendants emailed Plaintiff's counsel raising numerous deficiencies in Plaintiff's document production, including the failure to produce any text messages. *See* Ex. 20 (H. Oh 1/28/2024 email) at 1. For weeks, Defendants repeated their request for Plaintiff to produce text messages or explain why no such messages were produced for the Trombleys or Mr. Travis. *See* Snyder Decl. ¶¶ 3–4. Having received no substantive response, Defendants requested a meet

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1   and confer pursuant to the Court's standing order.  *See id.*  A lead-counsel meet and confer[3] was

2   set for March 7, 2024, but was rescheduled after Mr. Trombley's counsel failed to appear.  *See id.*

3   Two days before the rescheduled meet and confer, Plaintiff's counsel informed Defendants

4   that it had "collected and reviewed [Ms. Trombley]'s and [Mr. Travis]'s iMessages," and while

5   "[Ms. Trombley] has a few, non-privileged iMessages from the relevant time period" that will be

6   produced, "[Mr. Travis] has no relevant, non-privileged iMessages."  *See* Ex. 21 (C. Granaghan

7   4/3/2024 email).  Lead counsel met and conferred two days later about Plaintiff's failure to produce

8   any responsive text messages for the Trombleys and Mr. Travis.  *See* Snyder Decl. ¶ 6.  A continued

9   meet and confer occurred on April 7, which resulted in Defendants having to adjourn previously

10  scheduled depositions for the Trombleys to permit counsel to investigate both individuals' text

11  messages.  *See id.* ¶ 7.

12  On April 8 and April 10, Plaintiff produced **four** text messages from Ms. Trombley.  *See*

13  *id.* ¶ 8.  At a meet and confer on April 17, Plaintiff's counsel stated that they had collected and

14  downloaded the contents of Mr. Trombley's phone, including iMessages, but would not agree to

15  search Mr. Trombley's WhatsApp messages—his preferred method of communication—because

16  it involved accessing a backup file. *See id.* ¶ 9.  Understanding that Plaintiff's counsel had reviewed

17  Mr. Trombley's iMessages in response to Defendants' repeated requests, Defendants' counsel sent

18  an email on April 19 asking Plaintiff to explain why it had still not produced any text messages.

19  *See* Ex. 22  (H. Oh 4/19/2024 email).  Defendants received no response.  *See* Snyder Decl. ¶ 10.

20  Having reached an impasse—receiving no text messages from Plaintiff and no explanation

21  for the failure to produce any for the Trombleys or Mr. Travis—Defendants sent Plaintiff a draft

22  joint letter brief on April 24, after nearly four months of attempting to resolve the issue.  *See* Ex. 23

23  (H. Oh 4/24/2024 email); Ex. 24 (draft joint letter brief).  The joint letter brief sought an order

24  compelling Plaintiff to search the Trombleys' and Mr. Travis's text messages and reasonably

25  accessible backups and produce responsive text messages—both iMessages and WhatsApp

26

27

28

---

[3] Mr. Travis and Ms. Trombley are represented by Plaintiff's counsel.  Mr. Trombley is represented by separate counsel at Burke, Williams & Sorensen, LLP.

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1  messages.  *See* Ex. 24.  Defendants asked Plaintiff to provide its portion of the letter brief pursuant

2  to Judge Hixson's Standing Order, but Plaintiff did not respond.  *See* Snyder Decl. ¶ 11.

3         Counsel for Defendants and Plaintiff met and conferred again on April 26, May 1, and

4  May 3 about Plaintiff's failure to produce text messages.  *See id.* ¶¶ 12–14.  On May 3, Plaintiff

5  stated that it had gathered and searched the Tromblys' phones and iCloud backups.  *See id.* ¶ 14.

6  Plaintiff's counsel stated that the earliest messages that could be retrieved for Mr. Trombley were

7  from "late 2021" but offered no explanation why earlier text messages were not available.  *See id.*

8  Two days later, and just days before Ms. Trombley's re-noticed deposition, Plaintiff made a

9  supplemental document production containing ***nine*** text message threads from Ms. Trombley,

10 dated between June 2020 and July 2021.  *See id.* ¶ 15; *see, e.g.*, Exs. 28–32.  These text messages

11 confirmed that the Tromblys communicated among themselves and with others at Onsa during the

12 relevant period about issues highly relevant to Plaintiff's claims and Defendants' defenses.

13    • In one text message exchange, for example, Mr. Trombley discussed Onsa's purported

14      ownership of the alleged copyrights and trade secrets central to this case, stating that a

15      vendor actually owned "█████████████  Ex. 31 (ALINA-00000963).[4]

16    • Ms. Trombley also produced messages discussing the value of Onsa's alleged trade secrets:

17      in one exchange, an engineer remarked that "████████████████████████

18      ████████████████████████████████████████████

19      Ex. 29 (ALINA-00000954); *see also* Ex. 28 (ALINA-00000948) (same engineer discussing

20      an "████████████████████████████████████████

21      ████████████████████████

22    • There were also discussions of Mr. Trombley's purported contributions to the source code

23      that Plaintiff claims he co-conceived, with Mr. Trombley admitting in one text message

24      exchange that he ████████████████████████████████████

25      ██████  Ex. 30 (ALINA-00000958).

26 ─────────────────

27 [4] Notably, when Defendants previously raised issues surrounding Onsa's purported ownership of the subject intellectual property in their Motion to Dismiss the First Amended Complaint, *see* Dkt. No. 57 at 5–8, Plaintiff insisted that "Defendants are simply wrong that Plaintiff does not own the

28 IP at issue." Dkt. No. 67 at 2; *see also id.* at 2–5.

1    • As one final example, Ms. Trombley also discussed the ABC that Plaintiff now challenges

2        and how to ████████████████████████████████." Ex. 32 (ALINA-00000975).

3    All of these admissions came from just five messages.

4        The very next day, Plaintiff stated that its document productions for the Trombleys were

5    complete. *See* Ex. 25 (B. Bumgardner 5/6/24 email) at 1.  With productions complete, Plaintiff

6    produced no text messages collected from Messrs. Trombley and Travis, and only 13 message

7    threads collected from Ms. Trombley, which in total spanned only 23 pages. *See* Snyder Decl. ¶ 21.

8        Despite these representations, Plaintiff served a privilege log for Ms. Trombley that

9    included at least 36 text messages between August 2020 and October 2021.  *See* Ex. 8.  The

10    privilege log shows that the Trombleys and Mr. Travis were communicating with Plaintiff's counsel

11    and collecting information on behalf of Plaintiff for "anticipated litigation against Franklin." *See*

12    *id.*  Each of these messages was withheld on the grounds of attorney-client privilege and as attorney

13    work product. *See id.*  These facts are consistent with text messages produced by Defendants in

14    this litigation showing Mr. Travis taunting Onsa's then-CEO in October 2020 about ████████

15    ███████████████ he and the Trombleys had assembled for this litigation. *See* Exs. 35, 36.

16        On May 29, 2024, counsel for Defendants requested a lead counsel meet and confer

17    pursuant to Judge Hixson's standing order to discuss the instant Motion seeking relief under Federal

18    Rule of Civil Procedure 37(e) for Plaintiff's spoliation of the Trombleys' and Mr. Travis's text

19    messages.  *See* Ex. 27 (H. Oh 5/29/2024 email).  On June 5, 2024, counsel for the parties held a

20    meet and confer, with a further meet and confer held on June 7.  *See* Snyder Decl. ¶¶ 19–20.

21        At the meet and confers, Plaintiff's counsel confirmed that the earliest text messages it has

22    in its possession date to December 2021 for Mr. Trombley, June 2020 for Ms. Trombley, and

23    August 2021 for Mr. Travis. *See id.* ¶ 19; *see also* Ex. 26 (G. Cruciani 5/17/24 email) at 1.  In other

24    words, despite acting as Plaintiff's agent to collect documents for this very lawsuit starting in

25    August 2020, Mr. Travis did not begin preserving his messages for at least another 11 months, and

26    Mr. Trombley did not begin preserving his messages for another 14 months.

27        Counsel stated that a formal litigation hold was issued to Plaintiff's shareholders on March

28    22, 2022, some four months after the case was filed, and an informal preservation notice was

communicated orally to the Trombleys and Mr. Travis around the time this case was filed. *See* Snyder Decl. ¶ 20. In other words, there was no litigation hold before the filing of this lawsuit and when one was put in place—which Plaintiff has no evidence of—that was over a year after the group started collecting documents and information for "anticipated litigation against Franklin." While Plaintiff's counsel stated that he believed the Trombleys and Mr. Travis were making sure not to delete text messages and communications at some point before the hold, counsel did not provide any details about when such alleged preservation efforts were undertaken. *See id*. ¶ 19. And when Mr. Trombley and Ms. Trombley were asked about the subject during depositions, they had no specific recollection of when they started preserving text message communications or what steps they took other than that they had not proactively deleted any text messages beginning around June 2021 and "mid to late 2020," respectively. *See* Ex. 1 at 21:20–24:16; Ex. 2 at 16:5–14. Plaintiff's counsel stated that the Trombleys' available backups were retrieved and restored with the assistance of a forensics consultant, resulting in the retrieval of text messages referenced above. *See* Snyder Decl. ¶ 19. Plaintiff's counsel and the consultant confirmed that any messages for Mr. Trombley and Ms. Trombley before December 2021 and June 2020, respectively, could not be retrieved or restored. *See id*.. Plaintiff's counsel also confirmed that Mr. Travis had no available backup for his phone and any messages or data before August 2021 could not be restored. *See id*.

On the morning of June 7, Defendants' deadline to file this Motion, Plaintiff's counsel provided Defendants' counsel with more information about Mr. Trombley's text messages. For the period from mid-2018 to Mr. Trombley's separation from Onsa, Plaintiff's counsel stated for the first time that Mr. Trombley had a practice of actively deleting text messages containing Onsa information and that he sometimes blocked or deleted contacts, and likely did so at the time of his departure. *See id.* ¶ 20. Plaintiff's counsel continued to offer no explanation for Mr. Trombley's lack of text messages from the time of his departure at Onsa (around April or May 2020) to December 2021. *See id.* When asked at his deposition just one month earlier for an explanation of what happened to his text messages, Mr. Trombley stated he did "not know what happened to the messages prior to" the ones "produced to my counsel." *See* Ex. 1 at 22:22–24:16. In other words, counsel's new representations are inconsistent with Mr. Trombley's sworn testimony.

1    **III.    LEGAL STANDARD**

2        "A party must preserve evidence that it knows or should know is relevant to a claim or

3    defense of any party, or that may lead to the discovery of relevant evidence." *Sanders v. L.A. Cnty.*,

4    2019 WL 12831725, at *2 (C.D. Cal. Aug. 1, 2019).  This duty to preserve "extends to the period

5    before litigation when a party should reasonably know that evidence may be relevant to anticipated

6    litigation," which "need not be certain or imminent." *Aramark Mgmt., LLC v. Borgquist*, 2021 WL

7    864067, at *3 (C.D. Cal. Jan. 27, 2021), report and recommendation adopted, 2021 WL 863746

8    (C.D. Cal. Mar. 8, 2021).  A party's breach of its "duty to preserve potentially discoverable

9    evidence . . . constitutes spoliation and justifies sanctions." *Morehead v. City of Oxnard*, 2023 WL

10   8143973, at *3 (C.D. Cal. Oct. 4, 2023); *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638,

11   649 (9th Cir. 2009) (spoliation is "destruction or significant alteration of evidence, or the failure to

12   preserve . . . evidence, in pending or future litigation.").

13       "Spoliation sanctions based on a failure to preserve electronically stored information are

14   governed by Rule 37(e) of the Federal Rules of Civil Procedure." *Laub v. Horbaczewski*, 2020 WL

15   9066078, at *2 (C.D. Cal. July 22, 2020).  A party seeking sanctions bears the initial burden of

16   establishing spoliation by a preponderance of the evidence.  *See Morehead*, 2023 WL 8143973, at

17   *4 (collecting cases).  If ESI has been spoliated, a court may, upon finding prejudice to the moving

18   party, "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

19   Separately, "Rule 37(e)(2)[ ] provides for more severe sanctions," including mandatory adverse

20   inference instructions, default judgment, or dismissal, "where a party intentionally destroys

21   information." *Dish Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL 11270394, at *2 (N.D. Cal. Oct.

22   19, 2022).

23   **IV.    PLAINTIFF SPOLIATED ESI RELATED TO ITS CLAIMS**

24       As a threshold matter, there can be no dispute that the evidence at issue—the Trombleys'

25   and Mr. Travis's text messages from 2019 through 2021—is ESI, such that its spoliation can

26   support sanctions under Rule 37.  *See Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020

27   WL 1496444, at *4 (C.D. Cal. Feb. 27, 2020) (text messages "constitute ESI for purposes of a Rule

28   37 analysis"); *Oppenheimer v. City of La Habra*, 2017 WL 1807596, at *10 (C.D. Cal. Feb. 17,

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1    2017) (same). "Rule 37(e) identifies three requirements to show that [ESI] was spoliated." *Dish*
2    *Network*, 2022 WL 11270394, at *2. A party seeking sanctions must establish: (1) the ESI at issue
3    "should have been preserved in the anticipation or conduct of litigation"; (2) that information "is
4    lost because a party failed to take reasonable steps to preserve it"; and (3) "it cannot be restored or
5    replaced through additional discovery." Fed. R. Civ. P. 37(e). Each is satisfied here.

6    ### A.    A Duty To Preserve Text Messages Arose By August 2020.

7        The Trombleys and Mr. Travis had a duty to preserve potentially relevant and discoverable
8    evidence, including their text messages, no later than August 2020.

9        ***Plaintiff reasonably anticipated litigation against Defendants by August 2020.*** "The duty
10   to preserve arises not only during litigation, but also extends to the period before litigation when a
11   party should reasonably know that evidence may be relevant to anticipated litigation." *Phan v.*
12   *Costco Wholesale Corp.*, 2020 WL 5074349, at *2 (N.D. Cal. Aug. 24, 2020); *see also Aramark*
13   *Mgmt.*, 2021 WL 864067, at *3. Discovery has confirmed that the Trombleys and Mr. Travis were
14   actively preparing for litigation against Defendants at least 15 months before filing this case.

15       As discussed above, Plaintiff has withheld text messages going back to August 2020 as
16   privileged work product that reflect that the Trombleys were "collecting information for the
17   purpose of anticipated litigation against Franklin" and exchanging text messages about their
18   planned lawsuit. *See* Ex. 8. Deposition testimony and produced documents confirm that the
19   Trombleys and Mr. Travis were actively planning litigation against Defendants at that time: in
20   September 2020, Mr. Travis began working with Plaintiff's counsel to explore claims against
21   Defendants and, by November, the trio, with the assistance of counsel, were meeting with Onsa's
22   non-voting shareholders about the planned litigation. *See* Ex. 2 at 11:22–12:8; Ex. 9 at 1; Ex. 11;
23   *see also supra* at 4–5. Indeed, in October 2020, Mr. Travis texted Onsa's CEO to inform him that
24   the Trombleys and Mr. Travis had been working with ███████████████████████████████

25   ███████████████████████████████████████████████████████████████████████████████

26   ██████████ *See* Exs. 35, 36. These facts make clear that the Trombleys and Mr. Travis reasonably
27   anticipated litigation against Defendants by at least August 2020, and by that time had a duty to
28   preserve any potentially relevant evidence. *See, e.g., Fast v. GoDaddy.com LLC*, 340 F.R.D. 326,

337 (D. Ariz. 2022) (plaintiff anticipated litigation and had a duty to preserve when she hired counsel of record and started to gather instant messages and documents for potential litigation); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *11 (C.D. Cal. July 12, 2016), report and recommendation adopted, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (party's "duty to preserve attached on December 13, 2013" where privilege log reflected emails withheld for attorney-client privilege and attorney work product between December 14 and 19); *Resendez v. Smith's Food & Drug Centers, Inc.*, 2015 WL 1186581, at *5–7 (D. Nev. Mar. 16, 2015) (party was on notice of potential litigation, and had duty to preserve evidence, by date of documents withheld as being prepared in "anticipation of litigation").[5]

***The text messages were relevant to Plaintiff's planned litigation.*** A party's duty to preserve reaches any evidence that "is relevant to a claim or defense . . . or that may lead to the discovery of relevant evidence." *Sanders*, 2019 WL 12831725, at *2. Just as there is no dispute that the Trombleys and Mr. Travis were planning litigation starting in August 2020, there is no question that their text messages were highly relevant to those claims and Defendants' likely defenses, and that the group had an obligation to safeguard such messages in their possession at that time.

The few text messages that Plaintiff produced for Ms. Trombley going back to June 2020 show that the group used text messages to discuss issues probative of Plaintiff's claims, including the ownership and purported value of the copyrights and alleged trade secrets at issue in this case, Mr. Trombley's purported contribution to the disputed source code, and Onsa's ABC. *See* Exs. 28–32; *supra* at 8–9. And text messages produced by Defendant Roger Bayston go back further and confirm that the Trombleys and Mr. Travis regularly exchanged text messages on issues relating to Onsa and its operations, which bear on Plaintiff's claims for breach of fiduciary duty, trade secret misappropriation, and copyright infringement. *See* Exs. 17–19, 37–39; *supra* at 5–6.

---

[5] *See also Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998, at *3 (C.D. Cal. Oct. 5, 2023), report and recommendation adopted, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) ("Evidence that a defendant actually anticipated litigation might include emails or meeting minutes discussing potential litigation, actions taken to retain a lawyer, or a company budget that allocates funds for potential litigation.") (collecting cases).

1    Should there be any doubt about the importance of text messages in this case,

2    Mr. Trombley—Onsa's founder and CTO—confirmed that text messages were his ***primary*** means

3    of communication with Onsa and Franklin personnel.    As he explained to one employee,

4    "WhatsApp . . . is how I communicate with everyone (besides you) including my India team."[6]

5    Ex. 4; *see also* Ex. 6 (Mr. Trombley being admonished for using WhatsApp to communicate about

6    Onsa confidential business).    He was such a prodigious texter that he insisted that employees

7    communicate with him via WhatsApp.    *See* Ex. 7 ("[WhatsApp] is the only way Austin

8    communicates with me.").    And Mr. Travis was a prolific texter in his own right, as shown by his

9    many text messages with Mr. Bayston about Onsa.    *See* Exs. 18, 38.

10    Because the Trombleys and Mr. Travis used text messages to discuss matters directly

11    relevant to Plaintiff's claims in this case, they had a duty to preserve such messages no later than

12    August 2020, when litigation against Defendants was reasonably anticipated.

13    **B.**    **The Trombleys And Mr. Travis Failed To Take Reasonable Steps To Preserve**

14    **The Text Messages.**

15    While the Trombleys and Mr. Travis relied on text messages for work at Onsa and to discuss

16    issues relevant to this case, they did not take reasonable steps to preserve those messages.    Indeed,

17    given that Plaintiff has not produced a single text message from Messrs. Trombley or Travis, and

18    has produced only 13 short text message threads from Ms. Trombley, it appears that the Trombleys

19    and Mr. Travis made no effort to preserve their text messages.

20    While the Trombleys and Mr. Travis worked to gather ***certain*** information they believed

21    was necessary for their anticipated litigation against Defendants, *see* Exs. 8–9, they did ***nothing*** to

22    preserve text messages about their work at Onsa likely to bear directly on their claims.    Had the

23    Trombleys and Mr. Travis taken reasonable steps—or any steps at all—to preserve the text

24    messages, Plaintiff's counsel certainly would have told Defendants by now.    Indeed, Defendants

25    have been asking for months what happened to the text messages.    *See* Snyder Decl. ¶¶ 2–20.    But

26    Plaintiff has offered no explanation; just the common refrain that it doesn't have the messages.

27
---
28    [6] Here, the "India team" refers to developers at a third-party company in India that Mr. Trombley and Onsa touted as experienced software engineers who developed code at issue in this case.

Rather than take steps to preserve their text messages, the Trombleys and Mr. Travis continued working for months with litigation counsel to build their case. Throughout, the Trombleys and Mr. Travis took no formal action to preserve their text messages, while they were collecting and preserving other material that they considered helpful. *See* Exs. 8–9. By the time Plaintiff's counsel issued informal preservation instructions around the time the case was filed, that was too little, too late. By that time, nearly all of the Trombleys' and Mr. Travis's text messages from the time period relevant to this case were irretrievably lost. *See supra* at 6–10. And it appears that the preservation notice made no difference to Mr. Trombley, as the earliest message counsel retrieved for him ***postdates*** the litigation hold. *See* Snyder Decl. ¶¶ 19–20.

These facts show that the Trombleys and Mr. Travis, who were actively planning litigation against Defendants no later than August 2020, failed to take steps to preserve their text messages after their duty to preserve arose. *See, e.g.*, *Jones v. Riot Hosp. Grp. LLC*, 2022 WL 3682031, at *5 (D. Ariz. Aug. 25, 2022), *aff'd*, 95 F.4th 730 (9th Cir. 2024) (where "some messages were deleted while other surrounding messages were not shows that [plaintiff] failed to take reasonable steps to comply with this duty [to preserve relevant ESI]"); *Laub*, 2020 WL 9066078, at * 4 (plaintiff failed to take reasonable steps to preserve ESI where he selectively preserved certain messages and failed to backup text messages or suspend auto-delete function); *Colonies Partners*, 2020 WL 1496444, at *8–9 (defendants failed to take reasonable steps to preserve ESI where they placed no litigation hold after duty arose and allowed files to be deleted).

### C.    <u>The Text Messages Cannot Be Restored Or Replaced.</u>

Before a court can impose sanctions under Rule 37(e), it must determine whether "the despoiled information can be restored or replaced through additional discovery." *Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017). Sanctions are appropriate here because the Trombleys' and Travis's text messages are irretrievably lost.

Defendants have conferred at length with Plaintiff to understand what efforts were taken to gather text messages for the relevant period. *See supra* at 6–10. Plaintiff has confirmed that text messages before December 2021, June 2020, and August 2021 have been deleted for Mr. Trombley, Ms. Trombley, and Mr. Travis, respectively. *See* Snyder Decl. ¶ 19. Plaintiff and a forensics

1    consultant searched and processed the Trombleys' backups, but were unable to restore the deleted

2    text messages.  And for Mr. Travis, no backup exists, so there is no way for Plaintiff to restore the

3    messages.  *See supra* at 9–10.  Where, as here, parties and their technical consultants have

4    performed a thorough search of electronic devices and backups for deleted ESI without success,

5    courts have concluded that the evidence cannot reasonably be restored.  *See, e.g.*, *Estate of Bosco*

6    *v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 924 (N.D. Cal. 2022) (ESI was lost where consultant

7    could not recover deleted video); *Colonies Partners*, 2020 WL 1496444, at *6 (text messages were

8    lost where deleted messages could not be retrieved from third parties).[7]

9           The text messages likewise cannot be replaced through additional discovery.  As discussed

10   above, the deleted text messages were exchanged among the Trombleys and Mr. Travis, as well as

11   with others at Onsa, during the relevant period.  While Defendants have access to some text

12   messages involving the Trombleys and Mr. Travis from Mr. Bayston's productions, they lack ***any***

13   record of communications among that group, or with non-Franklin individuals, such as Onsa

14   employees, shareholders, advisors, and prospective investors or customers.  In short, the deleted

15   messages cannot reasonably be replaced through other means of discovery.  *See, e.g.*, *Youngevity*

16   *Int'l v. Smith*, 2020 WL 7048687, at *4 (S.D. Cal. July 28, 2020) (rejecting argument of no

17   prejudice based on other available ESI where "some of the [defendants] have spoliated messages

18   over the same time periods, thus it is not possible to obtain text messages that may have been

19   exchanged between them during these periods"); *cf. Dish Network*, 2022 WL 11270394, at *4

20   ("While some of the missing information may be restored or replaced through witness testimony

21   or emails from other individuals and other email accounts, those other sources are not a fair

22   substitute" for lost emails) (finding spoliation).

23

24

25

26   ---
     [7] *See also Morehead*, 2023 WL 8143973, at *9 (video was "lost" under Rule 37(e) where facts
     showed that "once the system deletes video footage, the footage cannot be restored"); *RG Abrams*
27   *Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 506 (C.D. Cal. 2022) (text messages irretrievably
     lost where parties traded in cell phones and "were told by the service carriers that their text message
28   are not obtainable or available").

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1

### D.   The Tromberleys' And Travis's Spoliation Is Imputable To Plaintiff.

2

As discussed, the Tromberleys and Mr. Travis had a duty to preserve the text messages by

3

August 2020, but took no steps to preserve the messages until this litigation was filed, resulting in

4

the messages being irretrievably lost.  The Court should therefore find that the Tromberleys and

5

Mr. Travis spoliated their text messages under Rule 37.  *See* Fed. R. Civ. P. 37(e).

6

Although the Tromberleys and Mr. Travis are not individual parties in this litigation, their

7

spoliation should nonetheless be imputed to Plaintiff.  "[S]poliation of evidence may be imputed to

8

a party who did not participate in the spoliation only where the destroying party is the 'agent' of

9

that party."  *Gemsa Enters., LLC v. Specialty Foods of Ala., Inc.*, 2015 WL 12746220, at \*9 (C.D.

10

Cal. Feb. 10, 2015); *see also Microvention*, 2023 WL 7476998, at \*25 ("The current trend among

11

district courts appears to be to impute liability for an agent's spoliation to the principal 'based on

12

traditional notions of agency law, in which a defendant principal exercises control and authority

13

over its third-party agent who possesses the spoliated evidence.") (collecting cases).

14

Here, Plaintiff admits that the Tromberleys and Mr. Travis were acting as Plaintiff's

15

representatives and agents from at least August 2020 in connection with preparing information and

16

evidence for this anticipated litigation.  *See* Ex. 8 at 1; Ex. 14 at 1.  Because the Tromberleys and

17

Mr. Travis were acting as Plaintiff's agents when their duty to preserve arose and they spoliated

18

the text messages, Plaintiff should likewise be found to have spoliated the text messages.  *See, e.g.*,

19

*Microvention*, 2023 WL 74769998, at \*25–26 (agent's spoliation imputed to principal); *Victor*

20

*Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 515 n.23 (D. Md. 2010) (same and collecting

21

cases); *In re Nat'l Security Agency Telecomm. Records Litig.*, 2007 WL 3306579, at \*1 (N.D. Cal.

22

Nov. 6, 2007) (party's duty to preserve includes "employees, agents, contractors").

23

## V.   DEFENDANTS ARE ENTITLED TO AN ADVERSE INFERENCE INSTRUCTION UNDER RULE 37(E)

24

25

Where a party carries its burden to establish that ESI has been spoliated, the court may

26

impose sanctions under Rule 37(e).  Rule 37(e) provides two levels of sanctions.  "Under

27

Rule 37(e)(1), upon finding that the loss of ESI that the offending party had a duty to preserve has

28

prejudiced the moving party, a court may order measures no greater than necessary to cure the

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

prejudice." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 975 (N.D. Cal. 2022).  If the court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," sanctions may be imposed under Rule 37(e)(2), including "instruct[ing] the jury to presume that the lost information was unfavorable to the offending party, dismiss[ing] the action, or enter[ing] default judgment."  *Id.*  Sanctions under either provision are appropriate here because Plaintiff willfully spoliated the text messages, and the Court should provide an adverse jury instruction that Plaintiff had a duty to preserve relevant text messages, failed to preserve the text messages, and directing the jury to infer that the lost evidence would have been favorable to Defendants.

### A.    Plaintiff's Spoliation Has Prejudiced Defendants.

For purposes of Rule 37(e)(1), "[p]rejudice exists where the spoiling party's actions impaired the moving party's ability to go to trial or threatened to interfere with the rightful decision of the case." *hiQ Labs*, 639 F. Supp. 3d at 979.  "The Court's evaluation of whether the loss of information was prejudicial depends in part on the importance of the information to the case." *Estate of Bosco*, 640 F. Supp. 3d at 927.  "The Ninth Circuit has found prejudice when a party's [spoliation] forced the non-spoliating party to rely on incomplete and spotty evidence at trial." *Yela Fiduciary Servs., LLC v. Benton Cnty.*, 2022 WL 17666400, at *7 (D. Or. Dec. 14, 2022)  Where, as here, a party seeking sanctions under Rule 37(e) carries its burden of proving spoliation, "the burden shifts to the spoliating party to prove the lost information is not prejudicial." *Youngevity Int'l*, 2020 WL 7048687, at *3 (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).  Sanctions under Rule 37(e)(1) are appropriate because Plaintiff's deletion of the Trombleys' and Mr. Travis's text messages has deprived Defendants of critical evidence to support their defenses.

"Here, as with spoliation in general, . . . neither party can say with any certainty what the deleted communications would have shown." *Matthew Enter.*, 2016 WL 2957133, at *4.  But based on the information that Defendants have been able to gather in discovery, there can be no doubt that some of the deleted text messages would have been directly relevant to the issues now being litigated.  As discussed above, the Trombleys and Mr. Travis used text messages to communicate

about business matters, including the disputed copyrights and trade secrets, Onsa and its operations, and the ABC process underlying Plaintiff's breach of fiduciary duty claim. *See supra* at 5–9.  As the handful of text messages produced by Ms. Trombley demonstrate, Mr. Trombley regularly used text messages to discuss business matters, including development of the code underlying a number of disputes in this case. *See, e.g.*, Exs. 28–32.  This evidence shows that the deleted text messages likely contained relevant information and that Defendants are therefore prejudiced by their loss. *See, e.g.*, *R.G. Abrams*, 342 F.R.D. at 507–08 (prejudice from lost text messages where plaintiffs were "deprived of the opportunity to evaluate and/or present relevant text messages to the jury"); *Aramark Mgmt.*, 2021 WL 864067, at *14–15 (sufficient showing of prejudice from lost text messages where plaintiffs pointed to deposition testimony establishing that defendants texted about business matters); *Glaukos Corp. v. Ivantis*, 2020 WL 10501850, at *5 (C.D. Cal. June 17, 2020) (prejudice here emails lost were from "key custodians" and party would be deprived of probative evidence "to fully respond to the secondary evidence"); *Gaina v. Northridge Hosp. Med. Ctr.*, 2019 WL 1751825, at *4 (C.D. Cal. Feb. 25, 2019) (defendant prejudiced by lost text messages where it "had to conduct depositions and other discovery without this potentially relevant evidence and will not be able to present or rely on the contents of these text messages" at trial).

Defendants expect that Plaintiff may argue that Defendants are not prejudiced because some of the text messages were not likely relevant to the issues in this litigation.  But Plaintiff, as the spoliating party, cannot assert a "presumption of irrelevance" as to the very material that it deleted. *See Leon*, 464 F.3d at 959 (offending party cannot assert a "presumption of irrelevance" if relevance of destroyed material "cannot be clearly ascertained").  In any event, as discussed above, other messages produced in this matter and testimony show that Mr. Trombley was communicating by text message about relevant topics after his departure and after the duty to preserve arose in August 2020. *See supra* at 5–9.  Those are now gone because, for 15 months, the Trombleys and Mr. Travis were selectively preserving evidence for this litigation while allowing their messages to be deleted.

Because "the spoliation of the text messages has 'threatened to distort the resolution of the case," sanctions under Rule 37(e)(1) are appropriate. *RG Abrams*, 342 F.R.D. at 508 (quoting *Leon*, 464 F.3d at 960); *see also Youngevity Int'l*, 2020 WL 7048687, at *4 (prejudice where "the loss of

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1    the [likely relevant] text messages threatens to interfere with the rightful decision in this case").

2        **B.        Plaintiff Acted With The Intent To Deprive Defendants Of The Text Messages.**

3        Sanctions under Rule 37(e)(2) are also appropriate because the circumstances surrounding

4    the spoliation of text messages here indicates that Plaintiff "acted with the intent to deprive

5    [Defendants] of the [messages'] use in the litigation." Fed. R. Civ. P. 37(e)(2). "A finding of intent

6    . . . eliminates the requirement that the opposing party be prejudiced by the spoliation." *Rapp v.*

7    *NaphCare, Inc.*, 2023 WL 3741475, at *3 (W.D. Wash. May 31, 2023). "Because courts are unable

8    to ascertain precisely what was in a person's head at the time spoliation occurred, they must look

9    to circumstantial evidence to determine intent." *Morehead*, 2023 WL 8143973, at *11. Among

10   the facts considered by courts are "***the timing of the destruction***, the method of deletion . . . ,

11   ***selective preservation***, [and] the reason some evidence was preserved." *Laub*, 2020 WL 9066078,

12   at *6. Additionally, "[i]ntent may be inferred if a party is on notice that documents were potentially

13   relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep

14   incriminating facts out of evidence.'" *Colonies Partners*, 2020 WL 1496444, at *9.

15       The circumstances surrounding spoliation here strongly support the inference that Plaintiff

16   intended to deprive Defendants of the use of the Trombleys' and Mr. Travis's text messages in this

17   litigation. To start, there was a wholesale failure to preserve any relevant evidence after a duty

18   arose in August 2020. During the months that they were meeting with each other, counsel, and

19   other Onsa shareholders to plan this litigation, the Trombleys and Mr. Travis were preserving ***some***

20   information and documents for this anticipated lawsuit, just not their text messages. *See supra* at

21   5–9. This selective preservation of information provides strong evidence of an intent to deprive,

22   particularly given Plaintiff's existing plans for litigation. *See, e.g.*, *Armstrong v. Holmes*, 2024 WL

23   1345214, at *4 (D. Nev. Mar. 29, 2024) (party's "selective preservation of messages" after duty to

24   preserve arose supported finding of intent to deprive); *Jones*, 2022 WL 3682031, at *6 (same).

25       And the fact that at the time the Trombleys and Mr. Travis were working with counsel—

26   counsel of record ***in this very case***—to develop strategy for the anticipated litigation further

27   supports an inference of intent. "The caselaw [ ] is quite clear that counsel's involvement in the

28   document preservation process is relevant to a finding of intent to deprive." *Rapp*, 2023 WL

3741475, at *3.  The Tromblesy and Mr. Travis were working with the same attorneys now representing Plaintiff, a shell entity the trio formed to pursue this litigation, since September 2020, leaving no doubt that the Tromblesy and Mr. Travis were aware that litigation was on the horizon. *See supra* at 4–5.  Nevertheless, they failed to take any steps to secure the text messages, choosing instead to focus on materials that they (or their counsel) thought would be helpful to Plaintiff's case against Defendants.  *See supra* at 4–5.  And even after a much belated preservation notice was orally communicated more than a year after the Tromblesy and Mr. Travis started working with counsel on their claims, it appears Mr. Trombley still took no action, leading to text messages **post-dating the filing of this lawsuit** being deleted.  *See* Snyder Decl. ¶¶ 19–20.

This "relevant sequence of events" shows that Plaintiff acted with the requisite intent. *Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 10501850, at *4, 6 (C.D. Cal. June 17, 2020) (intent to deprive where party had retained litigation counsel, asserted work product protection over materials related to anticipated litigation, and failed to preserve information); *see also Su v. NAB LLC*, 2023 WL 9494449, at *5 (D. Nev. Dec. 4, 2023) (intent to deprive where defendants allowed video to be auto-deleted despite awareness of anticipated litigation); *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at *11 (N.D. Cal. Dec. 15, 2021) (intent to deprive where party had been on notice of potential claims "for almost a year" and failed to preserve relevant records); *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774–75 (E.D. Mich. 2019) (intent to deprive where defendants "knew or should have known to save the . . . video footage and for whatever reason(s) did not do so").

## C.    An Adverse Instruction Is Necessary To Remedy The Harm To Defendants.

Having shown that Plaintiff spoliated the Tromblesy' and Mr. Travis's text messages despite its duty to preserve and that sanctions under Rule 37(e)(1) or (2) are appropriate, the only question for the Court is the appropriate remedy for Plaintiff's spoliation.  "When considering what sanction is proper upon a finding of spoliation, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Soule v. P.F. Chang's China Bistro, Inc.*, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020).  "A trial court's discretion regarding the form of a spoliation sanction is broad," *Singleton v. Kernan*, 2018

1    WL 5761688, at *6 (S.D. Cal. Nov. 1, 2018), and where the facts demonstrate spoliation was

2    committed with an intent to deprive, Rule 37(e)(2) permits a court to impose the strongest sanctions,

3    including dismissal. *See* Fed. R. Civ. P. 37(e)(2). But "even upon a finding of intent, a court need

4    not apply any sanction under Rule 37(e)(2)—rather, 'the remedy should fit the wrong.'" *Estate of*

5    *Bosco*, 640 F. Supp. 3d at 930. Defendants respectfully submit that an adverse inference instruction

6    to be provided at trial is proportional and necessary to address both the willfulness of Plaintiff's

7    destruction of the text messages and the resulting prejudice to Defendants.

8           "The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of

9    evidence." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1054 (S.D.

10   Cal. 2015). "Concerning the kinds of adverse-inference instructions available under Rule 37, there

11   are three types of adverse-inference instructions (listed from harshest to most lenient): (1) an

12   instruction 'that certain facts are deemed admitted and must be accepted as true'; (2) 'a mandatory

13   presumption'; and (3) an instruction that 'permits (but does not require) a jury to presume that the

14   lost evidence is both relevant and favorable to the innocent party.'" *Dish Network*, 2022 WL

15   11270394, at *3. Courts routinely find adverse inference instructions under Rule 37(e)(1) or (2) to

16   be appropriate sanctions where, as here, a party's spoliation has denied another access to evidence

17   likely to be directly relevant to the claims and issues being tried in a case. *See, e.g.*, *RG Abrams*,

18   342 F.R.D. at 520 (adverse inference instruction appropriate sanction for destruction of relevant

19   text messages by key custodians); *Dish Network*, 2022 WL 11270397, at *4 (same); *Fourth*

20   *Dimension*, 2021 WL 5919821, at *11 (same where deleted ESI was "highly relevant" to claims at

21   issue in litigation); *Colonies Partners*, 2020 WL 1496444, at *12 (same where deleted text

22   messages and emails were relevant and would have "provide[d] insight into [party's] strategy,

23   motivations, and actions" relevant to lawsuit).

24          These decisions make sense. As courts have observed, spoliation "obstruct[s] [a party] from

25   proving its case," while leaving the possibility that the spoliator will benefit from the destruction

26   of evidence. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at *23 (E.D. Cal. Oct.

27   31, 2022) (adverse inference instruction appropriate because "Plaintiff has been obstructed from

28   proving its case" by the spoliation). Because the party prejudiced by spoliation cannot rely on the

1    lost evidence to support its case, and is without information to effectively counter evidence or

2    testimony from the spoliator, "curative instructions" are appropriate and necessary. *Id.*; *see also*

3    *Colonies Partners*, 2020 WL 1496444, at *12 (adverse inference instruction appropriate and

4    necessary "[t]o counter the prejudicial effects of Defendants' spoliation" where deleted text

5    messages and emails were relevant, would have "provide[d] insight into [spoliator's] strategy,

6    motivations, and actions," and without such evidence plaintiffs could not respond to defendant's

7    arguments and evidence).

8        Here, Defendants respectfully request that the Court exercise its discretion to issue a

9    mandatory adverse instruction to be provided to the jury that would instruct the jury: (i) that

10   Plaintiff, through its agents Austin Trombley, Alina Trombley, and Aaron Travis, had a duty to

11   preserve relevant text messages no later than August 2020; (ii) that Plaintiff failed to do so and the

12   Trombleys' and Travis' text messages from the relevant period were deleted; and (iii) that the jury

13   should infer that the lost text messages would have been favorable to Defendants.

14       Such an instruction is expressly permitted by Rule 37(e)(2), *see* Fed. R. Civ. P. 37(e)(2)(B),

15   and is appropriate and proportional to the prejudice to Defendants from Plaintiffs' willful

16   spoliation. In *Glaukos Corp.*, for example, the defendant failed to preserve emails relevant to the

17   claims at issue in the litigation. 2020 WL 10501850, at *4. When considering the relevant

18   "sequence of evidence" surrounding the destruction—specifically, that the defendant had begun

19   working with its litigation counsel months before the case was filed, asserted work product

20   protection over materials during the time period that the emails were spoliated, and failed to

21   suspend its automatic deletion policy—the court concluded that the defendants reasonably

22   anticipated litigation and the failure to preserve the emails was done with the intent to deprive the

23   plaintiff of relevant evidence. *See id.* at *4–6. Given these circumstances, the court concluded that

24   a mandatory adverse inference was necessary because "the emails would have been probative to

25   the claims at issue" and the plaintiff "is forced to go to trial lacking this evidence." *Id.* at *6. The

26   same result should follow here given Plaintiff's intent to deprive Defendants of the Trombleys' and

27   Mr. Travis's text messages and the resulting prejudice to Defendants from not being able to

28   examine or test Plaintiff's theories and claims with highly relevant, contemporaneous

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

communications from Plaintiff's agents. *See, e.g.*, *Microvention*, 2023 WL 7476998, at *16, *19, *30 (granting mandatory adverse inference instruction under Rule 37(e)(2) that "the jury will be instructed to presume that the [deleted] ESI . . . was unfavorable" to defendants). This is particularly true given that there largely exists no other evidence of text message communications between the Tromblys and Mr. Travis or between them and third parties. *Cf. Estate of Bosco*, 640 F. Supp. 3d at 930–31 (concluding that mandatory instruction not necessary because "there is other evidence from the night of [decedent's] death" that plaintiff can rely on to establish its claims).

In the alternative, if the Court concludes that there are fact issues regarding Plaintiff's intent to deprive or that no such intent exists, Defendants respectfully request that the Court issue a permissive adverse instruction to be provided to the jury that would instruct the jury: (i) that Plaintiff, through its agents Austin Trombley, Alina Trombley, and Aaron Travis, had a duty to preserve relevant text messages no later than August 2020; (ii) that Plaintiff failed to do so and the Tromblys' and Travis' text messages from the relevant period were deleted; and (iii) that the jury may infer that the lost text messages would have been favorable to Defendants.[8]

While courts may, in the absence of intent, conclude that "a permissive rather than mandatory instruction is sufficient given the strong favor public policy places on determining a case on the merits," *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *10 n.103 (N.D. Cal. May 13, 2015), they likewise find that a permissive adverse inference still remains necessary and appropriate to "account[s] for the loss of the [ESI]" and the resulting prejudice. *Singleton v. Kernan*, 2018 WL 5761688, at *6 (S.D. Cal. Nov. 1, 2018) (granting permissive adverse inference instruction where deleted ESI was relevant to claims and plaintiff was prejudiced by its destruction); *see also, e.g.*, *Morehead*, 2023 WL 8143973, at *13 (granting permissive adverse inference instruction under Rule 37(e)(1)); *Dish Network*, 2022 WL 11270394, at *4 (same); *Phan*,

---

[8] If the Court concludes that fact issues exist regarding Plaintiff's intent to deprive under Rule 37(e)(2), Defendants respectfully request that the issue of intent be decided by the jury. *See, e.g.*, *Aramark*, 2021 WL 864067, at *16 ("Reasonable minds could disagree on whether this evidence is sufficient to show that the Borgquists' failure to turn off the automatic delete function was done with the intent to deprive Plaintiffs of the text messages. In this situation, it is appropriate for the jury to decide this issue.") (citing Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment).

1    2020 WL 5074349, at *4 (granting permissive adverse inference instruction where it "balance[d]

2    the importance of the video evidence with the degree of defendant's fault and extent of prejudice");

3    *Colonies Partners*, 2020 WL 1496444, at *12 (same).

4    **VI.    CONCLUSION**

5        For the reasons stated, Defendants respectfully request that the Court grant the Motion and

6    issue an order imposing sanctions in the form of an adverse jury instruction for Plaintiff's spoliation

7    of evidence.[9]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25    [9] After receiving the Court's ruling as to the appropriate sanction for Plaintiff's spoliation, Defendants anticipate meeting and conferring with Plaintiff and submitting proposed language for

26    an adverse jury instruction consistent with the Court's order as part of the parties' pre-trial filings.

27    *See Microvention*, 2023 WL 7476998, at *30 n.23 (recommending mandatory adverse inference instructions for spoliation, noting that the Court "anticipates that the parties will submit specific

28    proposed language for the jury instructions . . . pursuant to the District Judge's standard pre-trial procedures.").

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)

1    Dated:  June 7, 2024                By:     */s/ Darin Snyder*

2                                      Darin Snyder

3                        DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
LUANN L. SIMMONS (S.B. #203526)

4                        lsimmons@omm.com
O'MELVENY & MYERS LLP

5                        Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823

6                        Telephone:   +1 415 984 8700

7                        HANA OH (S.B. #300846)
hoh@omm.com

8                        STACY YAE (S.B. #315663)
syae@omm.com

9                        O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor

10                     Newport Beach, California 92660-6419
Telephone:   +1 949 823 6900

11

12                     BRITTANY ROGERS (S.B. #274432)
brogers@omm.com

13                     O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor

14                     Los Angeles, CA 90071-2899
Telephone:   +1 213 430 6000

15                     *Attorneys for Defendants*

16                     *FRANKLIN RESOURCES, INC.,*
*FT FINTECH HOLDINGS, LLC,*

17                     *FRANKLIN TEMPLETON COMPANIES,*
*LLC, and JENNIFER JOHNSON*

18                     By:     */s/ Lyn Agre*

19                                Lyn Agre

20                     GLENN AGRE BERGMAN & FUENTES
LLP

21                     Lyn R. Agre (Cal. Bar No. 178218)
Edward E. Shapiro (Cal. Bar No. 326182)

22                     44 Montgomery St., Suite 2410
San Francisco, California 94104

23                     Telephone: (332) 233-5784
lagre@glennagre.com

24                     eshapiro@glennagre.com

25                     Jed I. Bergman (admitted pro hac vice)
1185 Avenue of the Americas, 22nd Floor

26                     New York, New York 10036
Telephone: (212) 970-1600

27                     jbergman@glennagre.com

28                     *Attorneys for Defendant ROGER BAYSTON*

DEFENDANTS' MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37(E)
3:21-CV-08787-AMO (TSH)