UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOCKCHAIN INNOVATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>Defendants. | Case No. 21-cv-08787-AMO (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 220 |

Defendants have filed a motion for sanctions. ECF No. 220. They say that Plaintiff Blockchain Innovation, LLC ("Blockchain") spoliated evidence. Specifically, they say that Austin Trombley, Aaron Travis and Alina Trombley failed to take reasonable steps to preserve text messages, such as in iMessage and WhatsApp, when they were anticipating litigation against Defendants, and that this failure resulted in the loss of nearly all text messages from the time period relevant to this litigation. They say that period began in August 2020. They say the failure to preserve caused them prejudice and was intentional, and they seek an adverse inference instruction.

But this motion has big problems. As an initial matter, there is no evidence that Alina Trombley failed to preserve her text messages during the time period she was obligated to do so (which the parties agree began in August 2020 for all three individuals). Blockchain has produced text messages from her going back to June 2020. ECF No. 220-1 ¶ 15; *see also id.* ¶ 19 ("Plaintiff confirmed that the earliest text messages it has in its possession date to . . . June 2020 for Ms. Trombley"). In addition, Blockchain has on its privilege log text messages from Ms. Trombley going back to August 2020. ECF No. 220-4. As clarified at the hearing, she was the custodian for those text messages on the privilege log. While her declaration is not perfect, she confirms that

she generally understood she needed to preserve relevant text messages and she believes she has preserved her text messages since June 2020. ECF No. 232-55 ¶¶ 25, 26.[1] There is no evidence that she failed to do so.

It's a different story for Mr. Travis and Mr. Trombley. The parties agree that Mr. Travis's text messages were preserved starting in August 2021, and there are none from before that time. ECF No. 220-1 ¶ 19; ECF No. 232-54 ¶ 37. Similarly, Mr. Trombley's text messages were preserved starting in December 2021, and there are none from before that time. ECF No. 220-1 ¶ 19; ECF No. 232-61 ¶ 37.

Rule 37(e) says that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court" may take certain steps. "Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018); *see also CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (The "Advisory Committee notes that '[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.' Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Thus, relief would not be available under the amended rule where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian.").

Here, text messages between Mr. Travis and Mr. Trombley between August 2020 and July 2021 are "lost" within the meaning of Rule 37(e) and cannot be restored or replaced because they both failed to preserve their text messages during that time. However, text messages between them starting in August 2021 were not lost because Mr. Travis has them. Further, there is no basis to conclude that relevant text messages since August 2020 that included someone else on them were lost. It's true that Mr. Travis and Mr. Trombley don't have them (until August 2021 and

---

[1] In reviewing these paragraphs, please remember that "TV USA was later renamed Onsa, Inc." ECF No. 232-55 ¶ 5.

1  December 2021, respectively). But this is not a situation where two custodians failed to preserve
2  text messages, and the litigant argues without any support that maybe somebody else has them.
3  To the contrary, Mr. Trombley states in his declaration that he likely included Ms. Trombley in
4  any relevant text messages from August 2020 to December 2021. ECF No. 232-61 ¶¶ 25, 26. She
5  agrees that was true. ECF No. 232-55 ¶¶ 26, 27. As noted above, there is no reason to believe she
6  failed to preserve relevant text messages. Mr. Travis identifies Lou Mohn, Kevin Farrelly, and
7  Ms. Trombley as being included in his relevant text messages after August 2020. ECF No. 232-54
8  ¶¶ 20-23, 26. Similarly, Atul Patil has submitted a declaration stating that he has individual and
9  group WhatsApp threads on his phone that include messages with Mr. Trombley, Ms. Trombley
10 and Mr. Travis going back to even before August 2020. ECF No. 232-60 ¶ 10.

11 As for communications with Onsa shareholders, advisors, and prospective investors or
12 customers, Defendants provide no evidence, such as deposition testimony, to believe that Mr.
13 Trombley and Mr. Travis communicated with them by text message in August 2020 or later,[2] and
14 if so, what steps Defendants took to subpoena such people to obtain their text messages with Mr.
15 Trombley or Mr. Travis.[3] Remember that the Trombleys and Mr. Travis had all left Onsa by June
16 2020 (ECF Nos. 221-4, 221-5, 221-6), so the evidence that Mr. Trombley used WhatsApp all the
17 time for his work at Onsa has an expiration date on it. *See* ECF No. 232-61 ¶ 24 (Austin
18 Trombley Declaration: In July 2020, "because I was incredibly frustrated and stressed with the
19 negotiations and situation with FT and Onsa, I deleted or blocked the WhatsApp contacts or
20 profiles of everyone associated with FT and possibly a few former employees of TV USA [i.e.,
21 Onsa]. At the time, I no longer wanted to have communications with anyone associated with these
22 companies. I did not delete profiles of my wife, Alina, or my good friend, Atul.").[4]

---

[2] Defendants assert in their reply brief that "the Trombleys and Mr. Travis confirm that they texted with these groups both before their duty to preserve arose and after." ECF No. 244 at 7. However, the cited pieces of evidence do not show that. Defendants cite evidence that the Trombleys and Mr. Travis used email and Zoom to communicate with other Onsa shareholders. ECF No. 221-9.
[3] Defendants cite their Exhibits 35 and 36 (ECF Nos. 221-22 & 221-23) as examples of relevant text messages to an Onsa employee by Mr. Travis that he failed to preserve. And he did fail to preserve them. But these were text messages that Mr. Travis had with Mr. Mohn, who Mr. Travis specifically identified as another custodial source of his missing text messages.
[4] Defendants say that "Mr. Bayston also produced WhatsApp messages showing that the

1    Accordingly, the only text messages that have been shown to be irretrievably gone are
2    those between Mr. Trombley and Mr. Travis before August 2021. And here we run into a huge
3    imputation problem. Recall that Rule 37(e) says that "[i]f electronically stored information that
4    should have been preserved in the anticipation or conduct of litigation is lost because *a party*
5    failed to take reasonable steps to preserve it, and it cannot be restored or replaced through
6    additional discovery, the court" may take several steps. Fed. R. Civ. Proc. 37(e) (emphasis
7    added). The "party" here is Blockchain, the Plaintiff in this action, and it did not exist until July 7,
8    2021. ECF No. 220-7 (Delaware Secretary of State Certificate of Formation).

9    A company can be responsible for actions or inactions that precede its existence. That
10   happens all the time, of course, when one company is a successor in interest to another company.
11   As you know from the Third Amended Complaint, Blockchain is suing as a successor in interest to
12   Onsa. ECF No. 246 ¶¶ 12, 50; *see also* ECF No. 232-54 ¶ 31 (Blockchain became the assignee of
13   Onsa's assets and claims pursuant to an August 2021 asset purchase agreement). Therefore, if
14   Onsa failed to preserve relevant evidence that it was required to preserve, that could be imputed to
15   Blockchain. But Defendants argue that the duty to preserve arose by August 2020, ECF No. 221-3
16   at 12, while also acknowledging that the Trombleys and Mr. Travis had left Onsa by June 2020.
17   *Id*. at 4; *see also* ECF Nos. 221-4, 221-5, 221-6.[5] Onsa had no obligation or ability to preserve
18   their text messages in the time period beginning August 2020, and Defendants do not even breathe
19   the suggestion that Onsa is somehow to blame for the failure to preserve.

20   To be sure, if Blockchain were suing as a successor in interest to Mr. Trombley and/or Mr.

---

Trombleys and Mr. Travis used that application to regularly discuss Onsa business from at least August 2019 to December 2021" (ECF No. 221-3 at 6), citing exhibits that show communications no later than February 2020.

[5] At the hearing Defendants sought to clarify that Mr. Trombley was an FT employee, not an Onsa employee. While it is true that Mr. Trombley was an FT employee, *see* ECF No. 232-61 ¶ 15 (Austin Trombley Declaration: "Kevin and I became FT employees in March 2018"), he worked at Onsa during his employment with FT. *See id*. ¶¶ 10 ("After the 2019 [stock purchase agreement] was completed, I continued working at TV USA. TV USA was later renamed Onsa, Inc."), 21 ("In April 2020, I informed TV USA of my intention to step away from the company."), 22 ("I specifically recall Alina reminding me multiple times around the time of my departure from Onsa that I was required to delete Onsa-related materials from my personal devices . . ."), 23 ("There were several points of negotiation in connection with my departure from FT and Onsa . . ."). In the briefing, Defendants say that Mr. Trombley was Onsa's Chief Technology Officer, ECF No. 221-3 at 3, and the company's "founder." *Id*. at 14.

Travis, then their failure to preserve could be imputed to it. But as you will recall from the Third Amended Complaint, Blockchain isn't doing that. ECF No. 246 n.17 ("Plaintiff is also the assignee of the majority of Onsa's shareholders' causes of action against Defendants. However, for sake of clarity, the individual shareholders' direct causes of action are not asserted in this Complaint. Plaintiff is *only asserting Onsa's causes of action* in this Complaint.") (emphasis added). Please note that a perfectly good reason not to assert a cause of action is that it's been tainted by spoliation. There is nothing bad or sneaky about declining to assert claims that are tainted by spoliation and then arguing that the spoliation isn't relevant. By giving up the claim, you've paid the price for the spoliation, so fair is fair. The Court does not know what claims, if any, Mr. Trombley or Mr. Travis might have against Defendants, whether Blockchain now owns those claims, and if so, why it chose not to assert them. Nor will the Court speculate. But since Blockchain is not suing on claims that were assigned to it by Mr. Trombley or Mr. Travis, and since Blockchain did not exist prior to July 7, 2021, and had no control over anyone or any evidence prior to that date, we need some sort of theory about how it can be on the hook for Mr. Trombley's and Mr. Travis's failure to preserve.

Let's go ahead and assume that once Blockchain was formed, it had an immediate obligation to preserve Mr. Travis's text messages. Mr. Travis was Blockchain's CEO from the start. ECF No. 232-54 ¶ 39 (Travis Declaration: "As discussed above, Blockchain was formed in July 2021. I have been CEO since its inception."). Defendants have made a good showing that Blockchain was formed for the purpose of buying Onsa's claims and suing Defendants, that this had been the Trombleys' and Mr. Travis's plan from the beginning, and that all three individuals communicated by text message. Accordingly, from the day Blockchain was formed, it was required to preserve Mr. Travis's text messages.

For Mr. Trombley, let's also go ahead and assume that Blockchain had an obligation to preserve his text messages from the day it was created. The Trombleys are indirect shareholders of Blockchain through a trust in which they have an interest. ECF Nos. 221-4 & 221-5. Defendants are right that "[t]he current trend among district courts appears to be to impute liability for an agent's spoliation to the principal based on traditional notions of agency law, in which a

5

defendant principal exercises control and authority over its third-party agent who possess the spoliated evidence." *Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998, *25 (C.D. Cal. Oct. 5, 2023). Mr. Trombley's status as an indirect shareholder by itself does not give rise to imputed liability for spoliation to Blockchain. Defendants have not shown that Blockchain exercises control or authority over its shareholders. They (collectively) have control and authority over it, not the other way around. However, Mr. Trombley testified as a Rule 30(b)(6) witness for Blockchain, *see* ECF No. 221-4, and Blockchain has designated him as an expert witness in this case. ECF No. 244-6. While Mr. Trombley may not be an employee of Blockchain's, the company's use of him as a corporate designee and expert witness suggests some degree of control and authority over him.

But there is a significant problem with attributing to Blockchain Mr. Travis's and Mr. Trombley's failures to preserve that occurred before the company existed and after they left Onsa. Yes, it is a little awkward that when called upon to explain Blockchain's claim of work product protection over communications between Blockchain's counsel and the Trombleys and Mr. Travis, Blockchain said they "were acting as Plaintiff's representatives/agents during the period covered by both logs (i.e., September 10, 2020 through August 28, 2021)," ECF No. 220-8, which includes the time before Blockchain existed. The Court expresses no view on the work product claim. Still, notwithstanding the claim of work product protection, it is difficult to understand how Blockchain had preservation obligations before it existed and that do not arise out of its acquisition of Onsa's claims that it is now asserting.

In their moving papers, Defendants argued that Mr. Trombley and Mr. Travis were Blockchain's agents since August 2020, ECF No. 221-3 at 17, an argument that foundered on Defendants' own recognition that an agent is someone over whom the principal has authority and control, and it doesn't seem that Blockchain had any authority or control over anyone when it didn't exist.

In their reply, Defendants shift ground and more generally argue that Mr. Trombley and Mr. Travis are sufficiently intertwined with Blockchain that their conduct before the company existed can be attributed to it, or that perhaps they should be sanctioned instead. Defendants cite

*Dykes v. BNSF Railway Company*, 2019 WL 1128521 (W.D. Wash. March 12, 2019), in which the court used its inherent power to sanction non-party CNR for the failure to preserve a broken rail and issued an adverse inference instruction against it. *Id*. at *5-7. Here, however, Defendants' motion seeks "an order imposing sanctions, including an adverse jury instruction, against Plaintiff Blockchain Innovation, LLC ('Plaintiff') for its spoliation of evidence." ECF No. 221-3 at page i. The motion provided no notice that it was seeking sanctions against anyone other than Blockchain. Thus, even if it is possible for the Court to sanction a non-party in this situation, the motion did not request that relief.

Defendants cite *Laub v. Horbaczewski*, 2020 WL 7978227, *18-19 (C.D. Cal. Nov. 17, 2020), for the proposition that a non-party's spoliation of evidence may be imputed to a party that did not engage in spoliation, but in that case the non-party was an employee of one of the defendants. *See id*. at *14 (referring to "another DRL employee, Trevor Smith"). As the court explained, "[t]he duty to preserve extends to those employees likely to have relevant information – the key players in the case." *Id*. at *19 (cleaned up). That case does not imply that a company is responsible for any failures to preserve evidence before it existed and had any employees (and aside from any responsibilities it acquired as a successor in interest).

Nor is this a case where a non-party prison's spoliation of evidence is attributed, or might be attributed, to the defendant prison guards. *See, e.g., Ramos v. Swatzell*, 2017 WL 2857523, *6 (C.D. Cal. June 5, 2017); *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1110-11 (D. Ariz. 2014). In those cases, attribution (or the strong reasons for attribution) were because of the fact that the prison was not a disinterested party, it controlled the evidence and who had access to it, and the state defended the case and would pay any judgment (other than punitive damages). *See also Woods v. Scissons*, 2019 WL 3816727, *6 (D. Ariz. Aug. 14, 2019) (imputing spoliation by police department to defendant police officer for similar reasons).

Here, Blockchain literally didn't exist before July 7, 2021. It didn't control any evidence before that date, and its predecessor in interest didn't control Mr. Travis's or Mr. Trombley's text messages after they left by June 2020. Defendants complain that "if Plaintiff's position were adopted, any individual could form a shell company to hold *its* legal claims, bring suit through that

7

shell, and then delete individual ESI and other evidence with impunity." ECF No. 244 at 9 (emphasis added). But hold on there. That's exactly what is *not* happening here. Blockchain is not asserting Mr. Travis's or Mr. Trombley's legal claims. If it were, imputation would be clear, just as it is clear that any failure to preserve by Onsa concerning its legal claims could be imputed to Blockchain if Onsa had a duty to preserve and didn't do so.

There is no evidence that Blockchain is an alter ego of Mr. Trombley's or Mr. Travis's. It has plenty of other shareholders. *See* ECF No. 221-10. Defendants' reply brief at page 8 (ECF No. 244) seems to crystallize the imputation argument on the contention that Blockchain is not distinct from the Trombleys and Mr. Travis. Defendants say that the trio started collecting information for anticipated litigation in August and September 2020, they started meeting with Blockchain's current counsel at around the same time, they began agitating other Onsa shareholders in the fall of 2020, they began working to purchase Onsa's assets and liabilities, and then after Blockchain was formed, Mr. Travis was the CEO, the Trombleys were major shareholders, both Trombleys were Rule 30(b)(6) designees, and Mr. Trombley is one of Blockchain's expert witnesses. Yep, no doubt about it: They were the driving force behind the founding of the company, and remained involved after they founded it. Since when does that support a finding of alter ego liability? Where are the normal alter ego arguments about the comingling of funds, the failure to observe the corporate form, and things like that? Defendants do not cite a single case to support their alter ego argument.

By the way, while it's true that Blockchain has no operations, ECF No. 231 at 18, it doesn't follow that the company is nothing more than the three people most responsible for founding it because soon after it was founded it purchased Onsa's assets and claims, and it sure seems like that was reason for founding the company. If it helps, you can think of Blockchain as being similar to a Non-Practicing Entity ("NPE") that files patent lawsuits. If three people banded together to found an NPE and directed its acquisition of patent rights, you would normally view the NPE as the sum of its patent rights and would likely be puzzled by the suggestion that the NPE should be equated with its founders (unless there were a true alter ego showing). It would similarly be a mistake to conflate Blockchain with the people who formed it and arranged for it to

8

1  purchase Onsa's assets and claims. Rather, for the most part, Blockchain is those assets and
2  claims.
3      In sum, Defendants have come up with no reason to impute to Blockchain Mr. Trombley's
4  and Mr. Travis's failure to preserve text messages before Blockchain was created on July 7, 2021.
5      Now, let's recap where this leaves us. The only text messages Defendants have shown
6  were irretrievably lost were those between Mr. Trombley and Mr. Travis from August 2020 to
7  July 2021. Because the Court will not impute Mr. Trombley's and Mr. Travis's failure to preserve
8  to Blockchain for the time period before the company existed, but does believe the company had
9  an obligation to preserve as soon as it was created, Blockchain is responsible for the failure to
10  preserve text messages between Mr. Trombley and Mr. Travis essentially during the month of July
11  2021. Defendants present no argument that this one month of failing to preserve text messages
12  between these two people was prejudicial. All of Defendants' prejudice arguments discuss the
13  time period beginning August 2020 for the Trombleys and Mr. Travis collectively, for all of their
14  text messages including the ones preserved by other identified custodians. By failing to present
15  any argument at all that the failure to preserve text messages for about one month caused any
16  prejudice, Defendants have failed to show "prejudice . . . from loss of the information," Fed. R.
17  Civ. Proc. 37(e)(1). Further, even had there been a showing of prejudice, Rule 37 also says that
18  the Court "may order measures no greater than necessary to cure the prejudice," *id*., and an
19  adverse inference instruction would not satisfy that standard.
20      Accordingly, Defendants' motion for sanctions is **DENIED**.
21      **IT IS SO ORDERED.**

Dated: August 30, 2024

THOMAS S. HIXSON
United States Magistrate Judge