UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOCKCHAIN INNOVATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>Defendants. | Case No. 21-cv-08787-TSH<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION (PUBLIC VERSION OF ECF NO. 473)**<br><br>Re: Dkt. No. 397 |

## I.  INTRODUCTION

Pending before the Court is a Motion for Reconsideration brought by Defendants Franklin Resources, Inc. d/b/a Franklin Templeton ("FRI"), FT FinTech Holdings, LLC ("FT FinTech"), and Franklin Templeton Companies, LLC ("FT Companies").  ECF No. 397.[1]  Plaintiff Blockchain Innovation, LLC ("Blockchain") filed an Opposition (ECF No. 412) and Defendants filed a Reply (ECF No. 444).  In their motion, Defendants ask the Court to reconsider portions of this Court's October 3, 2024 Order Granting in Part and Denying in Part Motion to Strike Expert Rebuttal Opinions ("Order on Motion to Strike," ECF No. 364) and of this Court's November 27, 2024 Order Granting in Part and Denying in Part Motion for Summary Judgment and Granting in Part and Denying in Part Cross-Motion for Partial Summary Judgment ("Summary Judgment Order," ECF No. 391).  The Court finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **DENIES** the motion.[2]

---

[1] For precision's sake, citations herein are to the unredacted versions of Defendants' motion and reply (ECF Nos. 398-3 and 445-2) and Defendants' declarations and exhibits in support of their motion and reply, which were filed under seal.  Most sections of these documents cited within this order can be found in redacted versions Defendants filed on the public docket. *See* ECF Nos. 397 (Defs.' redacted Mot. for Leave to File Mot. for Reconsideration); 444 (Defs.' Reply).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.

## II. BACKGROUND

The Court summarized the facts in its November 27, 2024 Summary Judgment Order:

> Onsa was a startup company that "developed . . . blockchain technology to tokenize financial assets." [Third Amended Complaint ("TAC")] ¶ 2. On October 28, 2019, Defendant FT FinTech invested in Onsa – then called TokenVault, Inc. – through a stock purchase agreement ("SPA"). TAC ¶ 4; *see* Defs.' Ex. 39 (SPA). Under the terms of the SPA, FT FinTech paid $5.5 million to Onsa and $1 million to its founder, Austin Trombley, in exchange for 100% of Onsa's voting shares and roughly a quarter of Onsa's non-voting shares. SPA §§ 1.1(b), 1.1(e)(i); TAC ¶ 96. The SPA provided that Onsa's board would be "initially comprised" of Bayston as Onsa's sole board member. SPA § 9.5; *see* TAC ¶ 4. Under the terms of the SPA, [Defendant] Bayston was appointed as interim president, interim secretary, interim treasurer, and interim Chief Executive Officer. SPA § 9.6. The SPA established certain milestones for Onsa to reach, upon which FT FinTech would make additional payments of $1 million to Mr. Trombley and $2.5 million to Onsa and purchase additional shares of non-voting Onsa stock (Schedule A milestones), plus additional payments if Onsa met the Schedule B milestones. TAC ¶ 198; SPA §§ 1.1(e)(ii), 1.1(e)(iii), 1.1(f).
>
> In July 2020, Bayston allegedly terminated Onsa's then-CEO and "all other significant employees" and ceased all Onsa business operations with Johnson's knowledge and approval. TAC ¶ 7. Plaintiff alleges that at the time, Onsa was on its way to reaching the first milestone, which would trigger a $1 million payment to Mr. Trombley and a capital infusion of $2.5 million by FT FinTech to Onsa. TAC ¶¶ 173, 198; SPA §§ 1.1(e)(ii), 1.1(f)(1). In November 2020, Onsa's board of directors, which consisted solely of Bayston, voted to approve an assignment for the benefit of creditors ("ABC"), which transferred all of Onsa's assets to a liquidator called BLKCHN, LLC. Onsa's assets included its intellectual property and legal claims. TAC ¶ 10.
>
> In October 2020, Franklin Templeton "began a multi-phase development effort including code development, internal product launch and review, scale testing and benchmarking, internal usage testing, and expansion" to develop its own blockchain technology. Defs.' Mot. at 11; *see generally* Defs.' Ex. No. 78 (October 2, 2020 email and attached presentation of development plan). In April 2021, FT FinTech launched the "Benji" app and Franklin OnChain U.S. Government Money Fund. Defs.' Ex. 80. The Franklin OnChain U.S. Government Money Fund was "the first U.S.-registered mutual fund to use a public blockchain to process transactions and record share ownership." Defs.' Ex. 95.
>
> In August 2021, Plaintiff Blockchain purchased all of Onsa's assets, including any causes of action Onsa had, from BLKCHN through an asset purchase agreement ("August 2021 APA"). TAC ¶ 12; Defs.' Ex. 40.

---

322, 323, 324.

2

> Blockchain filed this case in this Court on November 12, 2021, and filed the operative TAC on July 22, 2024. ECF Nos. 1, 246. In its TAC, Plaintiff alleges claims against FT Defendants for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), and for breach of contract; against Roger Bayston, FT FinTech, and FRI for breach of fiduciary duty; and against Defendant Johnson for aiding and abetting the other defendants' alleged breaches of fiduciary duty. TAC ¶ 64. . . . Fact discovery closed on May 31, 2024, and expert discovery closed on August 2, 2024. ECF No. 210.

Summ. J. Order at 2–4.

On August 19, 2024, Defendants filed a motion for summary judgment on all claims. ECF No. 275. In support of its opposition to Defendants' motion for summary judgment, Plaintiff submitted a declaration from Onsa's founder, Austin Trombley ("Trombley Declaration"), to support its assertion that the asserted trade secrets ("ATS") were not generally known and derived value from not being generally known. Decl. of Austin Trombley, ECF No. 312-2.[3] Defendants objected to Trombley's declaration in their summary judgment reply brief ("Defendants' Summary Judgment Reply"). Defs.' Summ. J. Reply, ECF No. 335-2 at 2–3. On November 27, 2024, the Court granted in part and denied in part Defendants' motion for summary judgment and granted in part and denied in part Plaintiffs' cross-motion for summary judgment. Summ. J. Order at 27. In the Court's summary judgment order, the Court overruled Defendants' objections to the Trombley Declaration. *Id.* at 6.

On August 9, 2024, Plaintiff moved to strike in its entirety the expert report of Dr. Seoyoung Kim ("Kim Report") and portions of the expert report of Dr. Stephen Melvin ("Melvin Report"), both of which Defendants had served as rebuttal expert reports. Motion to Strike, ECF No. 262. On October 3, 2024, the Court granted Plaintiff's motion to strike the Kim Report and portions of the Melvin Report, both of which discussed whether the ATS qualify as trade secrets. ECF No. 364, Order on Mot. to Strike at 4, 14, 21. In its Order on Plaintiff's Motion to Strike, the Court found that Dr. Kim was "an affirmative expert and her rebuttal report [was] improperly designated as such." *Id.* at 11. The Court likewise found that Dr. Melvin's opinions on whether

---

[3] A publicly-filed version of the Trombley Declaration is available at ECF No. 308.

1   the ATS qualify as trade secrets were not proper rebuttal opinions. *Id.* at 14–16.

2   On December 18, 2024, Defendants requested leave to file a Motion for Reconsideration
3   ("Motion") pursuant to Northern District of California Civil Local Rule 7-9(b). The Court granted
4   Defendants leave to file the Motion and treated Defendants' motion for leave as Defendants'
5   motion for reconsideration. Order Granting Leave, ECF No. 401.

6   In their Motion, Defendants ask the Court to reconsider the portion of the Court's
7   Summary Judgment Order overruling Defendants' objections to the Trombley Declaration on the
8   basis that there was a "manifest failure by the Court to consider material facts or dispositive legal
9   arguments which were presented to the court before" the Court's Summary Judgment Order. Civ.
10  L.R. 7-9(b)(3); Mot. at 2, 7, ECF No. 398-3. In the alternative, Defendants ask the Court to
11  reconsider its order striking the Kim Report and portions of the Melvin Report on the basis that the
12  Court's admission of the Trombley Declaration is "a material difference in fact or law" than "what
13  was presented to the Court" when the Court decided Plaintiff's Motion to Strike. Civ. L.R. 7-
14  9(b)(1)–(2); Mot. at 11.

15  Blockchain filed its opposition to the motion on January 6, 2025. ECF No. 412.
16  Defendants filed their reply on January 17, 2025. ECF No. 445-2.

17  **III.   LEGAL STANDARD**

18  Under Civil Local Rule 7-9(a), a motion for reconsideration may be granted before entry of
19  judgment adjudicating all of the claims and rights and liabilities of all the parties in a case. Civ.
20  L.R. 7-9(a). A motion for reconsideration may be made on three grounds: (1) a material
21  difference in fact or law exists from that which was presented to the court, which, in the exercise
22  of reasonable diligence, the moving party did not know at the time of the order for which
23  reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a
24  manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R.
25  7-9(b). Motions for reconsideration are disfavored and "should not be granted, absent highly
26  unusual circumstances, unless the district court is presented with newly discovered evidence,
27  committed clear error, or if there is an intervening change in the controlling law." *McDowell v.*
28  *Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam) (internal quotation and citation

4

omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Further, the moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

## IV. DISCUSSION

Defendants request reconsideration of the portion of the Court's Summary Judgment Order overruling Defendants' objections to the Trombley Declaration. In the alternative, Defendants ask the Court to reconsider portions of the Court's Order on Motion to Strike, specifically the portions striking the Kim Report and portions of the Melvin Report.

### A.   Trombley Declaration

As the basis for their motion to reconsider the portion of the Court's Summary Judgment Order overruling Defendants' objections to the Trombley Declaration, Defendants point to Civil Local Rule 7-9(b)(3), which requires the moving party to show that there was a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Mot. at 2, ECF No. 397; *see* Civ. L.R. 7-9(b)(3). Defendants contend the Court manifestly erred by considering whether the Trombley Declaration "offer[ed] fact, rather than expert, testimony" and not whether it offered opinions based on "scientific, technical, or other specialized knowledge" that would bring Trombley's testimony within the scope of Federal Rule of Evidence 702. Mot. at 7–9.

#### 1.   Scope of Motion for Reconsideration re Trombley Declaration

As a preliminary matter, Plaintiff contends that Defendants only objected to select paragraphs of the Trombley Declaration in the first instance and that Defendants' motion for reconsideration must therefore be limited to those paragraphs. Opp'n at 1. The Court finds Defendants clearly objected to the Trombley Declaration in its entirety in their summary judgment reply. *See* Defs.' Summ. J. Reply at 2 (stating "the Declaration should be struck[,]" "[t]he Declaration . . . should be struck as an untimely supplemental expert report[,]"), 3 ("If Plaintiff

5

1   contends that the [Trombley] Declaration contains fact, not expert, testimony, it should still be
2   struck as untimely."). Defendants' citation of certain paragraphs of the Trombley Declaration
3   does not obviate the fact that Defendants previously objected to the declaration in its entirety. The
4   Court therefore treats Defendants' motion as one for reconsideration of Defendants' objection to
5   the Trombley Declaration in its entirety.

### 2. Waiver of Argument Regarding Trombley Declaration

In Defendants' Summary Judgment Reply, Defendants asserted that the Trombley Declaration should be struck under Rule 37 because it was untimely. Defs.' Summ. J. Reply at 2. They said: "[T]he Declaration should be struck because it offers opinions that are untimely and improper. *See* Fed. R. Civ. P. 37(c)(1). . . . There is no justification for withholding these new opinions until now, months after the close of discovery, and Plaintiff does not even attempt to justify its late disclosure." *Id*. They argued that the declaration "contains new, previously undisclosed opinions and should be struck as an untimely supplemental expert report." *Id*. They stated that "whether the ATS were generally known is an issue on which Plaintiff bears the burden of proof and such opinions should have been disclosed in Plaintiff's initial expert reports." *Id*. And they argued that "[i]f Plaintiff contends that the Declaration contains fact, not expert, testimony, it should still be struck as untimely. Defendants requested all evidence relevant to Plaintiff's trade secret claim, but Plaintiff chose not to provide the Declaration in discovery. A party cannot avoid summary judgment by producing evidence for the first time in Opposition, and any such evidence should be struck." *Id*. at 3 (citations omitted).

The Court found that the declaration was timely because it was based on Trombley's personal knowledge and experience, "rather than on any purported qualifications as an expert," and therefore did not need to comply with the deadline for an expert report. Summ. J. Order at 6.

The first time Defendants made their current argument that the Trombley Declaration is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" (Fed. R. Evid. 701(c)) is in their motion for reconsideration. They did not make this argument in their briefing on the summary judgment motion. Defendants go on for pages in their reconsideration motion with their entirely new argument that the Trombley Declaration is based on scientific,

6

technical, or other specialized knowledge.

Defendants' new argument is not only new, it is the opposite of what they argued on summary judgment. On page 4 of their summary judgment reply brief, Defendants argued that "[t]he law is clear that conclusory statements of uniqueness, *based simply on a witness's personal knowledge,* cannot create a triable issue on whether the alleged trade secrets were generally known or not." Defs.' Summ. J. Reply at 4 (emphasis added). Defendants then argued that "Trombley's conclusory statements that the ATS were 'unique' are *based entirely on his alleged personal knowledge of the field* (which is contradicted by the facts of his experience) *and not on any literature review or research*. Trombley's statements on alleged uniqueness, thus, fail to create a triable issue on whether the ATS were not generally known and qualify as trade secrets." *Id*. (emphasis added). Defendants argued that Trombley's declaration was insufficient to create a triable question of fact precisely *because* it was based only on his personal knowledge and not on things that an expert would rely on such as a literature review or research. Defendants' new argument that the Trombley Declaration is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" is a reversal in position.

Consider what Defendants' reply brief would have looked like if they made the argument they did make, and if they had also made the new argument they now make. Their first argument (the one they did make) would have been that Trombley's declaration cannot create a triable question of fact as to the "not generally known" prong of a trade secret claim because it is based on his personal knowledge, and a declaration based on personal knowledge cannot create a triable question of fact as to "not generally known." And then their next argument (the one they make now but didn't back then) would have been that Trombley's declaration is based on scientific, technical, or other specialized knowledge within the meaning of Rule 702. Those arguments are the opposite of each other. The second one flatly contradicts the first.

Defendants' motion for reconsideration also criticizes the Court for not considering the new argument that Defendants didn't make on summary judgment. Defendants contend: "The Court asked whether the 'declaration offers fact, rather than expert, testimony.' But the question under Federal Rule of Evidence 701 *should have been* whether the Trombley Declaration offers

7

1  opinions that are 'based on scientific, technical, or other specialized knowledge within the scope
2  of Rule 702.'" Mot. at 7-8 (emphasis added). But the reason the Court did not address that
3  argument is because Defendants did not make it.
4      It would obviously be a bad idea to allow a party to fully litigate a summary judgment
5  motion, see what the court's order is, and then move for reconsideration based on new arguments
6  that were not presented to the court, including arguments that are the opposite of the ones that
7  were presented. If courts permitted that type of behavior, no orders would ever be final.
8  Unfortunately, that is what Defendants are attempting here.
9      It was not error, clear or otherwise, for the Court not to address an argument that wasn't
10 made. And as noted, a motion for reconsideration may not be used to raise arguments or present
11 evidence for the first time when they could reasonably have been raised earlier in the litigation.
12 *Marlyn Nutraceuticals,* 571 F.3d at 880. The Court will not reconsider its summary judgment
13 order based on an argument that Defendants did not make in their summary judgment briefing.
14 Accordingly, the Court **DENIES** Defendants' motion for reconsideration of the portion of the
15 Court's Summary Judgment Order overruling Defendants' objections to the Trombley
16 Declaration.

### B.  Expert Opinions of Dr. Seoyoung Kim and Dr. Stephen Melvin

18     In the alternative to reconsidering Defendants' objection to the Trombley Declaration,
19 Defendants ask the Court to reconsider the portions of the Court's October 3, 2024 Order on
20 Motion to Strike. As a basis for their motion as to the expert opinions of Dr. Kim and Dr. Melvin,
21 Defendants argue that "[t]he Court's admission of the Trombley Declaration on November 27,
22 2024 is 'a material difference in fact or law' than what 'was presented to the Court', . . . and
23 Defendants could not have been aware of this development when the Court entered its Motion to
24 Strike Order in October." Mot. at 11. Defendants maintain that the Kim and Melvin reports
25 "would have unquestionably been proper rebuttal" had Trombley's testimony been properly
26 disclosed. Mot. at 1. Defendants further assert that Plaintiff will not suffer prejudice from the
27 reinstatement of the Kim and Melvin Reports because the Trombley Declaration addressed the
28 same subject as the Kim Report and portions of the Melvin Report that the Court struck. Mot. at

8

12. This argument is premised on the notion that the Trombley Declaration is an expert opinion. Because the Court has already ruled on summary judgment, and will not reconsider its order based on Defendants' new argument and change of position, the relevant issue is trial. And it is obvious what the correct outcome is: Trombley cannot give any expert testimony on whether the alleged trade secrets were generally known. Blockchain never offered Trombley as an expert on that subject and does not say he is an expert on it now. Rather, Blockchain defends Trombley's declaration on the ground that it is permissible lay testimony. Because Trombley was not disclosed as an expert on that subject, and neither side advances any argument that he has the qualifications to be an expert on it, he is limited to giving lay testimony. In other words, even though the Court will not reconsider its summary judgment order based on a new argument made on reconsideration, the Court will be mindful of this new argument in policing what Trombley can say at trial.

So, let's talk about that. Federal Rule of Evidence 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Committee Notes on 2000 Amendment provide a further gloss on Rule 701(c), noting that:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701, adv. committee note (2000). At the same time, the Committee Notes recognized that:

> courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993) (no abuse of discretion in permitting the plaintiff's owner

9

> to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

*Id.* "Where . . . a witness is testifying as to institutional operations and practices based on personal knowledge that the witness has accrued over the course of several years of employment, the witness is providing lay testimony not subject to Rule 702." *Siebert v. Gene Sec. Network, Inc*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014).

The Trombley Declaration is largely a factual account of Trombley's work for Onsa and the development of the ATS. However, the Declaration includes some assertions that amount to opinion, rather than fact testimony. These include Trombley's belief that certain elements of the ATS are "unique." Trombley Decl. ¶¶ 28, 31, 33, 35, 37, 40, 42, 45, 55. These are the opinions Defendants challenge in their motion for reconsideration. Plaintiff responds that "when read in context, it is apparent that Trombley meant that he had not encountered another [company] that had come up with the asserted trade secret, which is a fact, not an opinion." Opp'n at 16. "In other words . . . Trombley is stating that, to his knowledge, the trade secrets were unique because he was aware of no other company that had developed them. This is not an opinion. It is a statement of Mr. Trombley's knowledge." *Id*. at 17.

The Court agrees with Plaintiff that Trombley may testify about his knowledge but agrees with Defendants that his declaration purported to do more than that. Consider this excerpt from paragraph 31: "Based on my understanding and knowledge of the industry, this was a unique solution that no one else was doing. I have not seen any other company that had advanced down the path we were following or succeeded in solving the problems we were trying to solve." The second sentence is fine under Rule 701. But the first sentence is not because it is not "rationally based on the witness's perception." Paragraph 28 of his declaration has the same problematic quality that his opinion about the entire industry is not rationally based on his perception.

On the issue of whether the asserted trade secrets were generally known, the Court will allow Trombley to testify about what he is and is not aware of, what he knows, and what he has

1    and has not seen, as well as how he gained that awareness and knowledge. But the Court will not
2    allow him to testify about whether the alleged trade secrets are unique in the industry or that no
3    other companies have developed them. Nor can he offer those opinions by prefacing them with "I
4    think" or "I believe." The problem with those opinions is not, as Defendants wrongly state, that
5    they are based on "scientific, technical, or other specialized knowledge within the scope of Rule
6    702." There is actually no basis to think that Trombley has that kind of specialized knowledge.
7    The problem with those opinions is that they are not rationally based on his perception.

8         This ruling disposes of Defendants' alternative argument for the Court to reconsider its
9    order on the motion to strike. Trombley was not disclosed as an expert on whether the alleged
10   trade secrets were generally known, and he won't be giving any expert testimony about that or
11   anything else at trial. He was certainly disclosed as a fact witness, and he will be able to give fact
12   testimony at trial, including lay opinion testimony that is admissible under Rule 701. The Court
13   therefore finds that the Trombley Declaration does not create a "material difference in fact or law"
14   to justify reconsideration of the Kim and Melvin reports.

15        Defendants maintain that the Kim and Melvin reports "would have unquestionably been
16   proper rebuttal" had Trombley's testimony been properly disclosed. Mot. at 1. Defendants further
17   assert that Plaintiff will not suffer prejudice from the reinstatement of the Kim and Melvin Reports
18   because the Trombley Declaration addressed the same subject as the Kim Report and portions of
19   the Melvin Report that the Court struck. Mot. at 12. This argument is premised on the notion that
20   the Trombley declaration is an improper expert opinion. But an expert rebuttal opinion must
21   "contradict or rebut evidence on the same subject matter identified by" another party's expert.
22   Fed. R. Civ. P. 26(a)(2)(D)(ii). As discussed above, the Court finds the Trombley Declaration
23   does not constitute expert testimony. Portions of his declaration are inadmissible lay opinion
24   testimony under Rule 701 because they are not rationally related to his perception, but none of it is
25   based on scientific, technical or specialized knowledge within the scope of Rule 702. Indeed, as
26   noted, there is no reason think Trombley possesses such specialized knowledge. Meanwhile, Dr.
27   Kim and Dr. Melvin clearly offered expert opinions based on their "scientific, technical, or other
28   specialized knowledge." Fed. R. Evid. 701(c), 702(a); *see* ECF Nos. 266-3 (Kim Report); 266-7

(Melvin Report). Dr. Kim provided a 364-paragraph report and a lengthy appendix listing the legal documents, SEC filings, academic articles and publicly available documents upon which she relied to address whether the ATS are generally known. Kim Report, ECF No. 266-3. Dr. Melvin, meanwhile, used specialized knowledge and scientific and technical tools to reach his conclusions that the ATS do not qualify as trade secrets. *See, e.g.*, Melvin Report ¶¶ 128, 250, 298–305, ECF no. 266-7. In the absence of an affirmative expert opinion by the Plaintiff as to whether the ATS were generally known, Dr. Kim's opinion and the expert opinions of Dr. Melvin are not proper rebuttal. Setting aside the Order on Motion to Strike would prejudice Plaintiff by introducing expert testimony to rebut a small number of lay opinions based on Trombley's work at Onsa.

Defendants further assert that the Trombley Declaration creates a material difference in fact and prejudices Defendants because Plaintiff did not include "any disclosure that Trombley would offer the opinions on which Plaintiff intended to rely to show that the ATS were not generally known" in its Motion to Strike the Kim Report and portions of the Melvin Report. Reply at 12. But a party seeking to strike an improper rebuttal expert report need only show that the expert's testimony does not "contradict or rebut evidence or theories of the opposing expert witness." *Abdo v. Fitzsimmons*, 2020 WL 4051299, at *2 (N.D. Cal. July 20, 2020) (citations omitted). The Court previously held in its Summary Judgment Order, "expert testimony is not necessarily required to create a triable issue" of fact as to whether an asserted trade secret is "not generally known." Summ. J. Order at 7. Defendants offer no support for their suggestion that Plaintiff's motion to strike improper expert rebuttal need also have identified lay witnesses who would provide evidence that the ATS were not generally known. Nor do Defendants offer any case law indicating that Defendants would be unduly prejudiced if Plaintiff's Motion to Strike failed to devote space to such an explanation. Accordingly, the Court finds Defendants have not identified a "material difference in fact or law" to justify reconsideration of the Kim and Melvin reports.

### a. Substantial Justification and Proposed Stipulation to Allow Plaintiff Rebuttal Report

Finally, Defendants argue that even if the Kim and Melvin Reports should have been served as opening, rather than rebuttal, reports, Defendants were substantially justified in waiting to serve them as rebuttal reports. The Court finds Defendants have waived this argument, as Defendants did not raise substantial justification as an argument in their Opposition to Plaintiff's Motion to Strike the Kim and Melvin Reports. *See generally* Opp'n to Mot. to Strike, ECF No. 280.

Defendants offer to stipulate to allowing Plaintiff to prepare and submit a rebuttal expert report in response to the Kim and Melvin Reports. Mot. at 12 n.6; Reply at 14 n.2. First, the Court finds Defendants have waived this argument, as they failed to raise it in their Opposition to Plaintiff's Motion to Strike. *See generally* Opp'n to Mot. to Strike, ECF No. 280. Further, allowing Plaintiff to submit a rebuttal in response to the Kim and Melvin Reports would be incompatible with the existing case management schedule and would impose a new and substantial burden on Plaintiff. Less than two months remain until trial. Expert discovery closed on August 2, 2024, and the deadline for submitting Daubert motions was September 3, 2024. *See* ECF Nos. 210, 272. The deadlines to exchange pretrial disclosures, proposed jury instructions, motions in limine and other pretrial documents have all passed. *See* ECF No. 372 (October 9, 2024 Case Management Order). The addition of a rebuttal expert at this late stage of litigation would require a new case management schedule to allow for the preparation of a rebuttal report, the deposition of Plaintiff's rebuttal expert, further Daubert briefing, and a reduplication of pretrial efforts, including likely changes to pretrial disclosures, motions in limine, proposed jury instructions and trial briefs. An expert rebuttal report would thus delay trial for several months. Accordingly, the Court rejects this proposal.

The Court **DENIES** Defendants' motion for reconsideration of the portions of the Court's October 3, 2024 Order on Motion to Strike striking the Kim Report and portions of the Melvin Report.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: January 30, 2025

_____
THOMAS S. HIXSON
United States Magistrate Judge