United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOCKCHAIN INNOVATION, LLC, | Case No. 21-cv-08787-TSH |
| Plaintiff, | |
| v. | **ORDER RE: MOTIONS IN LIMINE (PUBLIC VERSION OF ECF NO. 513)** |
| FRANKLIN RESOURCES, INC., et al., | Re: Dkt. Nos. 427, 437 |
| Defendants. | |

## I.    LEGAL STANDARD

**A.    Motions in Limine**

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials"). However, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015).

In many instances, rulings "should be deferred until trial, so that questions of foundation,

United States District Court
Northern District of California

relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). For example, in order to exclude evidence on a motion in limine, "the evidence must be inadmissible on all potential grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of a motion in limine to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial. *Id.* Moreover, even if a district court does rule in limine, the court may "change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

**B.      Federal Rules of Evidence 401, 402, and 403**

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible" unless the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Evidence is "relevant" if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II.      DISCUSSION

**A.      Plaintiff's Motions in Limine**

### 1.      Plaintiff's Motion in Limine No. 1

Plaintiff seeks to exclude statements or evidence that Austin Trombley, Alina Trombley, or Aaron Travis failed to preserve text messages.

On August 30, 2024 the Court denied Defendants' motion for sanctions for spoliation of evidence seeking an adverse inference jury instruction. ECF No. 291. In that order, the Court

found that Mr. Trombley and Mr. Travis had failed to preserve their text messages from August 2020 to July 2021 but that texts including other senders or recipients were not lost, as they were retrievable from other custodians. *Id.* at 2–3. However, the Court held that Mr. Trombley's and Mr. Travis's failure to preserve their text messages during this period could not be imputed to Plaintiff. *Id.* at 4, 9.

Plaintiff argues that the Court's order denying sanctions has narrowed the scope of relevant evidence at trial, such that any potential statements or evidence that Austin Trombley, Alina Trombley or Aaron Travis failed to preserve text messages is no longer relevant and must be excluded. But the Court's decision not to issue an adverse jury instruction does not equate to a ruling that this evidence is not relevant to any issue at trial. However, the Court agrees that Alina Trombley's text messages are not at issue in this litigation. *See id.* at 1 (finding there was "no evidence that Alina Trombley failed to preserve her text messages during the time period she was obligated to do so").

Accordingly, the Court **GRANTS** Plaintiff's Motion in Limine No. 1 to exclude statements or evidence that Alina Trombley failed to preserve text messages and **DENIES** the motion as to Austin Trombley and Aaron Travis. However, Defendants may not use the term "spoliation" when referring to Austin Trombley or Aaron Travis, consistent with Defendants' agreement not to do so in their opposition brief.

### 2. Plaintiff's Motion in Limine Nos. 2–3

Plaintiff seeks to exclude statements or evidence included in the rebuttal expert report of Dr. Seoyoung Kim's that Onsa's trade secrets do not qualify as trade secrets (regardless of which witness purports to offer this testimony), as well as the unproduced documents that Dr. Kim relied upon in her expert report. Plaintiff further seeks to exclude statements or opinions offered by Defendants' rebuttal expert Dr. Steven Melvin or any other witness that Onsa's trade secrets do not qualify as trade secrets and that Onsa did not own its alleged trade secrets.

On October 3, 2024, the Court granted Plaintiff's motion to strike Dr. Kim's expert report, which discussed whether the alleged trade secrets ("ATS") qualify as trade secrets. ECF No. 364. The Court likewise granted Plaintiff's motion to strike the portions of Dr. Melvin's expert report

3

United States District Court
Northern District of California

opining on whether the ATS qualify as trade secrets and on whether Onsa owned the ATS. *Id.* at 14–16. The Court found that because Plaintiff had not offered affirmative expert testimony on whether the ATS qualify as trade secrets or whether Onsa owned the ATS, the expert opinions Defendants offered on these issues constituted affirmative opinions, rather than rebuttal. Consistent with the Court's October 3 order, Defendants may not introduce expert testimony by Dr. Kim or Dr. Melvin on opinions that the Court has excluded.

Beyond that, these motions in limine are vague and supported and are **DENIED** without prejudice.

### 3.    Plaintiff's Motion in Limine Nos. 4–6

Plaintiff seeks to exclude (4) statements or evidence that Austin Trombley or Aaron Travis induced FT to invest in Onsa through lies or misrepresentations, including that Onsa owned IP developed by Tokentech and that Tokentech was a subsidiary of Onsa; (5) statements or evidence that alleged mismanagement, including operating at a loss prior to September 2020, was a superseding cause of Onsa's damages; and (6) statements or evidence regarding Onsa's alleged delay in failing to demand compliance with the NDA provisions, including Onsa's failure to ask for a certificate of destruction of Onsa's source code. Plaintiff asserts that Motions in Limine Nos. 4–6 should be granted based on the Court's November 27, 2024 Summary Judgment Order ("Summary Judgment Order") and Federal Rules of Evidence 401, 402 and 403.

Plaintiff asserts that the statements and evidence described in Motions in Limine No. 4, 5 and 6 are irrelevant in light of the Summary Judgment Order, in which the Court granted summary judgment for Plaintiff on several of Defendants' affirmative defenses. Defenses asserted by FT Defendants and Jennifer Johnson on which the Court granted summary judgment on the basis that Defendants failed to offer any evidence in support include: unclean hands, waiver, license/consent/acquiescence, superseding cause, bad faith, Plaintiff's breach of contract, and set-off. ECF No. 391 at 26–27. The Court granted summary judgment for lack of evidence on the following affirmative defenses asserted by Defendant Roger Bayston: laches, waiver, and equitable estoppel, unclean hands, claim preclusion and release of breach of duty. *Id.*

The Court's grant of summary judgment as to these defenses does not necessarily render

United States District Court
Northern District of California

evidence that would support these defenses irrelevant to the litigation. For example, evidence that Austin Trombley or Aaron Travis induced FT to invest in Onsa through lies or misrepresentations may be relevant to Plaintiff's breach of fiduciary duty claim and damages. Likewise, evidence regarding Onsa's alleged delay in failing to demand compliance with the NDA provisions may be relevant, for example, to what Onsa's employees believed about the value of the alleged trade secrets and efforts to keep them secret. Evidence that Onsa was mismanaged or operated at a loss prior to September 2020 may also be relevant to Plaintiff's breach of fiduciary claim. Defendants state that consistent with the Court's summary judgment order, they will not assert any struck affirmative defenses at trial. Defs.' Opp'n at 6.

Accordingly, the Court and **DENIES** Plaintiff's motions in limine Nos. 4, 5 and 6, without prejudice to Plaintiff raising arguments at trial regarding relevance, unfair prejudice, waste of time, confusion of the issues, misleading the jury, undue delay, or needlessly presentation of cumulative evidence.

### 4.    Plaintiff's Motion in Limine Nos. 7 and 8

Plaintiff seeks to exclude (7) statements or evidence that Austin Trombley assigned ownership rights in Onsa's ATS to the FT Defendants by signing an employment agreement with FT and (8) statements or evidence that the FT Defendants own any of the ATS. Specifically, Plaintiff seeks to preclude Defendants from offering as an exhibit Austin Trombley's IP agreement. Plaintiff argues that this exhibit is irrelevant to the litigation, as the Court granted partial summary judgment in favor of Plaintiff that Defendants do not own any of the ATS. But the fact that Defendants previously used Austin Trombley's IP agreement to support a now-moot argument that Defendants own the ATS does not make that evidence irrelevant to any other issue at trial. Defendants contend that the IP agreement is relevant for other matters that Defendants may be permitted to present at trial and confirm they will not argue that they owned any of the ATS at trial.

Accordingly, the Court finds Plaintiff's Motions in Limine Nos. 7 and 8 unnecessary in light of its summary judgment order and **DENIES** Plaintiff's Motion in Limine Nos. 7 and 8.

United States District Court
Northern District of California

1

### 5.    Plaintiff's Motion in Limine No. 9

Plaintiff seeks to exclude statements or evidence that would contradict the Court's ruling in its Summary Judgment Order that a "successor relationship exists between TokenVault, Inc. and TokenVault Limited [and] the Court need not consider whether the NDA was validly assigned." Defendants argue that Plaintiff still needs to demonstrate at trial that it has standing to assert its breach of contract claim because the Court's holding was limited to the summary judgment context and Plaintiff was not granted summary judgment as to that issue.

In its Summary Judgment Order, the Court "f[ound] that TokenVault, Inc. was a successor of TokenVault Limited" and that "Plaintiff has thus satisfied its burden of demonstrating standing to bring its claim for breach of contract at this juncture."  Summ. J. Order at 14.  The Court finds that this language limits the Court's holding to the summary judgment context.  Plaintiff did not move for partial summary judgment as to the existence of a successor relationship between Plaintiff and Defendants, and the Court did not grant summary judgment on that ground.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 9.

### 6.    Plaintiff's Motion in Limine No. 10

Plaintiff seeks to exclude statements or evidence suggesting that Blockchain cannot show the existence of trade secrets without expert testimony pursuant to Federal Rules of Evidence 401, 402 and 403.  In its Summary Judgment Order, the Court noted that "expert testimony is not necessarily required to create a triable issue" as to the existence of a trade secret and found that Plaintiff, which did not provide expert testimony as to the existence of trade secrets, had nevertheless met its burden on summary judgment to demonstrate that the ATS were protectable trade secrets.  Summ. J. Order at 7–8.  The Court agrees that Defendants cannot offer statements or evidence that, as a matter of law, expert testimony is required to show the existence of trade secrets.  But the Summary Judgment Order does not render Plaintiff's strategic decision not to provide expert testimony on the existence of trade secrets irrelevant or unfairly prejudicial.

Defendants confirm they do not intend to argue what the law requires at trial.  Defs.' Opp'n at 11.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 10.

United States District Court
Northern District of California

### 7.    Plaintiff's Motion in Limine No. 11

Plaintiff seeks to preclude Defendants from offering "[s]tatements or evidence that Bayston relied on advice of counsel in making the decision to wind down Onsa."  Pl.'s Mot. at 11. In the body of its motion, however, Plaintiff expands its scope its motion, contending that "the reliance of counsel defense is unavailable to Bayston as a matter of law and any evidence regarding that defense should be excluded."  Pl.'s Mot. at 11.

In the Court's November 2024 Summary Judgment Order, the Court noted that "the evidence Defendants offer[ed] [in support of their motion for summary judgment] to demonstrate Bayston's reliance on the advice of counsel is from *after* Bayston initiated Onsa's wind-down." ECF No. 391 at 11.  Plaintiff argues that the Court's Summary Judgment Order thus precludes Bayston from relying on advice of counsel as a defense to Plaintiff's breach of fiduciary claim, as Bayston did not seek legal advice regarding his decision to wind down Onsa or the implementation of "Plan B."  Pl.'s Mot. at 12.  This argument implies that Plaintiff's breach of fiduciary duty claim is limited to Bayston's decision to wind down Onsa and the implementation of "Plan B."  But Plaintiff's breach of fiduciary duty claim is not limited to the conduct addressed in the Court's Summary Judgment Order.  *See* Joint Pretrial Conf. Statement at 2 (Plaintiff's statement that "the harm to Onsa allegedly became irreversible when FT and Bayston failed to appoint an independent director and waited months after making the wind down decision to execute an ABC transaction.").  The Court's decision on summary judgment thus does not foreclose the relevance of statements or evidence that Bayston relied on the advice of counsel after his decision to wind down Onsa.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 11.

### 8.    Plaintiff's Motion in Limine No. 12

Plaintiff seeks to exclude statements or evidence that Bayston relied on any financial advisors or expert consultants in making the decision to wind down Onsa.  Plaintiff argues that this motion in limine should be granted "based on the reasoning of the SJ Order and Rules 401, 402, and 403 because Bayston never sought advice from any financial advisors or expert consultants" about the subject of this litigation.  Pl.'s Mot. at 13.

This motion in limine is a belated motion for summary judgment masquerading as a motion in limine. Plaintiff did not move for summary judgment regarding Bayston's reliance on the advice of financial advisors or consultants, and the Court's Summary Judgment Order does not address whether Bayston sought the advice of financial advisors or expert consultants.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 12.

### 9. Plaintiff's Motion in Limine No. 13

Plaintiff seeks to exclude evidence of the May 22, 2020 police report relating to a gun and cocaine residue allegedly found at Onsa's offices, which Defendants have identified among their pretrial disclosures as a trial exhibit. ECF No. 422-20 (App'x C), Ex. No. 4588 (San Francisco Police Dep't Incident Report). Plaintiff argues that this police report is objectionable under Rules 401, 402 and 403, is hearsay that contains hearsay within hearsay, and has not been authenticated, and because no one has personal knowledge of the events described in the police report. Defendants argue that this evidence "makes it more probable that dysfunction was long-running at Onsa" and is probative of Trombley's credibility. Def.'s Opp'n at 15–16. The Court finds that the May 2020 police report is minimally relevant to the litigation and highly prejudicial to Plaintiff. The Court finds the probative value of the police report is also substantially outweighed by a danger of confusing the issues, wasting time and misleading the jury by creating a trial within a trial on a collateral issue.

Defendants argue that "[e]vidence of [Trombley's] conduct at Onsa will provide the jury with a more complete picture of Trombley" and enable the jury to decide the weight to afford Trombley's testimony. Plaintiff asserts that the drugs were found six weeks after Trombley left San Francisco, that Trombley denies the drugs were his and that no FT witness has ever testified that the drugs were Trombley's, and that the gun was unloaded and kept in a locked case with the knowledge and approval of Onsa and FT. Pl.'s Mot. at 13–14. Defendants respond that the fact that Trombley left San Francisco before the drugs were found does not "undercut . . . the inference that the drugs were his" and contend that evidence at trial will show that neither Onsa nor Franklin gave Trombley approval to store a handgun at the office. Defs.' Opp'n at 16.

Plaintiff's claims are for trade secret misappropriation, breach of contract and breach of

United States District Court
Northern District of California

1  fiduciary duty.  Putting aside the obvious and immense risk of unfair prejudice to Plaintiff, the

2  parties' briefing on this motion in limine demonstrates the risk that the police report will create a

3  trial within a trial regarding numerous issues, including the ownership of the drugs that were

4  found, whether Onsa's management knew about and approved of Trombley's storing a firearm in

5  the office, whether Franklin's management knew about and approved of it, and whether the gun

6  was properly or safely stored.  The Court thus finds that the police report's probative value, if any,

7  is substantially outweighed by the danger of unfair prejudice, confusing the issues at trial, wasting

8  time and misleading the jury, and is therefore subject to exclusion under Rule 403.

9        Accordingly, the Court **GRANTS** Plaintiff's Motion in Limine No. 13.

10        **10.    Plaintiff's Motion in Limine No. 14**

11        Plaintiff seeks to preclude Defendants from offering statements or evidence of alleged

12  drinking or drug usage by Austin Trombley or other Onsa employees or that they violated stay-at-

13  home Covid protocols.  Defendants argue that evidence of such conduct goes to the

14  reasonableness of Bayston's decision to wind down Onsa and is thus relevant to Plaintiff's breach

15  of fiduciary duty claim.  The Court finds that such statements or evidence are minimally relevant

16  to the litigation, and that any relevance is outweighed by the risk of unfair prejudice, confusing the

17  issues for the jury and wasting time.  Accordingly, the Court **GRANTS** Plaintiff's Motion in

18  Limine No. 14.

19        **11.    Plaintiff's Motion in Limine No. 15**

20        Plaintiff seeks to exclude statements or evidence of alleged tax fraud or commingling

21  business or personal assets by Austin Trombley or Alina Trombley, pursuant to Rules 401, 402

22  and 403.  Plaintiff asserts that Defendants' allegations of tax fraud are based on a concern that

23  Alina Trombley had changed her residency on an employee benefits form from California to

24  Florida when she had previously left San Francisco with the intent to move to Florida

25  immediately, and that Defendants' allegations of commingling funds are based on "questions (not

26  conclusions) by [Louis] Mohn" regarding whether Amazon purchases made on Alina Trombley's

27  credit card were business or personal expenses, as Mohn did not have the receipts.  Pl.'s Mot. at

28  15.  Defendants respond that evidence and testimony regarding alleged tax fraud is relevant to the

9

1    jury's assessment of Alina Trombley's and Austin Trombley's credibility and bears on the

2    reasonableness of Bayston's decision to wind down Onsa.

3        The Court finds that statements or evidence about alleged tax fraud by Austin Trombley

4    and Alina Trombley or commingling of business and personal assets are minimally relevant to the

5    litigation, and that their relevance is outweighed by the risk of unfair prejudice and confusing the

6    issues for the jury.  Accordingly, the Court **GRANTS** Plaintiff's Motion in Limine No. 15.

7        **12.    Plaintiff's Motion in Limine No. 16**

8        Plaintiff seeks to exclude statements or evidence of settlement discussions between Austin

9    Trombley and Franklin.  Plaintiff argues that any such evidence is barred by Federal Rule of

10    Evidence 408, which prohibits the use of evidence regarding settlement negotiations, including

11    conduct or statements made during negotiations about a claim "either to prove or disprove the

12    validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

13    contradiction[.]"  Fed. R. Evid. 408(a).

14        Rule 408 allows the Court to admit evidence of settlement "for another purpose[,]"

15    including to "prov[e] a witness's bias or prejudice[.]"  F.R.E. 408.  Defendants assert that they do

16    not intend to offer evidence or testimony of any negotiations "to prove or disprove the validity or

17    amount" of Trombley's claims.  *See* Fed. R. Evid. 408(a).  Defendants argue that the fact of the

18    negotiations is relevant to Plaintiff's claims, including rebutting one of Plaintiff's theories of

19    breach of fiduciary duty.  Defendants further assert that this evidence bears on Trombley's

20    credibility, as it indicates that Trombley had a pre-existing dispute with Franklin.  The Court finds

21    these statements and evidence are relevant to the litigation and that Defendants' purported

22    intended uses of evidence of settlement discussions are not necessarily barred by Rule 408.

23        Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 16 without prejudice to

24    Plaintiff raising arguments at trial regarding prohibited uses of compromise offers and

25    negotiations.

26        **13.    Plaintiff's Motion in Limine No. 17**

27        Plaintiff seeks to exclude statements or evidence regarding Onsa's fundraising efforts,

28    financial performance, business operations, or alleged software bugs or coding problems prior to

United States District Court
Northern District of California

the October 2019 SPA, pursuant to Rules 401, 402 and 403.  Plaintiff asserts that such evidence is not relevant to any claim or defense in this case because Franklin Templeton conducted extensive due diligence of Onsa before the October 2019 SPA and still decided to invest in Onsa at that time.  Plaintiff notes that Defendants' trial exhibit list "contains around 161 exhibits from this time period, . . . with the vast majority of them relating to these irrelevant issues."  Pl.'s Mot. at 17.  Plaintiff does not identify which of these exhibits it seeks to exclude.

Plaintiff concedes that "pre-SPA conduct is relevant to the overall story . . . and, therefore, does not dispute that certain documents pre-dating the October 2019 SPA are relevant."  However, Plaintiff does not identify which of the 161 pre-SPA exhibits it seeks to exclude and does not distinguish the documents it considers relevant from that period from those it wishes to exclude.  The Court declines to find that all evidence regarding Onsa's fundraising efforts, financial performance, business operations, or alleged software bugs or coding problems prior to the October 2019 SPA are per se irrelevant.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 17 without prejudice to raising objections at trial regarding relevance, unfair prejudice, waste of time, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence.

### 14.    Plaintiff's Motion in Limine No. 18

Plaintiff seeks to exclude statements or evidence that FT's due diligence was delayed due to Onsa's actions or inactions, pursuant to Rules 401, 402 and 403.  Plaintiff asserts that any such statements or evidence are not relevant because FT decided to invest in Onsa in October 2019 notwithstanding any alleged delays in due diligence, and that any probative value is thus substantially outweighed by a danger of undue delay, wasting time, or needlessly presenting cumulative evidence.  Defendants respond that Onsa's operational difficulties, including its pre-investment operational difficulties, "make it less likely that Bayston's decision to wind down Onsa was a breach of his fiduciary duties rather than a reasonable exercise of business judgment."  Defs.' Opp'n at 22.  Whether Bayston is entitled to the presumption of the business judgment rule and the application of the business judgment rule to his actions are issues for trial.  *See* Summ. J. Order at 15, 24–25.  Evidence that FT's due diligence was delayed due to Onsa's actions or

11

1    inactions could make it more likely that Bayston's wind-down decisions were a reasonable

2    exercise of business judgment.

3         Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 18 prejudice to raising

4    objections at trial regarding relevance, unfair prejudice, waste of time, confusion of the issues,

5    misleading the jury, undue delay, or needlessly presentation of cumulative evidence.

6         **15.    Plaintiff's Motion in Limine Nos. 19, 20 and 21**

7         Plaintiff seeks to exclude evidence relating to the negotiation of the August 2021 Asset

8    Purchase Agreement ("APA"), through which Plaintiff acquired Onsa's assets, and to events after

9    August 2021.  Specifically, Plaintiff seeks to preclude (19) statements or evidence relating to the

10   negotiation of the August 2021 APA; (20) statements or evidence regarding communications by

11   Nelson Bumgardner Conroy or McKool Smith relating to potential litigation against Defendants,

12   including drafts of the Complaint; and (21) statements or evidence regarding communications by

13   Michael Gottfried regarding his opinions concerning potential litigation against Defendants.

14   Plaintiff asserts that the negotiation of the APA, as opposed to its existence and terms, are not

15   relevant and include inadmissible hearsay statements, and asks that the motions be granted based

16   on Rules 401, 402 and 403.

17        Plaintiff objects to the introduction of evidence that the assignment for the benefit of

18   creditors ("ABC") liquidator, Gregg Yorkison, declined to pursue litigation against Franklin after

19   his attorney, Michael Gottfried, observed that "Onsa didn't own any IP of value."  Pl.'s Mot. at

20   18; *see* ECF No. 275 at 10 (Defs.' Mot. for Summ. J.).  Gottfried's alleged statement is not per se

21   inadmissible hearsay, as it may be offered for uses other than the truth of the matter asserted, such

22   as the effect on Yorkison and his decision not to pursue litigation.  Plaintiff does not provide any

23   other examples of evidence it seeks to preclude through these motions in limine.

24        The Court further finds Defendants demonstrate that evidence pertaining to the negotiation

25   of the August 2021 APA bears on multiple issues at trial, including Plaintiff's assertions that

26   Defendants' alleged conduct destroyed Onsa's value and alleged damages.

27        Accordingly, the Court **DENIES** Plaintiff's Motion in Limine Nos. 19, 20 and 21 without

28   prejudice to raising objections at trial regarding relevance, unfair prejudice, waste of time,

United States District Court
Northern District of California

confusion of the issues, misleading the jury, undue delay, or needlessly presentation of cumulative evidence. The Court also **ORDERS** Defendants to altogether avoid references to the conduct of Plaintiff's counsel (i.e., its litigation counsel in this case) in connection with these issues. Questions and testimony can refer to "counsel" but not specifically to Plaintiff's litigation counsel, and documents should be redacted to avoid references to them. The Court finds that references to Plaintiff's litigation counsel as being involved in the underlying conduct at issue in these motions in limine is unduly prejudicial and risks confusion of the issues.

### 16.    Plaintiff's Motion in Limine No. 22

Plaintiff seeks to exclude statements or evidence relating to Blockchain's efforts or lack thereof to restart Onsa's business, continue development of Onsa's platform, or market or sell any of Onsa's assets after acquiring Onsa's assets from BLKCHN in August 2021. Plaintiff asserts that any evidence that post-dates BLKCHN's purchase of Onsa is irrelevant and asks to exclude statements or evidence from after that date pursuant to Rules 401, 402 and 403.

The Court finds evidence relating to Blockchain's efforts to restart Onsa's business, continue development of Onsa's platform, or market or sell any of Onsa's assets are relevant, as they have a tendency to make Plaintiff's assertions about the value of Onsa's asserted trade secrets and IP more or less probable than they would be without that evidence. The Court does not find that the probative value of statements or evidence concerning Plaintiff's efforts to use Onsa's assets is substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury. Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 22.

### 17.    Plaintiff's Motion in Limine No. 23

Plaintiff seeks to exclude statements or evidence that the decision to wind down Onsa was based on anything other than the "financial condition" of Onsa. Plaintiff asserts that any such evidence is irrelevant and unfairly prejudicial because Defendants have presented evidence that Bayston made the sole decision to wind down Onsa, and Bayston testified in his deposition that his decision to wind down Onsa was based solely on its financial condition.

In support of this motion in limine, Plaintiff points to the Onsa Board's November 19, 2020 action approving the ABC, which states that "the Board has determined that, due to its

United States District Court
Northern District of California

financial condition, [Onsa] should, in the best interests of [Onsa] and its stockholders, enter an assignment for the benefit of creditors ('the ABC')."  ECF No. 437-8, Ex. G to to Granagham Decl.  Plaintiff also asserts that the deposition testimony of Bayston and Rob Carlson confirm that Bayston's decision to wind down Onsa was not based on anything other than its financial condition.  As a preliminary matter, the deposition testimony Plaintiff offers does not fully support this characterization.  Bayston testified that Onsa's "financial condition . . . [was] the primary reason why the ABC [was] actually occurring" and agreed that Onsa's financial condition was the only reason he provided for entering into the ABC.  ECF No. 439-10 at 315:3-19.  But the ABC was approved months after Bayston decided to wind down Onsa.  Carlson's deposition likewise does not unequivocally indicate that the sole reason for the decision is that Onsa was running out of cash and would not be able to meet its milestones.  ECF No. 438-5 at 176:24–178:15, Ex. O to Decl. of Christopher G. Granaghan.

On a more fundamental level, the Court declines to grant a motion in limine effectively requiring Defendants to craft a theory of the case based on Plaintiff's choice of admissible evidence.  Defendants can argue that the wind down was more complicated if they so choose, and Plaintiff can introduce evidence disputing that characterization.  These are classic issues of fact for the jury to decide.

Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 23.

### 18.    Plaintiff's Motion in Limine No. 24

Plaintiff seeks to exclude statements or evidence regarding (i) Onsa's alleged "code deficiencies" such as it was "mediocre" or "barely-built" or similar statements after the October 2019 SPA or (ii) that the decision to wind down Onsa had anything to do with IP ownership issues.  Plaintiff's basis for this motion in limine is Bayston's deposition testimony that "alleged IP ownership issues had nothing to do with his decision to liquidate Onsa."  Pl.'s Mot. at 20.

Plaintiff provides no basis the first part of its motion in limine, concerning statements and evidence regarding alleged "code deficiencies" or statements that Onsa's code was "mediocre" or "barely built."  The deposition testimony Plaintiff cites concerns IP ownership issues and not deficiencies with the IP itself.  Accordingly, this part of Plaintiff's motion in limine must be

United States District Court
Northern District of California

denied.  As to the second prong of Plaintiff's motion in limine, Bayston testified that he "d[id no]t recall" ownership of Onsa's IP "being a decision point about the ABC specifically[.]"  Ex. Q to Granagham Decl. at 364:8–365:9.  But Onsa's wind-down was not limited to the ABC, and Bayston did not provide an unequivocal response that he IP ownership issues had no bearing on his decision to wind down Onsa in the first instance.  *Id.* at 364:19–365:9.  Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 24.

### 19.    Plaintiff's Motion in Limine No. 25

Plaintiff seeks to exclude statements or evidence regarding the alleged "toxic personal dynamics" or similar statements regarding the relationship between Austin Trombley and former Onsa CEO Tauseef Bashir, including that the decision to wind down Onsa had anything to do with their allegedly poor relationship.  Plaintiff asks that any such statements or evidence be excluded pursuant to Rules 401, 402 and 403.

Plaintiff asserts that any animosity between Trombley and Bashir is irrelevant to the decision to wind down and liquidate Onsa because Trombley left Onsa in April 2020, less than two months after Bashir became Onsa's CEO and three months before Bayston initiated the wind-down.  Defendants contend that Bashir's and Trombley's interpersonal dynamics bear on whether Onsa had a functional leadership team that could operate the business and are relevant to multiple disputed issues at trial, including the reasons for Bashir's termination and Onsa's ability to achieve milestones that would trigger additional investment in Onsa.

The Court declines to find that statements or evidence regarding the relationship between Trombley and Bashir are per se not relevant, nor that their relevance is necessarily substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 25.

### 20.    Plaintiff's Motion in Limine No. 26

Plaintiff seeks to exclude statements or evidence of TokenTech's alleged threats to assert its ownership rights in Onsa's code, including statements or evidence that the decision to wind down Onsa had anything to do with these alleged threats.  In support of this motion, Plaintiff

United States District Court
Northern District of California

reiterates its contention that IP ownership issues were not a factor in Bayston's decision to wind down Onsa, citing Bayston's testimony that he did not recall IP ownership issues as a factor in the decision to enter into an ABC.  However, as discussed above, the ABC was just one part of Onsa's wind-down, and Bayston did not testify that IP ownership issues had no bearing on his other wind-down related decisions.  Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 26.

### 21.     Plaintiff's Motion in Limine No. 27

Plaintiff seeks to preclude Defendants from making attempts "to impeach a witness through the use of documents or testimony that was unavailable to the witness at the time of his or her deposition and/or at the time of trial as a result of Defendants having designated as Confidential or Attorneys' Eyes Only the documents or testimony used for impeachment."  Pl.'s Mot. at 21.  Plaintiff asserts that this motion in limine should be granted based on Rules 401, 402 and 403.

Defendants assert that this motion in limine is inadministrable as presented by Plaintiff, and the Court is inclined to agree.  Plaintiff has not provided any examples of documents that it believes Defendants may use for improper impeachment and offers no authority to support its assertion that documents a witness had not seen at the time of the witness's deposition or before trial are per se irrelevant or unfairly prejudicial.  If this situation arises at trial, Plaintiff can raise questions of admissibility regarding documents designated as Confidential or Attorneys' Eyes Only as they arise.  Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 27.

### 22.     Plaintiff's Motion in Limine No. 28

Plaintiff seeks to preclude Defendants from offering "[s]tatements or evidence regarding Austin Trombley's alleged efforts to 'agitate' among Onsa's non-voting shareholders and alleged efforts to "inundate Onsa and its employees with emails."  Pl.'s Mot. at 22.  Defendants contend evidence that Trombley was pushing his family and friends to make shareholder requests for updates makes it more likely that Bayston acted reasonably in not updating shareholders about wind down developments.  Plaintiff asserts that Onsa shareholders' reasons for requesting information from Defendants are irrelevant to the litigation and ask that this motion in limine be granted based on Rules 401, 402 and 403.  The Court finds that this information is potentially

16

relevant to the litigation and **DENIES** Plaintiff's Motion in Limine No. 28 without prejudice to raising objections at trial regarding relevance, unfair prejudice, waste of time, confusion of the issues, misleading the jury, undue delay, or needlessly presentation of cumulative evidence.

**B.    Defendants' Motions in Limine**

**1.    Defendants' Motions in Limine Nos. 1, 2 and 3**

These are moot.  ECF No. 506.

**2.    Defendants' Motion in Limine No. 4**

Defendants seek to preclude Plaintiff from offering any witness to provide lay opinion testimony about the alleged value of the alleged trade secrets, including the anticipated lay opinion testimony of Austin Trombley, pursuant to Federal Rule of Evidence 701.  Because the only witness Defendants discuss is Trombley, the Court limits its consideration of this issue to him.

Federal Rule of Evidence 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  The Committee Notes on 2000 Amendment provide a further gloss on Rule 701(c), noting that:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701, adv. committee note (2000).  At the same time, the Committee Notes recognized that:

> Courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business).

United States District Court
Northern District of California

1

2

3

> Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

4    *Id.* "Where . . . a witness is testifying as to institutional operations and practices based on personal

5    knowledge that the witness has accrued over the course of several years of employment, the

6    witness is providing lay testimony not subject to Rule 702." *Siebert v. Gene Sec. Network, Inc*, 75

7    F. Supp. 3d 1108, 1114 (N.D. Cal. 2014).

8         Defendants argue that Trombley's proposed testimony falls outside the scope of the

9    Committee Notes on Rule 701 because Trombley "did not own Onsa or the ATS, was not an

10    officer of Onsa, and had no involvement with the company's operations or technology after April

11    2020." Defs.' Mot. at 11. Defendants further assert that Trombley's opinions have no probative

12    value because they are not founded upon substantial data.

13         On October 8, 2024, the Court granted Defendants' motion to exclude the expert testimony

14    of Austin Trombley, who Plaintiff had designated to serve as an expert on the value of Onsa's

15    alleged trade secrets. ECF No 369 at 12–21. In that order, the Court declined to determine

16    whether Trombley could offer his opinions as a lay witness, but found that "Mr. Trombley's

17    experience does not provide a reliable basis for his conclusions" regarding his opinion that the

18    alleged trade secrets amounted to 40% of Onsa's enterprise value. *Id*. at 14, 19.

19         The same problems that precluded Trombley from offering an expert opinion on the value

20    of the alleged trade secrets also preclude him from testifying as a lay witness about the value of

21    the alleged trade secrets. Put simply, Trombley's valuation testimony fails Federal Rule of

22    Evidence 701(a) because it is not rationally based on his perception. Plaintiff offers no

23    satisfactory explanation of how Trombley's former position at Onsa and familiarity with the

24    asserted trade secrets would have provided him with knowledge of the monetary value of the

25    alleged trade secrets. To the contrary, his deposition testimony (which the Court cited in its prior

26    order) makes clear that valuation testimony like this is not rationally related to his perception or

27    experience.

28         In addition, Trombley's valuation testimony would require scientific, technical, or other

United States District Court
Northern District of California

specialized knowledge within the scope of Rule 702, and thus runs afoul of Rule 701(c).  The

Court is not saying that valuing intellectual property always requires an expert.  Rather, in this

case the alleged trade secrets were not successfully commercialized and they were owned by a

company that was privately held.  On these facts, valuing these alleged trade secrets would require

scientific, technical, or other specialized knowledge within the scope of Rule 702.  Thus, it is not

proper lay testimony under Rule 701.  (And, as the Court previously held, it's also not proper

expert testimony because Trombley doesn't have the requisite specialized knowledge.)

Accordingly, the Court **GRANTS** Defendants' Motion in Limine No. 4.

### 3.    Defendants' Motion in Limine No. 5

Defendants move to preclude Plaintiff from offering or eliciting evidence, testimony, or

argument of, or making reference to, a witness's mental health pursuant to Fed. R. Evid. 401, 402

and 403.  At issue is the testimony of [], who Plaintiff disclosed as a witness to offer live or

deposition testimony on [] became an FT employee [] and worked with Trombley on Onsa.

Plaintiff seeks to introduce as an exhibit an email [] sent to FT HR executive Meredith Gibbons in

April 2020.  Pl.'s Trial Ex. 31, ECF No. 311-2 at BLOCKCHAIN-00167459-463.  In that email, []

described what he characterized as Bayston's "intimidation tactics" and "hostile" management

style and stated that []  *Id.* at BLOCKCHAIN-00167461.  In Plaintiff's deposition of [] Plaintiff's

counsel solicited further responses on these issues.  *See* Ex. F to Ganagham Dep., ECF No. 468-6.

Defendants argue that [] email should be excluded because "Bayston's performance as a

supervisor and any alleged differences with his colleagues have no bearing on whether he fulfilled

his duties as an Onsa director."  Defs' Mot. at 13.  The Court finds Bayston's conduct toward and

rapport with other FT employees is relevant to Plaintiff's breach of fiduciary duty claims.

Defendants further assert that "[b]ecause there is no indication that [] lay opinions about

Bayston's management style are the product of []mental health, or that [] mental health affected

his ability to perceive or recall Bayston's actions, evidence of [] mental health does not tend to

prove any material fact or impeach [] credibility."  Defs.' Mot. at 13–14.  But Plaintiff does not

seek to introduce [] testimony to impeach [].  Rather, Plaintiff plans to introduce evidence that

Bayston's conduct toward [] was abusive.  Evidence of the mental health of [] should be limited to

evidence of alleged conduct by defendants that attributed to his mental health and to mental health treatment and diagnoses [] attributed to the conduct of Defendant Bayston.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion in Limine No. 5.

### 4.    Defendants' Motion in Limine No. 6

Defendants seek to preclude Plaintiff from making references to death in reference to Onsa, to Defendants' alleged conduct, or to Onsa's wind down and liquidation. Defendants contend that references Plaintiff made in its complaint and summary judgment briefing to "killing," "terminating" or "eliminating" Onsa and to the "death of Onsa as a company" are inflammatory, unrelated to Plaintiff's claims and will invoke an emotional response that will unfairly prejudice Defendants. Defs.' Mot at 14–15. Defendants seek to preclude Plaintiff from using such language pursuant to Federal Rules of Evidence 401, 402 and 403.

Most of the examples of death-related language Defendants seek to exclude are commonplace and not inflammatory, particularly in comparison to the violent imagery excluded as unfairly prejudicial in the cases Defendants cite. *See Pipeline Prods., Inc. v. S&A Pizza, Inc.*, No. 4:20-cv-00130-RK, 2024 WL 4405148, at *6 (W.D. Mo. Mar. 28, 2024) (excluding "inflammatory and pejorative language . . . including, for example, 'slit my [our] throats,' 'decapitated,' 'burned my house down,' 'bilk[ed],' 'set on fire,' 'crook,' 'murderer,' 'rapist,' 'arsonist,' 'rotten' . . . as unduly prejudicial" in civil action between corporations); *Woods v. August*, No. 15-cv-05666-WHO, 2019 WL 8105898, at *6 (N.D. Cal. Mar. 14, 2019) (granting motion in limine in wrongful death action to preclude plaintiff's counsel from characterizing death using terms "'carnage,' 'execution,' 'assassinated,' 'murder,' 'gunned down,' and similar language."). Moreover, as Plaintiff points out, Defendants have used many of the terms they now seek to exclude, referring to Onsa's "dead body" in their motion for summary judgment. *See* ECF No. 275 at 9. Numerous witnesses, including Defendants Johnson and Bayston, likewise discussed Onsa using figurative language pertaining to death in their depositions. Defendants' motion would therefore require Plaintiff to limit the scope of deposition testimony it can use for impeachment at trial by excluding references to the termination, elimination or death of a

United States District Court
Northern District of California

company.  Accordingly, the Court **DENIES** Defendants' Motion in Limine No. 6 without prejudice to Defendant raising arguments regarding relevance or undue prejudice at trial.

### 5.    Defendants' Motion in Limine No. 7

Defendants seek an order precluding Plaintiff from offering or eliciting evidence, testimony, or argument of, or making reference to, the sale of Curv to PayPal, including the amount of the sale, pursuant to Fed. R. Evid. 401, 402, and 403.

In the spring of 2021, "PayPal acquired Curv, a third-party security company that helps cryptocurrency exchanges and brokers store crypto assets, for several hundred million dollars." Defs.' Mot. at 15.  Franklin Templeton was a pre-acquisition investor in Curv.  Defendants assert that the sale of Curv is not relevant to the litigation and that the Court should preclude evidence or statements regarding the sale to avoid unfair prejudice to Defendants, wasting time and confusing the jury.  Defendants maintain that the sale of Curv to PayPal is not relevant to Plaintiff's claims or damages, noting that Plaintiff's damages expert, Michael Fahlman, did not analyze Curv's sale among the 126 comparator transactions he used as a "reasonableness check" for his damages calculations.  *Id.* at 16.  Plaintiff responds that Fahlman did not consider the Curv sale because it took place after his valuation date of July 28, 2020, but that Defendants' rebuttal expert, Philip Green, relied upon facts and events after Fahlman's valuation date.  Plaintiff asserts that by including post-valuation-date facts in his expert analysis, Green opened the door to discussion of other comparators and to discussion of the sale of Curv to PayPal as "a highly comparable sale" that Green "intentionally ignored[.]"  Pl.'s Opp'n at 16.

The Court declines to find that the sale of Curv to PayPal is per se not relevant to any issues in this litigation, including Plaintiff's damages.

Accordingly, the Court **DENIES** Defendants' Motion in Limine No. 7 without prejudice to Defendants raising arguments regarding relevance and undue prejudice at trial.

### 6.    Defendants' Motion in Limine No. 8

Defendants seek to preclude Plaintiff from offering or eliciting evidence, testimony, or argument from Gregg Yorkison about (a) his understanding of Onsa's money transmitter licenses ("MTLs"), including their value, and of MTL regulations; and (b) Yorkison's accounts of alleged

1    profanity uttered by a party pursuant to Fed. R. Evid. 401, 402, and 403.

2              a.       Yorkison's Understanding of Onsa's MTLs and MTL Regulations

3         Defendants seek to preclude Plaintiff from offering or eliciting evidence, testimony, or

4    argument from Gregg Yorkison about (a) his understanding of Onsa's money transmitter licenses

5    ("MTLs"), including their value, and of MTL regulations.

6         Yorkison is the third-party assignee who was responsible for liquidating Onsa's assets and

7    paying Onsa's creditors and shareholders during the company's wind-down.  Plaintiff disclosed

8    Yorkison as a fact witness who is expected to provide fact testimony regarding: "(1) Onsa's wind-

9    down; (2) Franklin Templeton's involvement in the wind down of Onsa; (3) Onsa's, Bayston's,

10   and Franklin Templeton's failure to attempt to monetize Onsa's MTLS; (4) the impairment to the

11   MTLs as a result of the deficiencies that were allowed to accrue for the MTLs; (5) the negative

12   impact on Onsa caused by the delay in implementing the ABC; (6) the efforts to sell Onsa's assets

13   during the ABC process; and (7) Blockchain's acquisition of the assets and claims of Onsa."  ECF

14   No. 422-2 at 19.

15        Defendants assert that Yorkison's deposition testimony on his general understanding of

16   MTL regulations and his current beliefs about the value of Onsa's MTLs is improper expert

17   opinion testimony under Rule 702 and is not relevant to Plaintiff's claims.  Plaintiff contends that

18   Yorkison's "understanding of Onsa's MTLs is based on the extensive firsthand knowledge of the

19   MTL regulatory process that he gained in his capacity as the ABC liquidator."  Pl.'s Opp'n to

20   Mot. at 17.  Federal Rule of Evidence 701 provides that:

21              If a witness is not testifying as an expert, testimony in the form of an
                opinion is limited to one that is:
22              (a) rationally based on the witness's perception;
                (b) helpful to clearly understanding the witness's testimony or to
23              determining a fact in issue; and
                (c) not based on scientific, technical, or other specialized knowledge
24              within the scope of Rule 702.

25   Fed. R. Evid. 701.  "Where . . . a witness is testifying as to institutional operations and practices

26   based on personal knowledge that the witness has accrued over the course of several years of

27   employment, the witness is providing lay testimony not subject to Rule 702."  *Siebert v. Gene Sec.*

28   *Network, Inc*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014).

1

### i.   Yorkison's Understanding of MTL Regulations

Yorkison's deposition includes, inter alia, his opinions that "the regulatory environment has changed since Onsa[,]" that "the demand is incredibly high[,]" that fines against certain companies "are going to destroy them[,]" and about the relative risk of selling MTLs and of transactionless MTLs.  Yorkison Dep. at 290:8-11, 291:17, 292:10-17, 336:1-337:5.  ECF No. 427-4.  Some of Yorkison's opinions regarding his general understanding of MTLs are not rationally based on Yorkison's perception, and all of his opinions on how MTLs work are based on specialized knowledge within the scope of Rule 702.

Yorkison attributes some of his opinions regarding MTLs to statements told to him by regulators.  Yorkison Dep. at 292:7–293:16 (testifying that "one of the regulators explained . . . that if there is a fine . . . against the company, it starts accruing interest at . . . incredibly high rates immediately" and stating his opinion that that fines "are going to destroy" some companies).  These opinions are not rationally based on Yorkison's personal perception and must be excluded under Rule 701.

Other opinions regarding Yorkison's understanding of MTLs are based on personal knowledge Yorkison acquired through his employment.  However, Yorkison's familiarity with MTL regulations was not accrued over the course of several years as a liquidator, but appears to stem entirely from his work on Onsa's liquidation and on matters that post-date Onsa's wind-down.  Yorkison testified that when he was first charged with Onsa's liquidation, he "knew nothing" about MTLs and "thought [MTL] was the abbreviation for the Montréal Airport."  ECF No. 427-4 at 7:10-15 (Yorkison Dep.).  During his deposition, Yorkison repeatedly attributed his testimony on MTLs to his work on Onsa's liquidation and on a matter Yorkison began working on in the year leading up to his March 2024 deposition.  *See* Yorkison Dep. at 286:20-25 (testifying he "got a Ph.D. from the School of Hard Knocks in MTLs" by "surrender[ing] 43 transactionless MTLs from Onsa to the regulators.");  290:16–291:19 (testifying that if "somebody values something at $20 million, you go to the market and find out what they're worth in the distressed land" and describing a "similar" situation from a matter he worked on after Onsa's wind-down);  336:1–337:9 (providing an explanation as to "why [MTLs] are . . . incredibly valuable" and noting

that he "[is] learning this now, learning a little bit after the fact"). Yorkison's deposition testimony indicates that the knowledge he developed about MTL regulations was highly specialized. Accordingly, any such opinion testimony is governed by Rule 702. As Yorkison was disclosed as a fact witness, his opinions regarding his understanding of MTL regulations must be excluded.

Accordingly, the Court grants Defendants' motion to preclude testimony from Yorkison about his knowledge of MTL regulations.

ii.     **Yorkison's Understanding of Onsa's MTLs, Including Their Value**

Plaintiff did not disclose Yorkison to testify as to the value of the MTLs, and Yorkison did not purport to offer an opinion regarding the valuation of Onsa's MTLs. *See* ECF No. 466-16 at 151:1-16. However, Plaintiff disclosed Yorkison to provide fact testimony regarding "Onsa's, Bayston's, and Franklin Templeton's failure to attempt to monetize Onsa's MTLS" and "the impairment to the MTLs as a result of the deficiencies that were allowed to accrue for the MTLs[.]" ECF No. 422-2 at 19. The Court declines to find on a motion in limine that none of Yorkison's opinions on Onsa's MTLs, including their value, are rationally related to his perception and not based on specialized knowledge that would fall within Rule 702. Yorkison's testimony as to Onsa's MTLs is potentially helpful to determining disputed facts regarding Plaintiff's allegations that FT Fintech and Roger Bayston breached their fiduciary duties by allowing Onsa's MTLs to go to waste. See Joint Pretrial Conference Statement at 2, 36.

Accordingly, the Court denies Defendants' motion to preclude testimony from Yorkison about his understanding of Onsa's MTLs without prejudice to raising objections at trial regarding relevance or improper lay opinion testimony.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion in Limine No. 8(a).

b.     **Alleged Profanity by Bayston**

The Court **DENIES** Defendants' motion to preclude Plaintiff from offering or eliciting evidence, testimony or argument from Yorkison about his accounts of alleged profanity uttered by

United States District Court
Northern District of California

Defendant Roger Bayston.  The nature of Bayston's interactions with people the people he worked with as Onsa's sole director, including Yorkison, is relevant to the litigation.  Defendants contend allowing Plaintiff to elicit testimony of Bayston's alleged use of profanity would present a substantial risk of unfair prejudice and create a "trial-within-a trial" on this collateral issue.  But Bayston's alleged use of profanity is not a particularly complex issue requiring the jury to determine multiple predicate facts.  The Court finds the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.

### 7.    Defendants' Motion in Limine No. 9

Defendants seek an order precluding Plaintiff's expert Jonathan Abratt from offering testimony about two MTL transactions in 2021 referenced in his expert report pursuant to Fed. R. Evid. 702.  The Court finds this motion in limine is essentially an untimely *Daubert* motion rather than a motion in limine.  Defendants attempt to distinguish Motion in Limine No. 9 from a *Daubert* motion by noting that they do not seek the wholesale exclusion of Abratt's testimony, but rather to preclude Abratt from testifying to two alleged comparator transactions.  Defs.' Mot. at 19.  Defendants offer no authority to support this distinction, which is belied by the parties' respective *Daubert* motions in this litigation, in which both Plaintiff and Defendants brought motions to exclude certain expert opinions.  *See* ECF Nos. 299 at 20–25 (Defendants' motion to exclude certain opinions of Plaintiff's expert Daniel Gillett); 295 at 7, 15 (Plaintiff's motion to exclude certain opinions of Defendants' experts Philip Green and Stephen Melvin).  The deadline for filing expert-related discovery disputes was September 3, 2024.  Defendants did not challenge the expert opinions they now seek to exclude, and cannot bring such a challenge now, on the eve of trial.  Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 9.

### 8.    Defendants' Motion in Limine No. 10

Defendants' Motion in Limine No. 10 includes two parts.  First, Defendants seek to bifurcate this trial into 1) a liability and compensatory damages phase and 2) a punitive damages phase.  Defs.' Mot. at 21–23.  Second, Defendants seek to exclude evidence or argument about, or reference to, any witness's financial state during the liability phase of the trial.  *Id.* at 23–25.

1

### a.    Bifurcation of Trial

2  The Court has broad discretion in deciding whether to bifurcate a trial.  *Zivkovic v.*

3  *Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  "For convenience, to avoid

4  prejudice, or to expedite and economize, the court may order a separate trial of one or more

5  separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a

6  separate trial, the court must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).

7  Defendants argue that evidence of Defendants' finances is not relevant to Plaintiff's

8  liability claims and that allowing the presentation of this evidence to the jury during the liability

9  phase creates a risk of undue prejudice because it may improperly influence the jury's

10  deliberations on liability and compensatory damages. Defs.' Mot. at 22.  Plaintiff argues that there

11  is significant overlap between the witnesses and evidence relevant to liability, compensatory

12  damages, and punitive damages, and that limiting jury instructions can address any concerns of

13  prejudice from the admission of financial condition evidence.  Pl.'s Opp'n at 21–22.

14  The Court grants Defendants' motion to bifurcate the trial into two phases.  The jury does

15  not need to hear evidence that goes solely to the amount of punitive or exemplary damages to

16  determine liability.  For example, evidence of the net worth of any of the Defendants is not

17  admissible in the first phase of the trial.

18  Bifurcation "does not raise serious efficiency concerns, as the same jury that decides

19  liability and entitlement to punitive damages may also decide the amount of punitive damages."

20  *Monroe v. Griffin*, 2015 WL 5258115, at *5 (N.D. Cal. Sept. 9, 2015).

21  Accordingly, the Court **GRANTS** Defendants' Motion in Limine No. 10 to bifurcate the

22  trial.  If the jury returns a verdict for Plaintiff and finds that Plaintiff is entitled to punitive

23  damages, then the same jury will consider the amount of punitive damages to award.

24

### b.    Evidence and Statements Regarding Witness Compensation

25  The Court denies Defendants' motion to preclude Plaintiff from offering or eliciting

26  evidence, testimony, or argument of, or making reference to, any witness's or party's financial

27  state, including income, bonuses, salary or compensation during the liability phase of the trial.

28  First, Plaintiff alleges that Defendant Roger Bayston breached the fiduciary duties he owed

United States District Court
Northern District of California

United States District Court
Northern District of California

to Onsa as its sole director.  Defendant asserts that the fact that Bayston earned a salary from Franklin Templeton and did not earn any compensation as Onsa's director is sufficient for the jury.  However, the Court finds the amount of Bayston's salary with FT is potentially relevant to Plaintiff's argument that Bayston was not a disinterested and independent director of Onsa.  *See* Summary Judgment Order at 15–16.

Second, the Court denies the remainder of this motion as overbroad.  An expert witness's compensation for work done on the case would appear to fall within the scope of this motion but is clearly a fair subject for cross examination.  If there is a specific witness for which this issue needs to be resolved at trial, the Court can address the issue then with proper context.

Accordingly, the Court **GRANTS** Defendants' Motion in Limine No. 10(a) to bifurcate the trial into two phases.  In the first phase, the jury will hear the issue of liability, compensatory damages and entitlement to punitive damages.  After the jury reaches a verdict, if the jury finds that Plaintiff is entitled to punitive damages, that same jury will return for the second phase of the trial to determine the amount of punitive damages.  The Court **DENIES** Defendants' Motion in Limine No. 10(b) to preclude Plaintiff from offering or eliciting evidence, testimony, or argument of, or making reference to, any witness's or party's financial state, including income, bonuses, salary or compensation during the liability phase of the trial.

### III.    CONCLUSION

The parties' motions in limine are granted in part and denied in part as stated above.

**IT IS SO ORDERED.**

Dated: February 28, 2025

THOMAS S. HIXSON
United States Magistrate Judge